UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    **CIVIL ACTION NO.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x           **CV-20-04340**
                                                          **CV-20-04515**


**ABRAHAM GROSS**              Plaintiff,

                                                 **ORDER TO SHOW CAUSE**
        - against -                              **FOR PRELIMINARY INJUNCTION**
                                                 **AND TEMPORARY RESTRAINING**
                                                 **ORDER**
**THE CITY OF NEW YORK Et al.**

                              Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


        Upon the affidavits of _____**ABRAHAM GROSS**_____, **submitted**

the __**5**__ day of__**July**___, **2020**, and upon the copy of the complaint hereto annexed, it is

        ORDERED, that the above named defendant show cause before a motion term of

this Court, at Room_____, United States Courthouse, 500 Pearl Street, in the City, County and

State of New York, on_____ ___, _____, at_____ o'clock in the_____noon

thereof, or as soon thereafter as counsel may be heard, why an order should not be issued

pursuant to Rule 65 of the Federal Rules of Civil Procedure enjoining the defendant during the

pendency of this action from_____.

_____

  **Grant Plaintiff limited mandatory relief to temporarily reside in of the 22 vacant apartments for which Plaintiff is eligible based**
_____; and it is further    **on the prior calculations**
                                        **Kindly see attached affirmation**
                                        **for the Injunction sought**

        ORDERED that, sufficient reason having been shown therefor, pending the

hearing of plaintiff's application for a preliminary injunction, pursuant to Rule 65, Fed. R. Civ. P.,

the defendant is temporarily restrained and enjoined from_____

_____

_____

_____

_____; and it is further

      ORDERED that security in the amount of $_____ be posted by the

plaintiff prior to _____ ____, _____, at_____ o'clock in the_____noon of that

day; and it is further

      ORDERED that personal service of a copy of this order and annexed affidavit

upon the defendant or his counsel on or before_____ o'clock in the_____noon,_____

_____ ____, _____, shall be deemed good and sufficient service thereof.


DATED:   New York, New York

ISSUED:   _____M



          _____
           United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
ABRAHAM GROSS,

        Plaintiff,

                                 **CIVIL ACTION NO.**
                                 ***CV-20-04340/***
                                 ***CV-20-04515***
                                 AFFIRMATION IN
                                 SUPPORT OF ORDER
                                 TO SHOW CAUSE
                                 FOR INJUNCTIVE
                                 AND OTHER RELIEF

                 -against-

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT, LOUISE CARROLL,
ANNA-MARIE HENDRICKSON, MARAGERET BROWN, BABBA HALM,
VICTOR HERNANDEZ, SHATARA PELL, EDWIN LUGO, NIDIA DORMI,
GABRIEL MOMBRUN, HAROLD WEINBERG, NICK LUNDGREN,
SAMANTHA SCHONFELD, JAMES E. JOHNSON, HELEN ROSENTHAL,
BREAKING GROUND, JEANNE-MARIE WILLIAMS, BRENDA ROSEN,
TERRESA PALMIERI, VANESSA CUCURULO, STEPHANIE LABARTA and
TRAVIS FONG.
                          Defendants.
_____x

**INTRODUCTION**

1. Plaintiff's complaint ("Complaint"), in its proper form as submitted in Case

   20-CV-04515, alleges, *inter alia,* that by clear and convincing evidence,

Plaintiff was deprived of the single affordable housing opportunity he was granted in a decade of failed efforts, solely because of (a) his ethnicity as a non-Hispanic applicant (b) Defendants sickening corruption ("the Scam"). This deprivation came pursuant to Plaintiff being approved for housing on June 07, 2019, after completing a deplorable application process tainted with a sweeping contempt for federal and state law. As part of the Scam, Defendants purposefully granted dozens of affordable housing apartments ("Property" or "Properties") at Waterline Square ("subject property") to egregiously-unqualified applicants, while rejecting as many other applicants as they could. The following further supports Plaintiff's application for limited injunctive and equitable relief that is respectfully requested from the U.S. District Court for the Southern District of New York ("Honorable Court").

## THE STANDARD FOR LIMITED MANDATORY RELIEF

2. Based on the established interpretation of Rule 65 of the Federal Rules of Civil Procedure, to prevail on a request for a limited mandatory injunction, or temporary restraining order. the moving party must establish[1]: (1) a

---

[1] *Weinberger v. Romero—Barcelo,* 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). *eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

likelihood of success on the merits; (2) irreparable harm in the absence of

the injunction; (3) balancing of the equities in his favor. Here, all of these

factors align and support granting limited injunctive relief, such that this

inexpressible, cruel, and unusual injustice be put to rest, and such that

Plaintiff can began the difficult task of rehabilitating his decimated life in

the apartment for which he is qualified for 365 days prior, and for which he

has always been qualified for, provided his application is reviewed by a

reasonable human-being, rather than by a malicious reviewer who seeks- for

unconscionable reasons- to reject as many applicants as possible.

**THE BALANCE OF EQUITIES SUPPORTS INJUNCTIVE RELIEF**

3. ***First,*** on May 23, 2020, out of the blue, Defendant HPD declared that out of

269 units, there were 22 units left which would be subject to a new lottery

(EXHIBIT A). This revelation means two things: (1) after extraordinary

torment, Defendants were forced to admit there are still empty apartments,

which in turn, opens the door to the possibility of delayed justice (2) The

fact that Plaintiff was in the top 99.9% priority percentile in the first lottery

for the first time in ten years of applications- #103 out of 74,000- will be

rendered null and void- effectively- granting Defendants their wish to

hammer the final nail in Plaintiff's coffin. As it pertains to conducting a

second lottery, page 33 of the HPD Marketing Handbook ("the Handbook")
states:

> When the Project's waiting list is exhausted, the
> Developer or re-rental agent must notify the Agency. The
> Agency requires a fair resident selection process and
> compliance with HPD-HDC eligibility criteria for
> re-rentals for the duration of the regulatory agreement.

4.  Based on HPD's own rules, for Defendants to subject the remaining 22 units
    (out of 269 total) to a new lottery means that Defendants had to have
    completed vetting the original 74,000 applications. Out of this pool, 247
    applicants were found eligible and awarded Properties; 73,753 applicants
    were rejected. In other words, 99.9% of the applicants were deemed
    ineligible.

5.  Respectfully, a reasonable mind would conclude this rejection rate confirms
    Defendants predetermined intention to reject as many candidates as possible,
    as Plaintiff alleges. Defendants stunning admission also relates goes to a
    fundamental: is any (let alone- every) applicant given a fair chance?

6.  ***Second,*** in theory, one may suggest the 99.9% rejection rate stems from
    strict adherence to the guidelines[2]. This theory is quickly demolished by
    public records proving the extent to which Defendants breached integrity by

---

[2] Granted, this assertion is inconsistent with a tsunami of substantiated violations of the rules- some of
which Defendants reluctantly admitted and apologized for.

awarding Properties to a barrage of unqualified candidates (vast majority of which were of hispanic ethnicity), residents who own other apartments, and/or reside simultaneously in other Properties, pursuant to *winning more lotteries,* in express violation of the rules- page 57 of the HPD Marketing Handbook ("the Handbook")*.

7.  On June 28, 2020, Plaintiff emailed the respective counsels for Defendants ("Counsels") a partial list of current residents (EXHIBIT B) who were granted Properties in violation of numerous HPD regulations, as demonstrated by commercially-available public records ("Records").

8.  To clarify, the Records that link a specific resident to a specific Property are utilized globally by millions of customers who purchase such Records to conduct tenant/employment, criminal/sex offernder and/or other types of background checks. Vendors who compile Records- such Whitepages, BeenVerified- work tirelessly to ensure the information is accurate and updated. Simply put, landlords/ employers would not pay- much less rely on- Records unless they were reliable. Plaintiff is not suggesting that Records are foolproof, rather, that they are generally accurate- particularly when they reveal an overwhelming pattern.

9.   Furthemore, since the Records are compiled by cross-referencing multiple

databases- including property tax bills, property transfer deeds, court

records, USPS change of address forms, public directories, voter registration

forms, and social media- it is not a simple task to alter the data within.

10. The list proved that during the time Defendants demonstrated a callous

disregard to Plaintiff's prolonged homelessness, they also purposefully

corrupted the Process by granting dozens of apartments to *unqualified*

*lottery winners.* As Counsels are prohibited from aiding the criminal conduct

of their clients, Plaintiff requested that Counsels refrain from instructing

their clients to cover their tracks. Nevertheless, consistent with their

prior-illustrated contempt for the ABA Rules of Professional Conduct, on

June 29, every resident that Plaintiff named promptly joined the exodus that

had already begun pursuant to the first submission of incriming data[3].

Respectfully, the Honorable Court should not disregard the cynicism arising

from the fact that for the past year, Defendants regurgitated that "we would

love to help Plaintiff, but have to follow guidelines". Clearly, guidelines

were ignored.

---

[3] Respectfully, in prior proceedings, Plaintiff was crippled at every turn by the Court's instant adoption of all of Defendants assertions as fact, even in cases where the record squarely refuted such assertions. Plaintiff is respectfully pleading with the Honorable Southern District to recognize the significance of the Defendants repeated attempts to alter incriminating information, as they have done time and time again.

11. ***Third,*** Plaintiff obtained new, incontrovertible evidence of Defendants

fraud on the court, as contemplated by the established precedent[4]. Based on

prior experience, at the moment Plaintiff shares such evidence, Defendants

scramble to delete incriminating information and then work together to *get*

*their story straight.* Accordingly, Plaintiff asks the Honorable Court to grant

a special hearing in which he can present the evidence before an honorable

judge, prior to Defendants abusing their credentials to delete information

from public databases and such that the Honorable Court will recognize the

worst type of fraud.

12. ***Fourth,*** an independent government agency has already vetted and

substantiated the Property embezzlement of multiple Defendants, including,

the property manager at the subject property, Defendant Mombrun

and the Director of Affordability and Oversight at HPD,

Defendant Hernandez            . Both of these individuals had

extensive involvement in the decision to reject Plaintiff, and could not

possibly be said to have been objective, given their own predisposition to

transfer multiple Properties to themselves, family and friends free of charge.

**KINDLY SEE NYSCEF APPL. DIV. 2019-04206 #9, EXHIBITS B-E**

---

[4] Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245-246 (1944): "only the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court.".

13. ***Fifth,*** respectfully, who is fighting this war of attrition and what are the true motivations underlying Defendants ferocious, costly (the estimated $250,000 in legal fees are equivalent to 15 years of affordable rent at the subject property) vendetta to deprive a low-income, affordable housing applicant of the only chance he ever received? Why is it so important to Defendants that Plaintiff is denied the opportunity he earned by following the rules, as oppose to those who admitted paying bribes? Any notion that Defendants are heavily invested out of some degree of loyalty to guidelines is entirely fictional, as proven by the unqualified friends and family that were granted apartments.

14. Furthermore, respectfully, it is impossible to reconcile the indifference-to-suffering demonstrated by Defendants with the flurry of evidently-false declarations found on Breaking Ground's website:

> At Breaking Ground, we believe everyone deserves home.
>
> Breaking Ground employs a range of effective, data-informed initiatives designed to enable people to forever escape the trauma of homelessness.
>
> For individuals experiencing street homelessness who are not yet ready to transition into permanent housing, as well as those who may have struggled in other housing programs, our Safe Havens offer an alternative to life on the street: private, safe, clean, and affordable short-term accommodations.

> We operate more than 4,000 (and counting) units of transitional and permanent housing for low-income and formerly homeless individuals.
>
> More than 4,000 people sleep under a Breaking Ground roof each night.
>
> We place at least 500 individuals in transitional or permanent housing each year.

15. Further, through the 493 days of hell Defendant Breaking Ground inflicted on Plaintiff (since Plaintiff's initial interview on March 1, 2019), it is only human to hope Breaking Ground would at least consider trying accommodate Plaintiff in one of its "4,000 and counting units", prior to Plaintiff being forced into shelter. Nope. Not a single such attempt was made. Even harder to grasp is the lack of basic human compassion to the outbreak of an unprecedented pandemic. This too, did not impede Defendants relentless refusal to reconsider Breaking Ground's shifting determiantions. To reiterate, these three determinations were justified by stating four conclusory numbers that have never been explained, and squarely refuted by the record . Furthermore, two out of three of these determinations invoked a rejection cause that is banned by the Breaking Ground-HPD regulatory agreement ("inconsistent information"). These unsettling facts- like the pandemic inspire anything resembling basic human decency.

16. As it pertains to Defendant HPD, in light of the pandemic HPD released the

following statement:

> We are pleased to introduce new changes to the Housing
> Connect lottery process, aimed at moving New Yorkers into
> stable, affordable housing as quickly as possible, during the
> COVID crisis and beyond[5].

> HPD will be implementing a temporary addendum to the
> Marketing Handbook during this time to expedite the
> processing of applications to get qualified applicants into
> affordable housing as quickly as possible[6].

17. Furthemore, HPD's own Marketing Handbook is abundant with provisions
that give HPD the authority to consider a homeless referral (which Plaintiff
was since September 23, 2019), emergencies, and other extenuating
circumstances, for example[7]:

> the Developer or agent responsible for re-rentals may,
> with the written permission of the Agency, modify its
> processing of the waiting list to provide a preference or
> set aside for emergency housing placements or
> relocations (page 33).

> The Agency may also amend these policies and
> procedures for individual Projects (for initial rentals or
> re-rentals from a waiting list) to authorize the owner to
> give a preference or set-aside for referrals of homeless
> persons from the Department of Homeless Services,
> provided **that the homeless persons meet program
> eligibility criteria (i.e., have incomes at or below the
> maximum allowable income for eligibility) (page 40).**

---

[5] https://www.kingscountypolitics.com/city-relaxes-roadblocks-for-affordable-housing-lottery/
[6] HPD Marketing Guide-Covid 19 Memorandum.
[7] For a more detailed discussion of the unconscionable ways Defendants disregarded dozens of explicit
provisions that aim to protect the integrity of the process see Sup Crt. 101960/2019 Docket #20, and
Appl. Div 2019-04206 Docket #27, EXHIBITS H11-H14.

### THE IRREPARABLE HARM: IMMINENT THREAT OF THE CORONAVIRUS SUPPORTS SAID RELIEF

18. *First,* to date, more than 11.5 million people tested positive for coronavirus, of which more than 540,000 people have tragically passed, and an unknown number of others are in critical condition. There has been a sharp spike in recent cases in the United States. For obvious reasons, Plaintiff's inexpressible suffering and risk to human life is exacerbated by a perpetual state of homelessness. Respectfully, why must a sensible judicial conscience be indifferent to these extenuating circumstances?

19. *Second,* at the onset of the global health crisis, all branches of NYS government- executive, judicial, and legislative- took active measures that are demonstrative of human compassion, rather than inhuman indifference. These measures include a sensitivity to protect the homeless population during the pandemic. In doing so, our government rejected the position that it is appropriate to show indifference to the torture endured by a qualifed affordable housing candidate, pursuant to prolonged homelesness, while an abundance of immediate solutions are available.

20. *Third,* by executive order, evictions across New York State have halted. In doing so, the executive branch demonstrated, yet again, compassion for people who would otherwise be homeless during a pandemic.

21. ***Fourth,*** by the grace of God, Plaintiff has not contracted the coronavirus as of today. Regretfully, this can change at any minute. Plaintiff's grandfather, in his 90's, has tested positive for COVID-19, and is at Mt. Sinai in intensive care. Plaintiff's father has also tested positive for the virus. Plaintiff's mother, as Defendants are well-aware, has been battling for the past ten (10) years with a crippling auto-immune disease that impedes her speech and mobility. Prior to applying to the subject property, Plaintiff was his mother's full-time personal aid. Plaintiff's mother desperately needs his help for physical therapy and attending critical doctor appointments. Waterline Square is located within walking distance to his mother's apartment, and by far- the Property closet in proximity. Defendants know these facts but continue to demonstrating indifference that is baffling considering Defendednt own mission statement: helping New Yorkers find housing.

**THE LIKELIHOOD OF SUCCESS SUPPORTS SAID RELIEF**

22. ***First,*** the right for adequate shelter is well-established[8] in New York State and New York City. The New York State Constitution specifically obligates the state to care for those in need: "the aid, care and support of the needy are

---

[8] *Callahan v. Carey, No. 79-42582 (Sup. Ct. N.Y. County, Cot. 18, 1979);  Eldredge v. Kock, 118 Misc. 2d 163 (N.Y. Sup. Ct. 1983); McCain v. Koch, 511 N.E. 2D 62 (N.Y. 1987).*

public concerns and shall be provided by the state and by such of its

subdivisions...[9]". This provision was the basis for the landmark First

Department *Callahan* case[10], in which New York City recognized the right

of every homeless man to receive adequate shelter and board (in *Eldredge*[11],

*Callahan* was expanded to apply to homeless women, and in *McCain*[12],

*Callahan* was expanded to include homeless families).

23. As a resident of New York City, Plaintiff has a right for adequate shelter.

Due to the current extenuating circumstances of an unprecedented global

epidemic, Plaintiff's right for adequate shelter is denied when forced into an

dangerous environment where there is a high probability of contracting the

coronavirus. Although the Court has consistently shown indifference - and

worse- to this reality, Plaintiff prays with the Honorable Court to recognize

the travesty that has transpired.

24. After applying for ten years to affordable housing, Plaintiff finally was

promised- after a long application process- that he had completed the

application process, and would be coming to sign a lease. Permanent

---

[9] Article XVII, Section 1 of the New York State Constitution.
[10] *Callahan v. Carey, No. 79-42582 (Sup. Ct. N.Y. County, Cot. 18, 1979).*
[11] *Eldredge v. Kock, 118 Misc. 2d 163 (N.Y. Sup. Ct. 1983).*
[12] *McCain v. Koch, 511 N.E. 2D 62 (N.Y. 1987).*

housing is in itself a valued public interest, as evident by the very concept of affordable housing.

25. By virtue of Defendants misconduct, it is just and appropriate for Defendants to remedy Plaintiff's peril by granting him the long term- or at least, temporary- housing opportunity to which, at the very least, he has made a compelling case for eligibility, providing his application is reviewed objectively, and without prejudice.

26. Rather than force Plaintiff to seek refuge in a shelter that is inadequate due to the risk of death, Defendants should, as a matter of law, equity, and common sense, utilize the express authority granted to them[13] to cure the harm caused by their Scam.

27. *Second*, Plaintiff's income has always been a match to the property. For a detailed illustration of the malicious ways Defendants "miscalculated" Plaintiff's income and disregard countless statutory obligations, please see Sup. Crt. 101960/2019, Dockets #4 (FOIL violations), #20 (income-calculation violations), Appl. Div. Docket #9, 04206- EXHIBITS A1-A10, and Docket #27, pages 194-232.

---

[13] In this context, the Court's settlement recommendation, the minimum income waiver for DHS referral pursuant to page 40 of the Handbook, the authorization granted pursuant to extenuating circumstances provisions on pages 41, 42, and 56, and the fairness requirement on page 05 further support the grant of a limited injunction.

28. ***Third***, as stated, Defendants announced there are 22 available units that will be subject to a second lottery and that the new income criteria has been lowered to $27,875-$31,840, under which Plaintiff would qualify even according to the Defendants cryptic and the Court's calculations (see page 5 of the Court's Order dated August 16, 2019, case 101081/2019).

29. ***Fourth,*** in light of the overwhelming evidence of fraud on the court and Defendants Scam, judgements procured by fraud can and should be vacated. As one illustration, Plaintiff has presented clear and irrefutable evidence that the process by which cases should be randomly assigned was corrupted[14].

30. ***Fifth,*** in prior state proceedings, the Court enthusiastically endorsed Defendants above-the-law stance. That the Court's most recent order (EXHIBIT F) admitted- in effect- that the State Proceedings were unlawfully assigned to the Court- a designated Trial Part, rather than being assigned to a special proceedings City Part-ought to, respectfully, unnerve the judicial conscience.

---

[14] https://www.youtube.com/watch?v=eOo-7n9dIik&t=4s

## THE INTERESTS OF JUSTICE SUPPORT REVERSING THE DISMISSAL OF CASE CV-20-04515

31. To supplement the reasons aforestated in Plaintiff's letter addressed to the

Hon Chief Justice, Plaintiff respectfully expounds upon the rationale of

dismissing case *CV-20-04340  ("the former")* and reninstating case number

*CV-20-04515 ("the latter"): (*a) These complaints are substantially different.

The latter is more than double the length of the former, includes additional

legal arguments, exhibits, ISP, and proper commencement forms (b)

Plaintiff never intended for the former to be the formal version of his

complaint, as evident by the fact it was not signed, contained no address, and

lacked commencement papers (c) even the Honorable Court's Clerk Office

confirmed in a phone conversation that the former was null and void (d)

even the the Honorable Court's own rules state that if the Complaint lacks

the most basic elements- such as a signature, name, address, it will be

disregarded (e) Plaintiff received written confirmation for submission of the

latter, but nothing for the former (f) On platforms- such as Justia- that

register all the cases filed everyday in federal court in real time- the former

is nowhere to be found (g) As a last point, respectfully, the degree to which

Plaintiff's fundamental rights were set aside in prior proceedings is

pervasive, overwhelming, and devastating to any human being that values adjudicative integrity. Upon information and belief, the Honorable Court does abide by the Court's position that pro se litigants are sub-litigants whose most basic rights can be violated at the will of the court. And as such, the sequence of events that allowed an inferior, unsigned draft that was already confirmed to be disregarded, to suddenly, ala Lazarus, *come back* to nullify a proper complaint , with proper ISP and efile consent- has justifiably caused Plaintiff to feel helpless and hopeless.  Respectfully, it will an injustice (granted, one that is comparatively dwarfed by others) to force Plaintiff to amend the former, when he already invested weeks, and the little bit of energy he has left.

32. This is all said respectfully with humility and recognition of Plaintiff's limited knowledge and the fact Plaintiff's life and well-being are at the mercy of the courts. Simply put, after being tortured and deprived of fundamental fairness in ways that cannot be expressed[15], Plaintiff is begging for a fair, lawful proceeding, in which he is given a chance. In proceedings

---

[15] Including (a) profanity-fused beratement by the court attorney in the presence of opposing counsel; (b) modification of valid order in Plaintiff's favor given, signed and after proceedings concluded- pursuant to ex-parte communication from Counsel with a court attorney and phone calls made to chambers, (c) disregard for court orders twice, (d) dismissal of Plaintiff's appeal despite a stipulation to enlarge. Regretfully, this is a very partial list. Evidence for these sickening occurrences is available on #27 Exhibits H12-13, Appl Div. 2019-04206.

the evidence is irrefutable that fundamental fairness was abused, and the

established precedent- systematically set aside. Considering that theforced

Plaintiff into hell despite overwhelming exculpatory evidence, it is very sad

that even Plaintiff's most basic rights were set aside.

<u>**CONCLUSION**</u>

33. Plaintiff has lost a precious year of his life to inexpressible harm as a direct

result of an unthinkable travesty. Plaintiff continues to suffer everyday,

despite dozens of vacant apartments for which he is eligible-based, *inter*

*alia*, on Defendants rules pertaining to homeless referrals, Defendants

newly-declared relaxed pandemic regulations and pursuant to the recent

changes Defendants declared in the income criteria  levels (EXHIBITS A_O

of the Complaint).

34. On May 23, 2020, for the first time, a sliver of hope that this excruciating

sledgehammer of injustice would be replaced by an iota of truth and

sensibility. Defendants reluctantly stated that twenty-two apartments were

left. This declaration creates a rare opportunity which will be lost forever as

once the second lottery is held. It is clear based on the horrors that have

transpired that Plaintiff will never be given a fair chance in a new lottery.

**PRAYER FOR RELIEF**

35. For all the reasons stated herein, in the Complaint, and by virtue of the public policy considerations arising from this sickening Scam, Plaintiff respectfully asks the court for limited relief[16] as follows:

I.  After a cruel travesty, Grant this aggrieved human being the opportunity he was originally awarded and allow him to start rehabilitation of his life. Grant this human being a path to mitigate the deadly threat of the coronavirus, based on the merits.

II.  Alternatively, may the Honorable Court temporarily freeze the Process, at the very least, until Defendants provide a reasonable explanation as to why so many apartments were egregiously awarded, while Plaintiff and others continue to suffer.

III.   Defendants must promptly end their exhibition of contempt as it pertains to Freedom of Information Law requests relating to Waterline Square (see Sup. Crt 101960/2019 Dockets #4-#20 and beyond).

---

[16] Respectfully, the evidence supporting Defendants horrific conduct as illustrated in NYSCEF Appl. Div. First Dep. 2019-04206 Dockets # 9, #27, #32, #36, #37- is overwhelming.

IV. Grant all parties an emergency hearing in which Plaintiff can present clear and irrefutable evidence that Defendants have corrupted the judicial process.

V. As there are many other plaintiffs with which Plaintiff has connected, may the Honorable Court consider hiring a pro bono class action attorney in some capacity.

VI. Due to the sickening breach of administrative integrity of top NYC public officials and the corruption of the judicial process, may the Honorable Court consider ordering an investigation from an uncompromised federal investigative agency that has no ties or affiliation to the practice of transferring Properties for free.

VII. Invalidate case CV-20-04340 and reinstate case CV-20-04515.

VIII. Respectfully, this is a lot to ask for, but any judicial conscience of integrity will read between the lines and see the travesty for what it is-something that no court of law should tolerate.

IX. Any further legal and equitable relief that the Honorable Court deems appropriate and just.

I, hereby affirm under the penalty of perjury that the forgoing is true and accurate to the best of my knowledge and belief.

Respectfully submitted,


Abraham Gross


**July 06, 2020**


## Contact Information
## 40 w 77, #10C, NY, NY, 10024
## agross2@gmail.com
## 917 6731848

# EXHIBIT A



# Waterline Square Phase II

**Address:** 645 West 59th Street, Manhattan
**Units:** 22
**Household Sizes:** 1-5 people
**Income Levels Served:** $27,875 - $49,120
**Application Deadline:** July 23, 2020

**Find out more!**

# EXHIBIT B

**please note: Plaintiff has proof of least 46 unqualified residents at Waterline Square-could not fit under 10 MB- but there are likely many more**

**Michel Acevedo, current resident in affordable housing unit at Waterline Square, also lives in a rent stabilized apartment at 126 W 83 Street, and in affordable unit at 66 W 94, where the entire building is owned and managed by HPD. Previously lived in a building 3521 Deklab Ave- where all 72 units are rent stabilized. This is an outrageous violation of the HPD Handbook. Upon information and belief, Mr. Acevedo is another Waterline Square hispanic applicant given preferential treatment and the right to violate HPD regulations.**

## Michel Acevedo #831, Waterline Square



**WATERLINE SQUARE CURRENT AFFORDABLE HOUSING APARTMENT**



**66 W 94 St**
**Building Owned By New York City Housing Agencies Since 1973**
**3521 Dekalb Ave**
**Entire Building is Rent Stabilized, previously Owned by the**
**126 W 83: HPD-Affiliated Building, majority of units are rent stabilized**




**whitepages**
SEARCH. FIND. KNOW.

Tatyana Maldonado | New York NY

# Tatyana Maldonado

**WATERLINE SQUARE**
**AFFORDABLE HOUSING UNIT #433**

**314 E 100 St**
**PROPERTY IS OWNED**
**BY HPD- ALL**
**81 UNITS RENT STABILIZED UNITS**

CURRENT ADDRESSES

400 W 61st St Apt 433
New York NY 10023-0198
Neighborhood: Upper Manhattan

314 E 100th St Apt 2p
New York NY 10029-6617
Neighborhood: Upper Manhattan

# MS. MALDONADO "WON THE WS AFFORDABLE HOUSING LOTTERY",
## BY ACQUIRING A LIFETIME RIGHT TO RENT
## UNIT # 433, WHILE SIMULTANEOUSLY RENTING A RENT-STABILIZED
## APARTMENT IN HPD-OWNED BUILDING AT 314 E 100,
## AND WHILE OWNING A $346,000 PROPERTY IN FLORIDA.
## MS. MALDONADO HAS PROPERTY INTERESTS IN
## TWO AFFORDABLE HOUSING APARTMENTS, DESPITE
## OWNING OUT OF STATE PROPERTY WELL- ABOVE THE ASSET LIMIT
## CRITERIA FOR WS
## IN EXPRESS VIOLATION OF
## COUNTLESS NYC HOUSING LAWS

Whitepages PREMIUM

**PERSON**

T Maldonado

🏠 T's Report ❯ **Address & Property History** ✕

① MAY 2002 - JANUARY 2009
27006 Sea Breeze Way
Wesley Chapel, FL 33544

② AUGUST 1999 - AUGUST 1999
82 Munroe St Apt 1
Somerville, MA 02143

③ AUGUST 1999 - AUGUST 1999
3553 12th St Apt 2g
Astoria, NY 11106

④ MARCH 1998 - MARCH 1998
410 Memorial Dr
Cambridge, MA 02139

⑤ NOVEMBER 1994 - NOVEMBER 1994
3255 37th St Apt 3
Astoria, NY 11103

# MS. MALDONADO ALSO AQUIRED
## PROPERTY INTERESTS IN NYCHA OWNED BUILDINGS
## (3553 12TH Avenue)
## AND OTHER QUESTIONABLE  PROPERTIES
## (3255 37th Street, 410 Memorial Dr. Cambridge MA,
## 82 Munroe St, Somerville)

# 3532 37 Street

## RAVENSWOOD: Public Housing Development

This building is owned by the NYC Housing Authority (NYCHA)

| Borough | Units | 2019 Evictions |
|---------|-------|----------------|
| Queens | 1974 | 6 |

**Borough Management Office:**

90-20 170th St, 1st Floor,
Jamaica, NY 11432

(718) 553-4700

**New York Regional Office:**

26 Federal Plaza, New York, NY
10278

(212) 264-1290

complaints_office_02@hud.gov

Boro-Block-Lot (BBL): 4-00332-0002

# 32 55 37TH STREET

Standard N.Y.R.T.U. Form 8002-2014 — Bargain and Sale Deed, with Covenants against Grantor's Acts—Individual or Corporation (single sheet)

**CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT - THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY**

**THIS INDENTURE,** made the 2nd   day of   December   , nineteen hundred and eighty

**BETWEEN**   ROBERT RIZZI and RICHARD RIZZI, residing at 50-15  211
Street, Bayside, New York

party of the first part, and  DARIO BAKJA and ANNA BAKJA, his wife, residing
at 32-49  37 Street, Long Island City, New York

party of the second part,

REEL 1302 PAGE 370

**WITNESSETH,** that the party of the first part, in consideration of ten dollars and other valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being situate at Long Island City, in the First Ward of the Borough and County of Queens, City and State of New York, known and desig-nated on a certain map entitled, "Map of Section I of 774 lots of land belonging to the Cooperative Building Association of the United Cabinet Makers of New York, situate in the Village of Astoria, Queens County, L.I., late of the property of Samuel Waldron, deceased, surveyed by Jacob Rudolphy, January 15th, 1869" and filed in the Office of the Clerk of the County of Queens on January 28th, 1869 as Map #306, as and by the lot number 154, bounded and described as follows:

BEGINNING at a point on the southeasterly side of 37th Street (formerly 8th Avenue) distant 550 feet southwesterly from the corner formed by the intersection of the southeasterly side of 37th Street with the southwesterly side of Broadway;

thence SOUTHEASTERLY parallel with Broadway, 100 feet;

thence SOUTHWESTERLY parallel with 37th Street, 25 feet;

thence NORTHWESTERLY parallel with Broadway, 100 feet to the southeasterly side of 37th Street; and

thence NORTHEASTERLY along the southeasterly side of 37th Street, 25 feet to the point or place of BEGINNING.

Being the same Grantees by deed of Rocco S. Varlese, as Executor of the Estate of John Rizzi, Deceased (Queens Surrogate's 5674/79) dated 7-14-80 recorded 8-11-80 in Reel 1275, page 1024.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consid-eration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF :

_Paul Paulena_

_Robert Rizzi_
Robert Rizzi

_Richard Rizzi_
Richard Rizzi

**IN WITNESS WHEREOF,** the parties hereto by their duly authorized agents have executed this Agreement on the date first hereinabove written.

**HOBBS CIENA ASSOCIATES, L.P.,**
a New York limited partnership

**By: Hobbs Ciena Management Corp.,**
its General Partner

By: _____
Matthew Kelly
Vice President

**HOBBS CIENA HOUSING DEVELOPMENT FUND CORPORATION,** a New York not-for-profit corporation

By: _____
Matthew Kelly
Vice President

**NEW YORK CITY HOUSING DEVELOPMENT CORPORATION**

By: _____
Jonathan Springer
Senior Vice President

**MS. ROSA MENDOZA IS ANOTHER
ANOTHER UNQUALIFIED CANDIDATE
WHO "WON THE WATERLINE SQUARE LOTTERY"
WHILE SIMULTANEOUSLY
LIVING IN ANOTHER AFFORDABLE HOUSING PROPERTY
AND HAVING PREVIOUSLY ACQUIRED
AGAINST ALL ODDS
MULTIPLE AFFORDABLE HOUSING PROPERTIES**



*whitepages*

400 W 61st St, New York NY

🏠 Rosa's Report  ›  **Address & Property History**                    ✕



① DECEMBER 2019 - MARCH 2020
400 W 61st St # 531
New York, NY 10023

② SEPTEMBER 2017 - FEBRUARY 2020
1071 Elder Ave Apt 2n
Bronx, NY 10472

③ JULY 2015 - SEPTEMBER 2017
500 W 143rd St Apt 10
New York, NY 10031

④ JUNE 2005 - DECEMBER 2014
17 Columbus Blvd
Amityville, NY 11701

⑤ APRIL 2004 - JANUARY 2009
410 Atlantic St
Copiague, NY 11726

## BUILDING: 1071 Elder Avenue, Bronx

| Boro - Block - Lot (BBL) | Year Built | Units |
|---|---|---|
| 2 - 03713 - 0037 | 1930 | 74 |

| Open Violations | Total Violations | 2019 Evictions | Δ RS Units |
|---|---|---|---|
| 32 | 199 | N/A | 73 → 78 |

*(hover over a box to learn more)*

View data over time ↗

### Business Entities

- 71 ELD REALTY CORP
- 71 ELD REALTY CORP.

### Business Addresses

- 2562 BRIGGS AVENUE 10458

### People

- Agent: ANGEL ORTIZ
- Head Officer: ABER TAUBER
- Site Manager: RUBEN OTERO

**Last registered:** Jul 23, 2019 (expires Aug 31, 2020)

# 500 WEST 143 St/122 HAMILTON PLACE

## ANOTHER PROPERTY ACQUIRED BY HPD
## VIA COURT ORDER IN 1978
## DESIGNATED AS
## AFFORDABLE HOUSING PROPERTY
## WITH 14-20 RENT-STABILIZED UNITS

## Detailed Document Information

| Current Search Criteria: |
|---|
| **Borough:** MANHATTAN / NEW YORK |
| **Block:** 02074 |
| **Lot:** 0040     **Unit:** N/A |
| **Date Range:** |
| **Document Class:** All Document Classes |

| | | | | | |
|---|---|---|---|---|---|
| **DOCUMENT ID:** | FT_1650008590765 | **CRFN:** | N/A | **COLLATERAL:** | N/A |
| **# of PAGES:** | 93 | **REEL-PAGE:** | 439-1808 | **EXPIRATION DATE:** | N/A |
| **DOC. TYPE:** | DEED | **FILE NUMBER:** | N/A | **ASSESSMENT DATE:** | N/A |
| **DOC. DATE:** | N/A | **RECORDED / FILED:** | 5/25/1978 | **SLID #:** | N/A |
| **DOC. AMOUNT:** | $0.00 | **BOROUGH:** | MANHATTAN | | |
| **% TRANSFERRED:** | N/A | **RPTT #:** | N/A | **MAP SEQUENCE #:** | 0 |
| **MESSAGE:** | CORRECTED (See Remarks Below) | | | | |

### PARTY 1

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| COMMISSIONER OF FINANCE NY | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

### PARTY 2

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| CITY OF NEW YORK | | | | | | |
| | | | | | | |
| | | | | | | |

### PARTY 3/Other

| NAME | ADDRESS 1 | ADDRESS 2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York ⎱
⎰ SS.:
County of Westchester

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

89 METROPOLITAN OVAL                                          11F
Street Address Unit/Apt.

BRONX                 New York,          3937          2243       (the "Premises");
Borough                                  Block         Lot

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

Lovely Meal                                      Nadia Ahmed
Name of Grantor (Type or Print)                  Name of Grantee (Type or Print)

lovely meah                                      Nadia Ahmed
Signature of Grantor                             Signature of Grantee

Sworn to before me                               Sworn to before me
this 29 day of June 20 17                        this 29 day of June 20 17
JANET MEISELS                                    JANET MEISELS
NOTARY PUBLIC STATE OF NEW YORK                  NOTARY PUBLIC-STATE OF NEW YORK
No. 01ME6059958                                  No. 01ME6059958
Qualified in Westchester County                  Qualified in Westchester County
My Commission Exp. June 11, 2019                 My Commission Exp. June 11, 2019

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

2017062800462101

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York ⎱
                  ⎰ SS.:
County of _Bronx_ ⎱

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

_____ 89 METROPOLITAN OVAL _____ , ___11F___ ,
**Street Address Unit/Apt.**

_____BRONX_____ New York, ____3937____ ____2243____ (the "Premises");
**Borough**                         **Block**      **Lot**

That the Premises is a one or two family dwelling, or a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

___Nadir  Ahmed___                    ___Lovely  T.  Meah___
**Name of Grantor (Type or Print)**          **Name of Grantee (Type or Print)**

_Nadir Ahmed_                          _Lovely Meah_
**Signature of Grantor**                      **Signature of Grantee**

Sworn to before me                     Sworn to before me
this __19__ day of __October__ 20_18_   this __19__ day of __October__ 20_18_

NEIL R KAFKO
Notary Public, State of New York
No. 02KA6304118
Qualified in Kings County
Commission Expires

**SEAL**

NEIL R KAFKO
Notary Public State of New York
No. 02KA6304118
Qualified in Kings County
Commission Expires

These statements are made with the knowledge that a willfully false representation is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

2018101900307101

# AFFIDAVIT OF COMPLIANCE
## WITH SMOKE DETECTOR REQUIREMENT
## FOR ONE- AND TWO-FAMILY DWELLINGS

State of New York

County of  Queens   }  SS.::

The undersigned, being duly sworn, depose and say under penalty of perjury that they are the grantor and grantee of the real property or of the cooperative shares in a cooperative corporation owning real property located at

33-20 105TH STREET
Street Address Unit/Apt.                                                 ,  _____  ,

QUEENS          — New York,      1719          17      (the "Premises");
Borough                              Block          Lot

That the Premises is a one or two family dwelling, or  a cooperative apartment or condominium unit in a one- or two-family dwelling, and that installed in the Premises is an approved and operational smoke detecting device in compliance with the provisions of Article 6 of Subchapter 17 of Chapter 1 of Title 27 of the Administrative Code of the City of New York concerning smoke detecting devices;

That they make affidavit in compliance with New York City Administrative Code Section 11-2105 (g). (The signatures of at least one grantor and one grantee are required, and must be notarized).

Victor Hernandez                          Victor Hernandez
Name of Grantor (Type or Print)                    Name of Grantee (Type or Print)

_____          _____
Signature of Grantor          [SEAL]           Signature of Grantee          [SEAL]

Sworn to before me                         Sworn to before me
this 12th day of June      20 18          this 12th day of June      20 18

Manuel Taveras                             Manuel Taveras
Notary Public                              Notary Public

MANUEL TAVERAS
Notary Public, State of New York
No. 02TA5084462 Qual. Queens County
Certificate Filed in New York County
Commission Expires September 2,

MANUEL TAVERAS
Notary Public, State of New York
No. 02TA5084462 Qual. Queens County
Certificate Filed in New York County
Commission Expires September 2,

These statements are made with the knowledge that a willfully false representation is unlawful and is punishable as a crime of perjury under Article 210 of the Penal Law.

**NEW YORK CITY REAL PROPERTY TRANSFER TAX RETURNS FILED ON OR AFTER FEBRUARY 6th, 1990, WITH RESPECT TO THE CONVEYANCE OF A ONE- OR TWO-FAMILY DWELLING, OR A COOPERATIVE APARTMENT OR A CONDOMINIUM UNIT IN A ONE- OR TWO-FAMILY DWELLING, WILL NOT BE ACCEPTED FOR FILING UNLESS ACCOMPANIED BY THIS AFFIDAVIT.**

2018061100441101

Form RP-5217 NYC                                                                                              ATTACHMENT

# CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and  understand that the making
of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

**BUYERS**                                                          **SELLERS**

| Buyer Signature | Date | Seller Signature | Date |
|---|---|---|---|
| | 6/12/18 | | 6/12/18 |
| Buyer Signature | Date | Seller Signature | Date |
| | 6/12/18 | | |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |
| Buyer Signature | Date | Seller Signature | Date |

2018061100441201

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:   **HON. JOHN J. KELLEY**
_____

*Justice*

PART   **IAS MOTION 56EFM**

--------------------------------------------------------------------------------X

ABRAHAM GROSS and NETTY GROSS,

Petitioners/Plaintiffs,

- v -

DEPARTMENT OF HOUSING PRESERVATION AND
DEVELOPMENT (HPD), SHATARA PELL, VICTOR
HERNANDEZ, LOUISE CARROLL, BREAKING GROUND
(BG), BRENDA ROSEN, VANESAA CUCURULLO,
TERESA PALMIERI, TRAVIS FONG, and
STEPHANIE LABARTA,

Defendants/Respondent.

--------------------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 101960/2019 |
| **MOTION DATE** | 05/02/2020 |
| **MOTION SEQ. NO.** | 001, 003 |

**DECISION, ORDER, AND
JUDGMENT and ORDER OF
TRANSFER**

The following e-filed documents, listed by NYSCEF document number 1 (Motion 001) and 50, 51, 52, 53,
54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81,
82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, and 98 (Motion 003)

were read on these respective motions to/for _____CPLR ART 78 and DISMISSAL_____.


This is a hybrid action to recover damages and for related relief, alleging violation of civil

and constitutional rights under color of state law pursuant to 42 USC § 1983, negligence, breach

of contract, and breach of fiduciary duty, and proceeding pursuant to CPLR article 78 to review

a December 5, 2019 HPD determination allegedly denying, in part, the plaintiff/petitioner's

request for agency records pursuant to the Freedom of Information Law (Public Officers Law §

84, *et seq.*; hereinafter FOIL).  By order to show cause dated December 31, 2019 (Friedman,

J.), the plaintiff/petitioner requested the court to grant the CPLR article 78 petition seeking relief

under FOIL and, inter alia, stay the defendants/respondents from, among other things, leasing

out certain apartments at the Waterline Square apartment complex in Manhattan that had been

the subject of an HPD affordable housing lottery (MOT SEQ 001).

1

Ground from leasing out one particular studio apartment and one particular one-bedroom apartment in Waterline Plaza to persons who had a less favorable apartment lottery status than the plaintiff/petitioner, pending that Court's determination of his motion for a preliminary injunction pending appeal. By Decision and Order dated December 5, 2019, a panel of the Appellate Division denied the plaintiff/petitioner's motion for a preliminary injunction pending appeal, and dissolved the limited October 2, 2019 temporary restraining order. This court thereafter declined to entertain his subsequent requests to reinstate any type of stay.

On December 24, 2019, the plaintiff/petitioner commenced the instant hybrid action and proceeding. On or about February 9, 2020, the petitioner served and filed an amended petition/complaint and motion. The amended petition/complaint asserts seven causes of action. The first through third and fifth causes of action seek to recover damages pursuant to 42 USC § 1983 for alleged deprivation of due process and other violations of constitutional rights. The fourth cause of action seeks to recover damages for negligence and pursuant to 42 USC § 1983 for additional alleged violations of constitutional rights. The sixth cause of action seeks to recover damages for breach of contract. The seventh cause of action seeks to recover damages for breach of fiduciary. Although none of the causes of action specifically seeks a review of the HPD's FOIL determination, the plaintiff/petitioner requests such relief in the body of the petition/complaint.

In their motion, the HPD defendants submit documentation and a certification establishing that they fully responded to the subject FOIL request. HPD thus discharged its duty pursuant to FOIL and 22 NYCRR 1401.2(b)(7)(ii) by certifying that "the records of which the agency is a custodian cannot be found after diligent search" (*see Matter of Rattley v New York City Police Dept.*, 96 NY2d 873 [2001]; *Matter of Lopez v New York City Police Dept. Records Access Appeals Officer*, 126 AD3d 637 [1st Dept 2015]). Although the plaintiff/petitioner "must show by more than speculation that all responsive documents were not produced" (*Matter of Mitchell v Slade*, 173 AD2d 226, 227 [1st Dept 1991]; *see Matter of Morgan v Nassau County*

3

*Police Dept.*, 197 AD2d 579 [2d Dept 1993]; *Matter of Wood v Ellison*, 196 AD2d 933 [3d Dept 1993]), he has not done so here. Hence, so much of the complaint/petition as sought to annul the HPD defendants' determination with respect to the plaintiff/petitioner's request for documents must be denied (*see Matter of Taylor v New York City Police Dept. FOIL Unit*, 25 AD3d 347 [1st Dept 2006]; *Matter of Tellier v New York City Police Dept.*, 267 AD2d 9 [1st Dept 1999]).

The remaining causes of action all seek money damages from the HPD defendants and the Breaking Ground defendants. HPD is an agency of the City of New York and the HPD defendants are represented by the New York City Corporation Counsel. Thus, regardless of whether the remaining claims state a cause of action, are barred by the doctrine of res judicata, or cannot be pursued against the HPD defendants because the plaintiff/petitioner failed to serve a timely notice of claim, the proper course of action for this court to take is to sever those causes of action, deem them to constitute a severed action, and transfer both the action and pending motions to dismiss the complaint in the severed action to a City Part of this court for disposition.

That branch of the plaintiff/petitioner's motion seeking to reinstitute the dissolved stay must be denied, as the Appellate Division has already dissolved an even more limited stay, this court has no authority to second guess the Appellate Division, and the assertions made and evidence submitted by plaintiff/petitioner do not warrant the issuance of a new stay.

Accordingly, it is

ORDERED that so much of the complaint/petition as sought judicial review of the December 5, 2019 New York City Department of Housing Preservation and Development HPD determination allegedly denying, in part, the plaintiff/petitioner's request for agency records pursuant to the Freedom of Information Law is denied (SEQ 001); and it is

ADJUDGED that so much of the hybrid action and proceeding as constituted a CPLR article 78 proceeding to review the December 5, 2019 New York City Department of Housing

4