# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

**Abraham Gross**

(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

**City of New York Et. al**

(List the full name(s) of the defendant(s)/respondent(s).)

**20** CV **4340** ( **GBD** )

## NOTICE OF APPEAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: Jul 15 2020

Notice is hereby given that the following parties: **Abraham Gross**

(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the  ☐ judgment  ☒ order  entered on:  **07/09/20**

(date that judgment or order was entered on docket)

that: **Denied Plaintiff's request for a preliminary injunction. The order does address Plaintiff's request for a fair hearing before Def. actions render this proceeding moot, nor does the order address Plaintiff's request for a fair hearing in light Def. admission they rejected 99.9% of the applicants, yet still granted dozens of apartments egregiously-unqualified applicants, nor does the order address Plaintiff's request for a hearing in light of clear and convincing evidence Defendants have corrupted the judicial process, nor does the order take into consideration- respectfully- the Court's an unbearable conflict of interest which reasonably calls into question its impartiality.**

(If the appeal is from an order, provide a brief description above of the decision in the order.)

**07/15/20**

Dated

Signature[*]

**Abraham Gross**

Name (Last, First, MI)

**40 W 77 # 10C , NY ,NY, 10024**                **10024**

Address                City                State                Zip Code

**917 673 1848**                **agross2@gmail.com**

Telephone Number                E-mail Address (if available)

---

[*] Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.

Rev. 12/23/13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ABRAHAM GROSS,                                   :

                    Plaintiff,          :

         -against-                    :

THE CITY OF NEW YORK, et al.,                    :

              Defendants.         :

                                                 :
                                                 :
                                                 :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

<div style="float:right">

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
DOC #: _____
DATE FILED: **JUL 0 9 2020**

</div>

ORDER

20 Civ. 4340 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff, who proceeds *pro se,* has filed an application for an order to show cause why a preliminary injunction and a temporary restraining order should not be issued in which he seeks, among other relief, temporary housing in one of the 22 remaining vacant apartments in the Waterline Square apartment complex in New York, New York. (*See* Mot. for Order to Show Cause for Prelim. Inj. and TRO, ECF No. 4.) To obtain such relief, Plaintiff must show: (1) that he is likely to suffer irreparable harm and (2) either (a) a likelihood of success on the merits of his claims or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. *See, e.g.*, *UBS Fin. Servs., Inc. v. W.V. Univ. Hosps., Inc.*, 660 F. 3d 643, 648 (2d Cir. 2011); *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir. 2000). Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (citation omitted).

Plaintiff's submissions do not demonstrate: (1) a likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in his favor. Accordingly, this Court denies Plaintiff's application for an order to show cause for injunctive and other relief.

Plaintiff has consented to electronic service of Court documents. (*See Pro Se* Consent to Receive Documents Electronically, ECF No. 5.) This Court hereby denies Plaintiff's application for an order to show cause for a temporary restraining order and a preliminary injunction.

Dated: July 9, 2020
New York, New York

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____x
ABRAHAM GROSS,

        Plaintiff,

                                  **CIVIL ACTION NO.**
                                  ***CV-20-04340/***
                                  ***CV-20-04515***
                                  AFFIRMATION IN
                                  SUPPORT OF ORDER
                                  TO SHOW CAUSE
                                  FOR INJUNCTIVE
                                  AND OTHER RELIEF

                          -against-

THE CITY OF NEW YORK, NEW YORK CITY DEPARTMENT OF HOUSING
PRESERVATION AND DEVELOPMENT, LOUISE CARROLL,
ANNA-MARIE HENDRICKSON, MARAGERET BROWN, BABBA HALM,
VICTOR HERNANDEZ, SHATARA PELL, EDWIN LUGO, NIDIA DORMI,
GABRIEL MOMBRUN, HAROLD WEINBERG, NICK LUNDGREN,
SAMANTHA SCHONFELD, JAMES E. JOHNSON, HELEN ROSENTHAL,
BREAKING GROUND, JEANNE-MARIE WILLIAMS, BRENDA ROSEN,
TERRESA PALMIERI, VANESSA CUCURULO, STEPHANIE LABARTA and
TRAVIS FONG.
                         Defendants.
_____x

## **INTRODUCTION**

1. Plaintiff's complaint ("Complaint"), in its proper form as submitted in Case

   20-CV-04515, alleges, *inter alia,* that by clear and convincing evidence,

Plaintiff was deprived of the single affordable housing opportunity he was granted in a decade of failed efforts, solely because of (a) his ethnicity as a non-Hispanic applicant (b) Defendants sickening corruption scam ("the Scam"). This deprivation came pursuant to Plaintiff being approved for housing on June 07, 2019, after completing a deplorable application process tainted with a sweeping contempt for federal and state housing laws. As part of the Scam, Defendants purposefully granted dozens of affordable housing apartments ("Property" or "Properties") at Waterline Square ("subject property") to a flurry of egregiously-unqualified applicants, while rejecting as many other applicants as they could. The following developments further supports Plaintiff's application for limited injunctive and equitable relief that is respectfully requested from the U.S. District Court for the Southern District of New York ("Honorable Court").

## THE STANDARD FOR LIMITED MANDATORY RELIEF

2. Based on the established interpretation of Rule 65 of the Federal Rules of Civil Procedure, to prevail on a request for a limited mandatory injunction, or temporary restraining order. the moving party must establish[1]: (1) a

---

[1] *Weinberger v. Romero—Barcelo,* 456 U.S. 305, 311–313, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982); *Amoco Production Co. v. Gambell,* 480 U.S. 531, 542, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987). *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006).

likelihood of success on the merits; (2) irreparable harm in the absence of

the injunction; (3) balancing of the equities in his favor. Here, all of these

factors heavily support granting limited injunctive relief, such that this

inexpressible, cruel, and unusual injustice be put to rest, and such that

Plaintiff can began the difficult task of rehabilitating his shattered life in the

apartment for which he is qualified for 365 days prior, and for which he has

always been qualified for, provided his application is reviewed by a

reasonable human-being, rather than by a malicious reviewer who seeks- for

unconscionable reasons- to reject as many applicants as possible.

### THE BALANCE OF EQUITIES SUPPORTS INJUNCTIVE RELIEF

3.  ***First,*** on May 23, 2020, out of the blue, Defendant HPD declared that out of

    269 units, there were 22 units left which would be subject to a new lottery

    (EXHIBIT A). In other words, the fact that Plaintiff was #103 out of 74,000

    applicants for the first time in ten years, meant absolutely nothing. The fact

    that under the lower income criteria, Plaintiff matched even according to

    Defendants meant absolutely nothing. Furthermore, page 33 of the

    Handbook states:

    > When the Project's waiting list is exhausted, the
    > Developer or re-rental agent must notify the Agency. The
    > Agency requires a fair resident selection process and

3

compliance with HPD-HDC eligibility criteria for
re-rentals for the duration of the regulatory agreement.

4. Accordingly, based on their rules, for Defendants to subject the remaining
22 units (out of 269 total) to a new lottery means that Defendants vetted
74,000 applications, 247 applicants were found eligible and awarded
Properties, and  73,753 applications were rejected. In other words, 99.9% of
the applicants were deemed ineligible for affordable housing. Respectfully, a
reasonable mind cannot avoid the conclusion this fact attests to Defendants
predetermined intention to reject as many candidates as possible,
substantiation the essence of Plaintiff's action. Ostensibly, Defendants
would counter by arguing the 99.9% rejection rate stems from their strict
adherence to the guidelines[2].

5. ***Second,*** this theory is demolished by public record proving affordable
apartments were awarded to a barrage of unqualified candidates (vast
majority of which were of hispanic ethnicity), councilmembers, residents
who own other apartments, and/or reside simultaneously in other Properties,
pursuant to *winning more lotteries,* in express violation of Defendants rules-
page 57 of the HPD Marketing Handbook ("the Handbook").

---

[2] Granted, this assertion is inconsistent with a tsunami of substantiated violations of the rules- some of
which Defendants reluctantly admitted and apologized for.

6.  On June 28, 2020, Plaintiff emailed the respective counsels for Defendants ("Counsels") a list of current residents (EXHIBIT B) at the subject property who were granted Properties in violation of numerous HPD regulations, as demonstrated by commercially-available public records ("Records").

7.  To clarify, the Records that link a specific resident to a specific Property are utilized globally by millions of customers who purchase such Records to conduct tenant/employment, criminal/sex offernder and/or other types of background checks. Vendors who compile Records- such Whitepages, BeenVerified- work tirelessly to ensure the information is accurate and updated. Simply put, landlords/ employers would not pay- much less rely on- Records unless they were reliable. Plaintiff is not suggesting that Records are foolproof, rather, that they are generally accurate- particularly when they reveal an overwhelming pattern.

8.  Furthemore, since the Records are compiled by cross-referencing multiple databases- including property tax bills, property transfer deeds, court records, USPS change of address forms, public directories, voter registration forms, and social media- it is not a simple task to alter the data within.

9. The list proved that during the time Defendants demonstrated a callous disregard to Plaintiff's prolonged homelessness, they also purposefully

corrupted the Process by granting dozens of apartments to *unqualified lottery winners.* As Counsels are prohibited from aiding the criminal conduct of their clients, Plaintiff requested that Counsels refrain from instructing their clients to cover their tracks. Nevertheless, consistent with the utter disregard to the ABA Rules of Professional Conduct, Counsels demonstrated throughout the prior proceedings ("State Proceedings"), on June 29, 2020, a migration set about in the subject property in which every unlawful resident that was named by Plaintiff, evacuated the property[3]. Respectfully, the Honorable Court should not disregard the cynicism arising from the fact that for the past year, Defendants regurgitated that "we would love to help Plaintiff, but have to follow guidelines".

10. ***Third,*** Plaintiff has obtained new, incontrovertible evidence of Defendants fraud on the court. Based on prior experience, at the moment Plaintiff shares such evidence, Defendants scramble to delete incriminating information from public records (EXHIBIT C). Accordingly, Plaintiff asks the Honorable Court to grant a special hearing in which he can present the

---

[3] Respectfully, in prior proceedings, Plaintiff was crippled at every turn by the Court's instant adoption of all of Defendants assertions as fact, even in cases where the record squarely refuted such assertions. Plaintiff is respectfully pleading with the Honorable Southern District to recognize the significance of the Defendants repeated attempts to alter incriminating information, as they have done time and time again.

evidence before an honorable judge, prior to Defendants abusing their credentials to delete information from public databases.

11. **Fourth,** an independent government agency has already vetted and substantiated the Property embezzlement of multiple Defendants, including, the property manager at the subject property, Defendant Mombrun (EXHIBIT D), and the Director of Affordability and Oversight at HPD, Defendant Hernandez (EXHIBIT E). Both of these individuals had extensive involvement in the decision to reject Plaintiff, and could not possibly be said to have been objective, given their own predisposition to transfer Properties to themselves, free of charge.

12. **Fifth,** the sickening bribe given to the Councilmember (EXHIBIT E1). Based on a reliable source, pursuant to Plaintiff protesting this bribe, the Council member immediately evacuated the premises.

13. **Sixth,** who is fighting this war and what are the real motivations underlying Defendants ferocious, expensive war (the estimated $250,000 in legal fees are equivalent to 15 years of affordable rent at the subject property) to deprive a low-income, affordable housing applicant of the only chance he ever received? It is impossible to reconcile the indifference-to-suffering demonstrated by Defendants with the flurry of evidently-false declarations found on Breaking Ground's website:

> At Breaking Ground, we believe everyone deserves home.
>
> Breaking Ground employs a range of effective, data-informed initiatives designed to enable people to forever escape the trauma of homelessness.

> For individuals experiencing street homelessness who are
> not yet ready to transition into permanent housing, as
> well as those who may have struggled in other housing
> programs, our Safe Havens offer an alternative to life on
> the street: private, safe, clean, and affordable short-term
> accommodations.
>
> We operate more than 4,000 (and counting) units of
> transitional and permanent housing for low-income and
> formerly homeless individuals.
>
> More than 4,000 people sleep under a Breaking Ground
> roof each night.
>
> We place at least 500 individuals in transitional or
> permanent housing each year.

14. Furthermore, through the 493 days of hell Defendant Breaking Ground

inflicted on Plaintiff (since Plaintiff's initial interview on March 1, 2019), it

is reasonable to hope Breaking Ground would at least try to accommodate

Plaintiff in one of its "4,000 and counting units", prior to Plaintiff being

forced into shelter. Not a single such attempt was made. Nor did the

outbreak of an unprecedented pandemic impede the relentless refusal to

reconsider Breaking Ground's shifting determiantions- all based on

conclusory numbers that have never been explained, and two out of three of

which arbitrarily invoked a rejection cause that is banned by the Breaking

Ground-HPD regulatory agreement ("inconsistent information").

15. In light of the pandemic HPD released the following statement:

> We are pleased to introduce new changes to the Housing
> Connect lottery process, aimed at moving New Yorkers into

stable, affordable housing as quickly as possible, during the COVID crisis and beyond[4].

HPD will be implementing a temporary addendum to the Marketing Handbook during this time to expedite the processing of applications to get qualified applicants into affordable housing as quickly as possible[5].

16. Furthemore, HPD's own Marketing Handbook is abundant with provisions that give HPD the authority to consider homeless referral (which Plaintiff was since September 23, 2019), emergencies, and other extenuating circumstances, for example[6]:

> the Developer or agent responsible for re-rentals may, with the written permission of the Agency, modify its processing of the waiting list to provide a preference or set aside for emergency housing placements or relocations (page 33).

17. The Agency may also amend these policies and procedures for individual Projects (for initial rentals or re-rentals from a waiting list) to authorize the owner to give a preference or set-aside for referrals of homeless persons from the Department of Homeless Services, provided **that the homeless persons meet program eligibility criteria (i.e., have incomes at or below the maximum allowable income for eligibility) (page 40).**

---

[4] https://www.kingscountypolitics.com/city-relaxes-roadblocks-for-affordable-housing-lottery/
[5] HPD Marketing Guide-Covid 19 Memorandum.
[6] For a more detailed discussion of the unconscionable ways Defendants disregarded dozens of explicit provisions that aim to protect the integrity of the process see Sup Crt. 101960/2019 Docket #20, and Appl. Div 2019-04206 Docket #27, EXHIBITS H11-H14.

**THE IRREPARABLE HARM: IMMINENT THREAT OF THE CORONAVIRUS SUPPORTS SAID RELIEF**

18. ***First,*** to date, more than 11.5 million people tested positive for coronavirus, of which more than 540,000 people have tragically passed, and an unknown number of others are in critical condition. There has been a sharp spike in recent cases in the United States. For obvious reasons, Plaintiff's inexpressible suffering and risk to human life is exacerbated by a perpetual state of homelessness. Respectfully, why must a sensible judicial conscience be indifferent to these extenuating circumstances?

19. ***Second,*** at the onset of the global health crisis, all branches of NYS government- executive, judicial, and legislative- took active measures that are demonstrative of human compassion, rather than inhuman indifference. These measures include a sensitivity to protect the homeless population during the pandemic. In doing so, our government rejected the position that it is appropriate to show indifference to the torture endured by a qualifed affordable housing candidate, pursuant to prolonged homelesness, while an abundance of immediate solutions are available.

20. ***Third,*** by executive order, evictions across New York State have halted. In doing so, the executive branch demonstrated, yet again, compassion for people who would otherwise be homeless during a pandemic.

21. ***Fourth,*** by the grace of God, Plaintiff has not contracted the coronavirus as of today. Regretfully, this can change at any minute. Plaintiff's grandfather, in his 90's, has tested positive for COVID-19, and is at Mt. Sinai in intensive care. Plaintiff's father has also tested positive for the virus. Plaintiff's mother, as Defendants are well-aware, has been battling for the past ten (10) years with a crippling auto-immune disease that impedes her speech and mobility. Prior to applying to the subject property, Plaintiff was his mother's full-time personal aid. Plaintiff's mother desperately needs his help for physical therapy and attending critical doctor appointments. Waterline Square is located within walking distance to his mother's apartment, and by far- the Property closet in proximity. Defendants know these facts but continue to demonstrating indifference that is baffling considering Defendednt own mission statement.

## THE LIKELIHOOD OF SUCCESS SUPPORTS SAID RELIEF

22. ***First,*** the right for adequate shelter is well-established[7] in New York State and New York City. The New York State Constitution specifically obligates the state to care for those in need: "the aid, care and support of the needy are

---

[7] *Callahan v. Carey, No. 79-42582 (Sup. Ct. N.Y. County, Cot. 18, 1979); Eldredge v. Kock, 118 Misc. 2d 163 (N.Y. Sup. Ct. 1983); McCain v. Koch, 511 N.E. 2D 62 (N.Y. 1987).*

public concerns and shall be provided by the state and by such of its subdivisions...[8]". This provision was the basis for the landmark First Department *Callahan* case[9], in which New York City recognized the right of every homeless man to receive adequate shelter and board (in *Eldredge*[10], *Callahan* was expanded to apply to homeless women, and in *McCain*[11], *Callahan* was expanded to include homeless families).

23. As a resident of New York City, Plaintiff has a right for adequate shelter. Due to the current extenuating circumstances of an unprecedented global epidemic, Plaintiff's right for adequate shelter is denied when forced into an dangerous environment where there is a high probability of contracting the coronavirus. Although the Court has consistently shown indifference - and worse- to this reality, Plaintiff prays with the Honorable Court to recognize the travesty that has transpired.

24. After applying for ten years to affordable housing, Plaintiff finally was promised- after a long application process- that he had completed the application process, and would be coming to sign a lease. Permanent

---

[8] Article XVII, Section 1 of the New York State Constitution.
[9] *Callahan v. Carey, No. 79-42582 (Sup. Ct. N.Y. County, Cot. 18, 1979).*
[10] *Eldredge v. Kock, 118 Misc. 2d 163 (N.Y. Sup. Ct. 1983).*
[11] *McCain v. Koch, 511 N.E. 2D 62 (N.Y. 1987).*

housing is in itself a valued public interest, as evident by the very concept of affordable housing.

25. By virtue of Defendants misconduct, it is just and appropriate for Defendants to remedy Plaintiff's peril by granting him the long term- or at least, temporary- housing opportunity to which, at the very least, he has made a compelling case for eligibility, providing his application is reviewed objectively, and without prejudice.

26. Rather than force Plaintiff to seek refuge in a shelter that is inadequate due to the risk of death, Defendants should, as a matter of law, equity, and common sense, utilize the express authority granted to them[12] to cure the harm caused by their Scam.

27. ***Second***, Plaintiff's income has always been a match to the property. For a detailed illustration of the malicious ways Defendants "miscalculated" Plaintiff's income and disregard countless statutory obligations, please see Sup. Crt. 101960/2019, Dockets #4 (FOIL violations), #20 (income-calculation violations), Appl. Div. Docket #9, 04206- EXHIBITS A1-A10, and Docket #27, pages 194-232.

---

[12] In this context, the Court's settlement recommendation, the minimum income waiver for DHS referral pursuant to page 40 of the Handbook, the authorization granted pursuant to extenuating circumstances provisions on pages 41, 42, and 56, and the fairness requirement on page 05 further support the grant of a limited injunction.

28. ***Third***, as stated, Defendants announced there are 22 available units that will be subject to a second lottery and that the new income criteria has been lowered to $27,875-$31,840, under which Plaintiff would qualify even according to the Defendants cryptic and the Court's calculations (see page 5 of the Court's Order dated August 16, 2019, case 101081/2019).

29. ***Fourth,*** in light of the overwhelming evidence of fraud on the court, Defendentad elaborate Scam, orders that were procured by fraud should be vacated. As one illustration, Plaintiff has presented clear and irrefutable evidence that the process by which cases should be randomly assigned was corrupted[13].

30. ***Fifth,*** in prior state proceedings, the Court enthusiastically endorsed Defendants above-the-law stance. That the Court's most recent order admitted- in effect- that the State Proceedings were unlawfully assigned to the Court- a designated Trial Part, rather than being assigned to a special proceedings City Part-ought to, respectfully, unnerve the judicial conscience.

## THE INTERESTS OF JUSTICE SUPPORT REVERSING THE DISMISSAL OF CASE CV-20-04515

---

[13] https://www.youtube.com/watch?v=eOo-7n9dIik&t=4s

31. To supplement the reasons aforestated in Plaintiff's letter addressed to the Hon Chief Justice, Plaintiff respectfully expounds upon the rationale of dismissing case *CV-20-04340  ("the former")* and reninstating case number *CV-20-04515 ("the latter"): (*a) These complaints are substantially different. The latter is more than double the length of the former and includes additional legal arguments (b) Plaintiff never intended for the former to be his formal complaint, as clearly evident by the fact it was not signed, contained no address, and lacked commencement papers (c) the Clerk's office confirmed in a phone conversation that the former was null and void (d)  the Honorable Courts own rules clearly state that if the Complaint lacks the most basic elements- such as a signature, name, address, it will be disregarded (e) Plaintiff received written confirmation for the latter, but received nothing for the former (f) On platforms- such as Justia- that register all the cases filed everyday in federal court in real time- the former is nowhere to be found. As such, respectfully, it would be an injustice to force Plaintiff to amend the former when he invested countless hours in creating the latter, and had every reason to rely on the Honorable Court's published rules, and the confirmation he received that the former was null and void.

**CONCLUSION**

32. Plaintiff has lost the past year of his life to inexpressible harm as a direct result of an unthinkable travesty. Plaintiff continues to suffer everyday, despite dozens of vacant apartments for which he is eligible-based, *inter alia*, on Defendants rules pertaining to homeless referrals, Defendants newly-declared relaxed pandemic regulations and pursuant to the recent changes Defendants declared in the income criteria  levels (EXHIBITS A_O of the Complaint).

33. On May 23, 2020, for the first time, Plaintiff had a sliver of hope that the excruciating sledgehammer of injustice would be replaced by an iota of truth and sensibility. Defendants reluctantly stated that twenty-two apartments were left. This declaration creates a rare opportunity which will be lost forever as soon as the lottery is held. Defendants are undoubtedly eager to state there are no apartments are left and solidify this travesty. It is clear based on the horrors that have transpired that Plaintiff will never be given a fair chance in a new lottery.

**PRAYER FOR RELIEF**

34. For all the reasons stated herein, in the Complaint, and by virtue of the public policy considerations arising from this sickening Scam, Plaintiff

respectfully- if desperately as the court for limited injunctive relief[14] as follows:

I.     Limited relief to escape the deadly threat of the coronavirus, based on the merits and the compelling evidence of an inexpressible misscarriage of justice.

II.    Alternatively, the application process should be temporarily frozen until Defendants provide to the Court a reasonable explanation as to why so many apartments were egregiously awarded, while Plaintiff and others continue to suffer?

III.   Defendants must stop the horror show as it pertains to their utter contempt for the Freedom of Information Law requests relating to Waterline Square (see Sup. Crt 101960/2019 Dockets #4-#20 and beyond).

IV.    Grant all parties an emergency hearing in which Plaintiff can present clear and irrefutable evidence that Defendants have corrupted the judicial process.

---

[14] Respectfully, the evidence supporting Defendants horrific conduct as illustrated in NYSCEF Appl. Div. First Dep. 2019-04206 Dockets # 9, #27, #32, #36, #37- is overwhelming.

V.     As there are many other plaintiffs with which Plaintiff has connected, may the Honorable Court consider hiring a pro bono class action attorney in some capacity.

VI.    Due to the sickening breach of administrative integrity of top NYC public officials and the corruption of the judicial process, may the Honorable Court consider ordering an investigation from an uncompromised federal investigative agency that has no ties or affiliation to the practice of transferring Properties for free.

VII.    Invalidate case CV-20-04340 and reinstate case CV-20-04515.

VIII.   Any further legal and equitable relief that the Honorable Court deems appropriate and just.


I, hereby affirm under the penalty of perjury that the forgoing is true and accurate to the best of my knowledge and belief.


Respectfully submitted,


Abraham Gross

**Dated: July 06, 2020**

18