## LETTER REQUESTED IN ORDER OF THE HON. JUDGE NETBURN, DATED JULY 24, 2020, AND PLAINTIFF'S SUBSEQUENT REQUEST FOR A HEARING

Dear Hon. Judge Netburn,

1. In response to the Honorable Judge's order dated July 24, 2020, the address of Defendant Ms. Rosenthal to effectuate service is at her district office (a) 563 Columbus Ave, New York, NY 10024, or at her legislative office address (b) 250 Broadway Suite 1744, New York, NY 10007. The address for Defendant James E. Johnson is at the Corporation Counsel, 100 Church Street, New York, New York 10007.

2. It is respectfully submitted that in accordance with the Hon. Chief Judge's order dated June 25, 2020, Plaintiff is in the process of amending the *incomplete version* of the complaint in case 20-CV-4340 to include (a) the crucial data in the *complete version* (case 20-CV-4515 which was dismissed) (b) incorporate Defendants most recent, egregious attempts to conceal their criminal conduct by modifying public records.

3. To clarify, the *complete version* of the complaint was sent via email to opposing counsels, on **June 23, 2020**. Counsel for Defendant HPD stated that she would accept email service on June 23, 2020 (EXHIBITS A). It is pertinent to note that the *incomplete version* of the complaint, deemed to be the binding version albeit Plaintiff's protests (a) lacked crucial elements such as exhibits/causes of action (b) was never acknowledged by the Office of the Clerk Court ("the Clerk") as received (c) lacked commencement papers (d) lacked a signature (e) lacked an IFP form in contrast to *the complete version* that was confirmed as received and which contained all of the aforesaid (f) was confirmed by the Clerk to have been rendered void, *inter alia,* in light of the *complete version* having been processed (g) based on the Court's rules, a complaint lacking these crucial elements will not be processed (h) based on real-time tracking platforms (such as Justia), the *incomplete version* was not processed on July 05, 2020 or thereafter.

4. Respectfully, these facts are salient for two reasons: ***first,*** pursuant to Plaintiff's fundamental rights being methodically deprived in prior-state proceedings, Plaintiff is praying for this proceeding to be fair, impartial and to honor due process. It is a sad testament for our constitution that Plaintiff's rights, for example, the right for an impartial judiciary was aside by Defendants corrupting the random assignment of cases, instead steering the state-proceeding to a judge who, respectfully, holds glaring conflicts of interest as relating to affordable housing, and who adjudicated an outrageously-high

number of agency proceedings, pro se litigants, and special proceedings, despite (a) that court being designated as a trial part (b) official court procedures requiring the state-proceeding to be assigned to an agency-specific part.

5. Critically, Your Honor, this the Southern District of New York ("Hon. Court") has jurisdiction over the corruption of the legal process in prior state-proceedings, as it is intrinsic to the substance of Plaintiff's claims pursuant to the Racketeer Influenced and Corrupt Organizations Act (1970).

6. *Second,* delaying Defendants time to answer the complaint, prejudices Plaintiff as result of Defendants proven intention to deprive Plaintiff of the only affordable housing opportunity he ever received, by awarding the final 22 apartments to other candidates, as quickly as possible. Based on their conduct in state-proceedings, Defendants want nothing more than to state "sorry, we awarded all of the affordable apartments".

7. Your Honor, respectfully, since submitting the complaint, a series of unnerving developments have already inflicted prejudice on Plaintiff, and as such, highlight the necessity for a conference, prior to Defendants inflicting additional harm.

8. *As a first example*, pursuant to Plaintiff protesting in his Complaint that Defendant Ronsenthal was awarded by Defendants (and co-conspirators) a luxury apartment in the complex adjacent to subject property, without any notice of vacancy and/or lease agreement ever being filed in exchange for hanging Plaintiff out to dry, lo and behold, Defendant Rosenthal (a) promptly moved out of this apartment (b) began to substantially modify her housing records, including records from thirty years prior (EXHIBIT B).

9. In state-proceedings, the court would likely adopt without further inquiry counsel's assertion that the sudden expansion and retreat to a luxury property controlled by the Defendants, adjacent to Waterline Square, on dates which perfectly align the councilmember's transition from vowing to fight an "outrageous injustice" to insisting Plaintiff "must go into a shelter"- is merely coincidental.

10. Plaintiff asks this Honorable Court not to follow suit. Defendant Rosenthal is an elected public official of the district containing the subject property, and serves on the NYC Council Housing Committee. Pursuant to being tortured, Plaintiff begged for help as an aggrieved constituent. Both Defendant Rosenthal and her assistant, Ms. Riviera, stated their familiarity with HPD and Breaking Ground's outrageous selection process. Defendant Rosenthal vowed to elicit a detailed and specific explanation from Defendants- as required by the HPD Handbook (page 28)- that would illuminate the cryptic

mathematical conclusions that were blatantly inconsistent with 350 pages of financial documents, and which remained unexplained as these words are written.

11. Rather, Defendant Rosenthaul's actions and her subsequent attempt to modify information from housing records is highly significant, and respectfully, far below the standard of integrity that the public should expect from an elected councilmember. This Hon. Court should, respectfully, not turn a blind eye to Defendants active attempts to conceal a sickening corruption scam that is offensive to the public interest.

12. *As a second example*, in response to Plaintiff proving to counsel that Defendants awarded numerous apartments to unqualified applicants of Hispanic ethnicity (EXHIBITS C), the Defendants immediately took active measures to modify the incriminating information rendering them ineligible. Regretfully, neither Defendants nor their counsel are troubled that the same public officials who rejected Plaintiff's application allowed a long list of unqualified residents to gain apartments, even as Plaintiff was suffering in a shelter during the global pandemic.

13. Respectfully, the Defendants who have proven their ability to change incriminating records should not be given the autonomy to continue destroying material evidence. Plaintiff respectfully seeks to argue in favor of a court order that will prevent Defendants and/or any current resident in Waterline Square from deleting/modifying incriminating housing information without written prior notice to the Hon. Court. Plaintiff also asks to argue before the Hon Court that the appointment of a counsel- in some capacity- is heavily warranted in light of the threat to the public interest and the millions of other applicants who were wrongfully-rejected.

14. *As a third example,* Plaintiff has obtained new incontrovertible evidence of the sickening manner in which Defendants have corrupted the judicial process. Plaintiff asks to present this evidence in a conference. In conclusion, a timely preliminary conference is warranted prior to the Defendants inflicting further harm on Plaintiff's ability to prosecute his case.

Respectfully submitted,

July 28, 2020

Abraham Gross
Pro Se Plaintiff
917 673 1848 // agross2@gmail.com

# EXHIBIT A

 **Avi Gross** <agross2@gmail.com>   Tue, Jun 23, 11:04 AM    
to Jeanne, Monica, Samantha

(1) Ok. Thank you for responding.
(2) Ms. Schonfeld, where should I serve?
(3) As counsels, please take notice of additional evidence substantiating the criminal corruption scam involving your clients.
Please note that this particular information has already been vetted and substantiated by the Department of Investigations.
(3a) The HPD project manager of Waterline Square who was heavily involved in processing my application and who had multiple communications with Breaking Ground unlawfully acquired two affordable housing properties, including one in a luxury complex similar to Waterline Square, apt 12M in the Hub, where he lived since 2017 (in addition to another affordable property for which he was ineligible).
(3b) Pursuant to this information was first submitted in February 2020, the project manager for Waterline Square immediately moved of the affordable apartment he embezzled, and transferred it to his sister.
These egregious actions- corruption, fraud, falsification of records, and embezzlement of public property- conducted by the project manager at Waterline Square, with extensive ties to HPD, Breaking Ground, and The Department of Investigations, cast a heavy shadow of doubt on the integrity of your clients, and whether it can be said that either of them protected integrity.

I trust that you will take into careful consideration this criminal conduct.




**Schonfeld, Samantha (LAW)** <sschonfe@law.nyc.gov>  Jun 23, 2020, 12:39 PM
to me, Jeanne, Monica

You can serve me electronically at serviceecf@law.nyc.gov.


**Avi Gross** <agross2@gmail.com>  Jun 23, 2020, 12:55 PM
to Samantha, Jeanne, Monica

Thank you Ms. Schonfeld.

Respectfully,

As it pertains to the alleged criminal conduct of your clients, Mr. Mombrun was the designated project manager at Waterline Square, and the Plaintiff's primary point of contact.
Mr. Mombrun was also seen coming out of a specific affordable unit in Waterline Square.
Considering the extent to which Mr. Mombrun's conduct is intrinsically-related to the case at bar, and the severity of his conduct, your honest answers would be greatly appreciated.

(1) Did either of you have knowledge that Mr. Mombrun acquired-for-free a luxury affordable housing apartment in the HUB?
(2) Did either of you know that Mr. Mombrun moved out of the HUB in February 2020?
(3) Did either of you have any contact with Mr. Mombrun with regards to the case at bar?
(4) Were either of you consulted about Mr. Mombrun's decision to leave HPD in the middle of the Waterline Square lease-up process?
(5) Were either of you away that Mr. Mombrum was a former DOI investigator?

Respectfully, while I recognize that you are under no obligation to respond, considering the extent to which Mr. Mombrun's conduct is intrinsically-related to the case at bar, and the severity of his conduct, your honest answers would be greatly appreciated. If you choose not to answer these questions, please kindly explain why, as it respectfully seems like the appropriate and ethical thing to do.

# EXHIBIT B



# #3 Helen Rosenthal

| | |
|---|---|
| Full Name: | Helen Rosenthal |
| First Name: | Helen |
| Last Name: | Rosenthal |
| Gender: | Female |

| | |
|---|---|
| State: | NY |
| Zip Code: | 10069 |
| City: | New York |
| Country: | US |
| Address: | 400 W 63rd St Apt 2404 |





https://breakingground.org/who-we-are/

**Who We Are**

**What We Do**

**Our Housing**

**Our Results**

**News & Events**

**Support Us**

Press

Careers

## Mission and Model

In 1990, a small group of people came together to bring to scale a new model of housing for people who were experiencing or at risk of homelessness - **permanent supportive housing**. The result was Breaking Ground's Times Square residence.

Nearly 30 years later, the Times Square remains the largest supportive residence in the country, and thousands of people have been able to escape or avoid life on the streets by finding a home in one of its 652 apartments.

Today, Breaking Ground operates nearly 4,000 units of housing across New York City, along with housing in upstate New York and Connecticut. Supportive housing - affordable housing paired with wraparound services designed to help people maintain their homes for the long-term - is widely recognized as a proven and cost-effective solution to chronic homelessness.

But we didn't stop at providing housing. Breaking Ground's programs and services help people experiencing street homelessness - especially those who have been on the streets the longest - to come indoors. Through our **Street to Home** outreach program and **transitional housing** resources, we help people get, and stay, on the path to a permanent home.

# 40 Riverside Blvd is an Alternate Address for the Aldyen/Ashley at 400 West 63.



**OUR HOUSING**

## 40 Riverside

40 Riverside Blvd, New York, NY   VIEW MAP ↓

Developed as part of a larger condominium project, Extell Development Company transferred 40 Riverside to Breaking Ground upon its completion in 2015. We own and manage the building's 55 permanently affordable apartments, located in a rapidly transforming neighborhood. With a mix of studio, one- and two-bedroom apartments, 40 Riverside is home to low-income individuals and families with children (at or below 60% of the area median income).

## Overview

| HOUSING TYPE | Permanent |
|---|---|
| OPENED | 2015 |
| UNITS | 55 |
| RESIDENTS | Low-income individuals and families with children |

**Who We Are**

**What We Do**

**Our Housing**

**Our Results**

**News & Events**

**Support Us**

Press
Careers
Contact Us
Search

# EXHIBIT C

**Avi Gross** <agross2@gmail.com>　　　　　　　　　　　　　　　　　　　　　　　Fri, Jun 26, 5:24 PM
to Jeanne-Marie, Monica, Samantha

Respectfully,
I am attaching the following to support my continual pleading that you should stop aiding the criminal actions of your clients in connection with affordable housing.
Further, from a human standpoint, I asking you to take a hard look at the fact your clients claim that they were forced to reject me because I was ineligible, but the same rules do not apply to the following egregious cases .
While I have been suffering for over 250 days, these unqualified people lived in waterline square.
While you stood in court and swore that your clients acted fairly and objectively, these people lived in waterline square.
As attorneys, I am again pleading with you to stop supporting corruption, fraud, and embezzlement of public property.
As human beings, I am asking for mercy and compassion.



Michal M Acevedo ...



 **Avi Gross** <agross2@gmail.com>  Fri, Jun 26, 8:34 PM
to Jeanne-Marie, Monica, Samantha

Dear Hon . Counsels,
Please take a moment to recognize that while you stood in stood in oral argument in the Supreme Court and Appellate Division , Tatayana Maldano and Michael Acevedo - two of many unqualified candidates lived in Waterline Square.

Respectfully, where was your clients due diligence with regards to these applicants ?

Respectfully , so it is ok to reject me for dubious claims that are inconsistent with the regulatory agreement and the Handbook, but it is ok for Maldano Acevedo and a flurry of other unqualified candidates to break the law?

Respectfully, I do not understand why both of you are so cynical about the oath you have both taken. It is very sad to see two attorneys fortify themselves in aiding a sickening, greed-and-discrimination-based criminal enterprise , without any hesitation- while a qualified homeless applicant who didn't pay bribes , who doesn't own real estate out of NY and who doesn't live in other affordable apartments - battles the deadly pandemic .

It's sad when attorneys fight to protect a criminal enterprise that deprives the public of affordable housing. And it is even sadder when this becomes possible by corrupting the judicial process .

Please kindly find an iota of compassion and
Common sense .

Thanks



**Avi Gross** <agross2@gmail.com>　　　　　　　　　　　　　　　　　　　　　 Jun 29, 2020, 8:21 AM
to ag1-adc, ad3agc, Jeanne-Marie, Monica, Samantha

https://www.youtube.com/watch?v=AxWp9IL2yh4

https://www.youtube.com/watch?v=c_fS2pBc3fw

Good morning.

Respectfully, having shared with you clear and convincing evidence that based on reliable public records substantiated by the recorded conversations of current residents at Waterline Square, there are a flurry of unqualified people living in affordable housing apartments- while I (and some of the other 73,700 applicants who were rejected) was subjected to hell of homelessness during the pandemic- despite being qualified based on my income, and based on my referral from a homeless shelter, I am eagerly awaiting for you to explain how and why it was ok for your clients to approve these egregiously-unqualified applicants.

Furthemore, respectfully, since your clients actions as proven by public records amount to fraud, embezzlement, perjury and falsification of records, I would ask that as legal counsel you would have the decency to address these unnerving facts, rather than pretend they don't exist.

I am also respectfully asking for your bar license number such that I can file a formal complaint with the grievance committee.

Further, respectfully, are you sworn in with the Court of Appeals?

Thank you for your cooperation.

Best,
Abraham Gross
Pro Se Litigant
Appellate Case First Department , Case number, 2019- 04206 Abraham Gross vs. HPD Et. al
Civil Supreme Court, Case number, 101960/2019
Civil Supreme Court, Case number, 101081/2019



