UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ABRAHAM GROSS, NETTY GROSS,

    Plaintiffs,

                        **Plaintiff's [Proposed]**
                        **Civil Case**
                        **Management Plan and**
                        **Scheduling Order**
                        **CIVIL ACTION NO.**
                        **20-CV-4340**

    -against-

                The City of New York et. al

                      Defendant(s).

      With gratitude to Counsels, Ms. Jasmine Paul (HPD), Ms. Laura Juffa (Breaking Ground), and Ms. Williams (representing herself), who have demonstrated kindness and courtesy, Abraham Gross ("Plaintiff"), respectfully submits to the Southern District of New York ("the Honorable Court") this Proposed Civil Case Management Plan and Order pursuant to Federal Rule of Civil Procedure 26(f):

<u>Preliminary Statement:</u>

      i.    Your Honor, this is a morally-reprehensible, humanitarian crisis that is offensive to the essence of American jurisprudence.
      ii.    The lives of two people have been subjected to inexpressible suffering, solely for the sake of furthering the Defendants criminal enterprise.
      iii.    This is the sad truth, backed by hard evidence-a substantial amount of which was uploaded to NYSCEF/ECF, and referenced in Plaintiff's prior submissions.
      iv.    These atrocities should, respectfully, never be tolerated in a civil society- much less by a court of law.
      v.    The callousness exhibited during a pandemic by public agencies with the resources and mandate to help the homeless population- is incomprehensible.
      vi.    Further, it is beyond-suspect that Defendants are investing hundreds of thousands of dollars, solely to deny a low-income, homeless applicant of the only opportunity he qualified for in a decade, pursuant to which he was rejected under dubious circumstances that are expressly prohibited by the regulatory agreement. Absent a

           nefarious intent, why would Defendants spend more than 35 times what Plaintiff's rent would have been?

vii. Plaintiff is now coping with the crippling stress of his imminent return to the public shelters. These words are written as Plaintiff packs his personal possessions- many of which were lost or damaged by virtue of prolonged homelessness caused by Defendants conduct.

viii. The right for adequate shelter is well-established in New York State[1]. Due to the pandemic, these shelters are extremely dangerous and inadequate.

ix. Plaintiff's well-established right for adequate shelter is being deprived by being forced into harmful conditions in which there is a high likelihood of contracting COVID-19.

x. Respectfully, why should the Honorable Court continue disregarding the deprivation of Plaintiff's protected right for adequate shelter?

xi. This right is but one on a never-ending list of civil and constitutional rights that have been utterly ignored.

xii. It should, respectfully, disturb the judicial conscience that a pro se litigant's rights continue to be set aside, as if they were discretionary. This has, respectfully, been the pervasive theme throughout these proceedings.

<u>Wherefore, Plaintiff respectfully asks the Honorable Court:</u>

xiii. Is it just for the judicial conscience to, respectfully, continue turning a blind eye to severe human suffering that is entirely unnecessary and meritless? And to continue endorsing public officials acting who are acting so callously- in particular when the evidence of Defendants culture of corruption is overwhelming?

xiv. Is there no limit as to how cynical, inhuman, fraudulent and corrupt Defendants are permitted to act before the Judiciary steps in to protect the public?

xv. Is it appropriate for Plaintiff and his ill mother to continue suffering, when the Defendants- based on hard evidence available on ACRIS, much of which has been submitted-have embezzled countless affordable properties, which they nonchalantly continue to enjoy?

---

[1] *Callahan v. Carey*, No. 79-42582 (*Sup. Ct. N.Y. County, Cot. 18, 1979*); *Eldredge v. Kock*, 118 Misc. 2d 163 (*N.Y. Sup. Ct. 1983*); *McCain v. Koch*, 511 N.E. 2D 62 (*N.Y. 1987*). Said cases heavily relied on Article XVII, Section 1 of the New York State Constitution: "the aid, care and support of the needy are public concerns and shall be provided by the state and by such of its subdivisions, and in such manner and by such means, as the legislature may from time to time determine".

    xvi.    In the interests of human decency, can the Honorable Court please consider ordering that Plaintiff be given a chance to avoid public shelters by temporarily residing in one of the countless affordable apartments that were embezzled by the Defendants and/or by Defendants co-conspirators[2]?

1. <u>Meet and Confer:</u>

    i. The parties met and conferred on September 10, 2020 and September 29, 2020, without Co-Plaintiff Netty Gross, who has suffered from a rapid deterioration in her mental and physical health.
    ii. The amended complaint ("Complaint") was filed on September 25, 2020, and posted by the Pro Se Intake Unit on September 28, 2020. The Complaint adds Netty Gross as a plaintiff.
    iii. As stated in paragraph 37 of the Complaint, Netty Gross is Plaintiff's mother ("Mother"), who is chronically-ill with a severe movement disorder (cerebral ataxia) that impedes her ability to use her muscles.
    iv. Until recently, Plaintiff was the primary care-taker of Mother, who is in a wheel-chair, and who has been suffering every minute of every day, during the unnecessary hell inflicted by Defendants, as witnessed by counsel Ms. Samantha Schonfeld (HPD), and counsel Ms. Jeanne Williams (Breaking Ground).
    v. During the recent Holiday of Rosh Hashanah- which was the 26th consecutive holiday that Plaintiff spent in isolation- Mother's condition deteriorated.
    vi. She now is incapable of speaking, suffers from vivid nightmares and shakes uncontrollably.
    vii. It is a chilling testament to public agencies mandated to help the homeless population, that in response to Mother's desperate pleas for minimal human decency and common sense- while the last apartments for which Plaintiff is eligible, even based on Defendants cryptic determinations are still vacant - Defendants continue to abide by indifference.
    viii. Mother had a vested property interest in Defendants lawful compliance and the honoring of Plaintiff's property interest, as

---

[2] In particular those units which the Defendants already admitted to DOI that they stole, pursuant to being questioned, such as Defendant's Mombrun's embezzled 12m unit in the Hub. See EXHIBIT B, Docket #57.

    the subject property, Waterline Square, is closer in proximity than any other affordable housing opportunity.
- ix. By depriving Plaintiff of his rights and denying him the apartment for which he is eligible, Defendants have prevented Plaintiff from providing Mother with the support she desperately needs. As a direct result of Defendants callous actions, Mother is enduring irreversible harm.

2. <u>Alternative Dispute Resolution/Settlement:</u>

- I. In **prior State proceedings** (Civil Supreme Cases 101081/2019, 101960/2019), on September 06, 2019, the Honorable Court Part 56 ("the Court") held a settlement conference with all parties ("Conference"): the Court stated on the record that it was warranted for all parties to try and settle this case, and asked all parties to work towards the goal of settlement.
- II. Plaintiff instantly responded by resolving all concerns that were raised by Defendants.
- III. Nevertheless, the Defendants callously refused to take the most elementary remedial measures, instead showing extraordinary disregard for Plaintiff's life, when he was forced into shelter on September 23, 2019- just weeks after the Conference.
- IV. Defendants cruelty elevated to the realm of evil-and-beyond when the pandemic erupted, placing the homeless population at a much higher risk. Nevertheless, Defendants didn't show an iota of humanity, despite making a series of press releases, which all things considered, are nothing short of sadistic:

> "This is the time to help families out of the shelter system in a bigger way then we've done before," said Louise Carroll, the Commissioner of the New York City Department of Housing Preservation and Development or HPD (May 30, 2020)[3].
>
> "We are pleased to introduce new changes to the Housing Connect lottery process, aimed at moving New Yorkers into stable, affordable housing as quickly as possible, during the COVID crisis and beyond. We are committed to working with developers and marketing agents to expedite the

---

[3] https://www.ny1.com/nyc/all-boroughs/coronavirus-blog/2020/05/30/200-homeless-families-getting-apartments-because-of-the-pandemic

      leasing of developments, while maintaining a clear, consistent process and strong protections for applicants" (April 22, 2020)[4].

V. At the Conference, Defendants counsels raised three issues preventing their clients from settling:

VI. **First**, if Plaintiff - who Defendants falsely alleged was below the required income[5]- would be given an apartment, the Defendants risked losing their 421-a tax abatement. The Court promptly rejected this assertion, as losing the tax abatement was only relevant if the applicant was above the income limit, not below.

VII. **Second,** Defendants raised concerns about Plaintiff ability to pay the rent. Plaintiff responded by stating that due to his credit score, his bank was willing to loan Plaintiff the entire first year, alternatively the first two years of rent plus security, or even transfer the rent directly to Defendants, if they preferred.

VIII. **Third,** Defendants raised the issue of the single error in Plaintiff's original tax filing, which: (1) the Court itself recognized was a mistake Plaintiff made in filing (2) was entirely inconsistent with 350 pages of supporting documentation that showed profits, cash flow, and receipts (3) Was not explained at all in the determination, which instead cryptically concluded that the income from self employment in 2018 was $0.

IX. Plaintiff immediately submitted to Defendants a copy of the amended tax return.

X. In addition, prior to being forced into shelter, Plaintiff conceded and reiterated that he consents to **any adequate housing** in proximity to his ill mother.

XI. In other words, all of the objections raised by Defendants counsel were promptly resolved and then some.

XII. Defendants have no rational reason to continue torturing the Plaintiff. And still, pursuant to the Court asking all parties to make the effort to settle, the Defendants have done nothing. This is a disgrace that no court of law should accept.

XIII. **In this proceeding**, formal settlement discussions have yet to occur, although the parties briefly addressed the possibility of an early settlement.

---

[4] https://www.newyorkcountypolitics.com/2020/04/24/city-relaxes-rules-for-affordable-housing-lottery/
[5] See overwhelming evidence for this assertion at Sup Crt. 101960/2019 # 20, and Appl Div 2019-04206, #9, Exhibits: A1-A4, A6-A10.

    XIV.    Plaintiff humbly submits that a settlement is heavily warranted as a matter of law and equity, based on public policy considerations, and in the interests of ending this vile travesty.

    XV.    The Defendants have a massive database of countless vacant apartments. It is sad- though telling- that to date, Defendants have no even entertained the possibility of offering Plaintiff some form of housing, despite[6]: (a) the pandemic (b) their access to a massive inventory of affordable housing (c) lowering the income guidelines (d) overwhelming evidence of fraud (e) Defendants admission that Plaintiff's income was miscalculated (f) Defendants public boasting about their efforts to help the homeless population during the pandemic (g) Defendants admission - in effect- that they rejected 99.9% of the applicants (h) Defendants awarding countless Affordable apartments to egregiously unqualified applicants (i) Defendants immediately moving to hide incriminating evidence by deleting the information disqualifying these applicants from their official credit reports. This can go from A to Z, in multiple languages, and beyond.

    XVI.    Considering these extenuating circumstances, Plaintiff pleads with the Court to refer all parties to a mediator as soon as possible, if possible during the week of October 19, 2020. The addition of Plaintiff's ill mother begs for an expedited mediation process- not additional delays. There is a crisis here. This is inhuman. Plaintiff is writing these words under with the knowledge that he is being forced back into the shelter system.

3. <u>Plaintiffs Summary of Claims:</u>

    i.    Plaintiffs allege causes of action under: the Racketeer Influenced and Corrupt Organizations Act ("RICO"); Section 1981 of the Civil Rights Act; the Fair Housing Act; the New York State Constitution, the United States Constitution, the New York State and New York City Human Rights Laws, as well as Executive Orders; Deprivations of Plaintiff's valid property interests without due process; Breach of a contractual, or quasi-contractual obligation for a fair application process ("Process")[7]; Breach of Defendants fiduciary duties to ensure fair Process; the doctrine of Respondeat Superior; and based on Defendants negligent conduct, pursuant to owing Plaintiff a duty of

---

[6] See Plaintiff's prior submissions on Docket at 2nd Circuit, SDNY, Case Number 4340-2019, and even more incriminating evidence at the Court of Appeals 2nd Circuit, SDNY, Case 20-2285.

[7] *Henry S. Bloomgarden, Appellant, v. Charles B. Coyer et al, 479 F.2d 201 (D.C. Cir. 1973).*

     care (as a lawful applicant entitled to a fair application Process), and causation (factual and proximate) between the breach of Defendants said duty, and the damages the Plaintiffs endured pursuant to four unlawful rejections.

  ii. Plaintiffs seek injunctive relief, damages-including treble damages pursuant to the RICO- declaratory relief, equitable and any other relief the Honorable deems just and appropriate.

  iii. Plaintiffs move for limited mandatory relief in any **adequate housing project,** alternatively, a temporary stay such that Defendants will not claim victory on their sadistic intent to give away all apartments, as to render Plaintiff's cause moot. Your Honor, it will be a prejudicial travesty within a travesty once Defendants are permitted to give away the final apartment, effectively nailing Plaintiff's coffin, prior to Plaintiff being given a chance to be heard. The overwhelming interests of justice heavily support, at the very least, that they be forced to set aside a single apartment within a complex with 1132 units.

4. <u>The Asserted Basis of Subject Matter Jurisdiction:</u>
   i. The Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the state and city causes of action. In addition to Defendants discriminatory practices based on the federally-protected class of race, City affordable programs heavily rely on federal funding from HUD. The applicable HPD Handbook incorporates all pertinent Federal and State law[8].

5. <u>Primary Subjects of Discovery:</u>
   i. Specific and relevant documentation pertaining to the original bid that was held to determine which Developer would be awarded the permit to develop a particular affordable property.
   ii. Specific and relevant documentation (including the Applications Summary, relevant regulatory agreements, and marketing summary) pertaining to other affordable lotteries held by Defendants, which Plaintiff will specify- without the names of the applicants, as to protect privacy.
   iii. Specific and relevant documentation pertaining to other affordable programs, including but not limited to: the 421-b Tax Incentive, 420-c Tax Incentive, 50/30/20 Mixed-Income, Mitchell Lama, Third Party

---

[8] Page 19 of the Complaint.

    Transfer, Mix and Match Income, Mixed Middle Income, Multifamily Disposition and Finance, Mutual Housing Association, the Nehemiah Programs, and other affordable programs.

  iv. Said documentation will prove that the Defendants are engaged in a criminal enterprise, and have corrupted virtually every aspect of the Process.

  v. The complete, unredacted email correspondence between Defendant decision makers, which was strategically omitted from the administrative record in violation of CPLR 7804 (e), and thereafter, omitted a second time from Defendants "Freedom of Information Law ("FOIL") responses, in violation of the FOIL[9].

  vi. The complete, unredacted Applications Summary that shows the order in which the Defendants processed applications to the subject property, Waterline Square.

  vii. All internal communication regarding the outrageous manner Defendants handled the FOIL requests- by first claiming they couldn't find the document, then claiming they had to create the document from scratch, then "accidently" sending it the wrong document (see Docket #4, Case No. 101960/2019).

  viii. All relevant documentation pertaining to the decision to replace HPD project manager Gabriel Mombrun in the middle of the lease-up, and replace him with Nicole London, who is not listed as an employee on the NYC official city payroll database.

  ix. Similar documentation on Victor Hernandez- the Director of Affordability and Oversight.

6. <u>Initial Disclosures</u> pursuant to Fed. R. Civ. P. 26(a)(1): Plaintiff concurs.
7. <u>Amended Pleadings:</u>
    i. No additional parties may be joined after 10/15/20, without consent or leave of Court.
    ii. No amended pleadings may be filed after 11/10/20, without consent or leave of Court.
8. <u>Fact Discovery:</u>
    i. Due to the extenuating circumstances of prolonged homelessness during the coronavirus, and the recent spike in COVID 19 cases, Plaintiff asks for an expedited trial.
    ii. All fact discovery shall be completed by January 15, 2021.

---

[9] Freedom of Information Law, Public Officers Law, Article 06, Section 84.

    iii. Initial requests for production were/will be served by November 15, 2020.

    iv. Any subsequent requests for production must be served no later than 20 days prior to the discovery completion deadline.

    v. Initial interrogatories shall be served by November 15, 2020.

    vi. Any subsequent interrogatories must be served no later than 20 days prior to the discovery completion deadline.

    vii. Depositions shall be completed by January 15, 2021.

    viii. Requests to admit shall be served by February 1, 2021.

9. <u>Expert Testimony:</u>

    i. Plaintiff will be submitting expert testimony in the field of cyber security and handwriting analysis.
    ii. The handwriting expert will attest to the fraudulent patterns found on countless affordable property deeds. For example, the following allegation pertains to (1) one of the thirteen (13) affordable apartments in Park Chester, awarded to Lovely Meah (a City school helper with an annual salary of $17,000), and Nadir Ahmed (a City fraud investigator with an annual salary below $50,000). The law limits one such apartment, per person. Tens of thousands of other applicants were rejected, but the aforesaid were given 13 apartments.
    iii. It will be proven, based on expert testimony that the same person party who signed for "Lovely Meah" also signed for "Nadir Ahmed".

[Image: Affidavit form from Westchester County for property at 89 METROPOLITAN OVAL, 11F, BRONX, New York, Block 3937, Lot 2243 (the "Premises"). Signed by Grantor "Lovely Meah" and Grantee "Nadir Ahmed", sworn before notary Janet Meisels on 29 day of June, 2017.]

    iv.    This unsettling pattern has been found on countless official City documents relating to affordable properties- Defendants have exacerbated their crimes by deleting incriminating evidence from ACRIS.





    v.    Expert discovery shall be completed by February 01, 2021.

    vi.    By December 15, 2020, the parties shall meet and confer on a schedule for expert disclosures, including reports, production of underlying documents, and depositions, provided that (i) expert report(s) of the party with the burden of proof shall be due before those of the opposing party's expert(s); and (ii) all expert discovery shall be completed by the date set forth above.

    vii.    The parties would like to address at the conference with the Court the following disputes, if any, concerning expert discovery.

10. <u>Electronic Discovery:</u>

    i.    The parties have not discussed electronic discovery. If applicable, the parties shall have a protocol for electronic discovery in place by November 15, 2020.

11. <u>Defendants Anticipated Motion to Dismiss</u>:

    i.    Plaintiff is respectfully pleading with all parties not to delay these proceedings more with frivolous motions filed in bad faith, while he and his mother continue to suffer.

    ii.    Plaintiff respectfully asks the Honorable Court not to allow the filing of motions would grant Defendants the time needed to sabotage Plaintiff's chance for justice, by giving away the last vacant apartment, as they did in prior proceedings.

    iii.    For example, Defendants indicated they intend to file a motion to dismiss, without specifying on what grounds. If the said motion is solely based on some obscure technicality, such as filing Note of Issue- then it should be struck down before it manages to inflict further damage by delaying proceedings.

    iv.    As it relates to the Note of Issue, during his deposition before the City Comptroller, Plaintiff specifically requested that his deposition serve for purposes of both the State and Federal action. If there is some other obscure technicality Defendants intend to exploit, it would better serve justice for Defendants to clarify with Plaintiff prior to submitting a motion, based on what may be incomplete or misinformed understanding.

    v.    As another example, it is frivolous and in bad faith to file a motion to dismiss under collateral estoppel and res judicata, when the well-settled[10] the said doctrines take effect upon issues of law being fully and fairly litigated.

    vi.    Accordingly, these doctrines have no bearing on a limited article 78, in which Plaintiff was denied even the most basic request for discovery.

    vii.    Furthemore, by clear and convincing evidence, the case at bar was unlawfully assigned to the Court, as it should have been assigned to a City part, not a Trial Part.

    viii.    Furthemore, res judicata does not bar the introduction of newly-found evidence[11]. Here, everyday, Plaintiff discovers new affordable properties that were embezzled in one of Defendants mind-bending schemes.

---

[10] Allen v. McCurry, 449 U.S. at 94. The collateral estoppel bar is inapplicable when the claimant did not have a "full and fair opportunity to litigate" the issue decided by the state court. See also. *Erickson v. Cross Ready Mix, Inc.*, 98 A.D.3d 717, 717 (2d Dept. 2012).

[11] *J-Mar Serv. Ctr., Inc. v. Mahoney, Connor & Hussey*, 45 A.D.3d 809, 809. quoting *Matter of Yeampierre v. Gutman*, 57 A.D.2d 898, 899 (2d Dept. 1977).

      ix. This also proves that the full extent of Defendants breach of the public's trust is unfathomable- respectfully, the Judiciary should take every measure available to protect the public from fraud.

12. #12-#13 Plaintiff concurs.
13. Plaintiff consents for a trial before a magistrate judge.
14. Other issues:

    i. Plaintiff respectfully prays for the Honorable Court to grant an urgent in-camera review with all parties to present highly-sensitive evidence substantiating Defendants criminality beyond a scintilla of doubt.
    ii. Plaintiff is hopeful that when three lawyers of integrity are presented, before an honorable Judge, irrefutable evidence of their clients true colors, they will recognize the full extent of the horrific harm their clients have inflicted on Plaintiff and on the public.
    iii. Pursuant to which Plaintiff is hopeful that they will finally advise their clients it would best serve public integrity and lawful procedure, to make Plaintiff whole, rather than continue torturing a low-income, homeless, affordable housing applicant, whose biggest mistake was to naively believe the Process was fair.
    iv. In addition, Plaintiff respectfully asks the Court to take corrective measures to address the brazen spoliation of evidence, including the deletion of documents from official City databases.
    v. Plaintiff asks the Court for a chance to be heard on Defendants abuse of the FOIL, which amounts to extrinsic fraud.
    vi. In prior proceedings, Plaintiff was fundamentally robbed of the right to a fair, impartial judiciary whose impartiality cannot be reasonably questioned. In the interests of fairness, Plaintiff asks the Court to order all counsels and judges involved in this proceeding, should, respectfully, disclose:
    vii. (1) public/affordable/income-restricted properties that they were granted by Housing Agencies such as HPD, HUD, NYCHA
    viii. (2) whether they have ever entered into financial transactions worth more than $500,000 with the developers of Waterline Square, Extell Development, the GID Real Estate Group, or their subsidiaries.
    ix. (3) whether they have first degree relatives in any of the aforesaid agencies, companies, or subsidiaries.
    x. (4) whether they were resided in multiple rent-stabilized and/or rent-controlled apartments in violation of law.

15. The Court will fill in the following:

A status conference will be held before the undersigned on at .m. in Courtroom 18D, 500 Pearl Street.
The parties shall submit a joint status letter every _____days and shall also inform the Court at the time the parties believe a settlement conference would be fruitful.

Dated: SO ORDERED.


_____
ROBERT W. LEHRBURGER
United States Magistrate Judge


PLAINTIFF(S)
Abraham Gross
Netty Gross
40 West 77 #10C, NY, NY, 10024
917 673 1848
agross2@gmail.com




DEFENDANT(S)


Laura Juffa
Attorney Name




DEFENDANT(S)
Jasmine Paul




DEFENDANT(S)
Jeanne Marie Williams