# EXHIBIT G:
## Plaintiff's Second Amended Complaint
## Case No: CV-20-4340_GBD-RWL

# RE: DEFENDANTS DISREGARD FOR THE FOIL AND THE COURT'S SUBSEQUENT ENDORSEMENT

**PRIMARY ARGUMENT: A COURT OF LAW MUST NEVER
REAFFIRM, ENDORSE,  AND PROTECT
AN AGENCY'S BLATANT CONTEMPT FOR THE RULE OF LAW**

**HERE, RESPECTFULLY,
THE COURT IS ENTICES RESPONDENTS
TO CONTINUE
UNDERMINING ITS
STATUTORY OBLIGATIONS**

**AND OPENLY STANDS FOR THE POSITION
THAT RESPONDENTS ARE
ABOVE THE LAW**

**Whereas the Court states "Plaintiff failed to show by more than pure speculation
that all responsive documents were not produced, he has failed to do so",
Plaintiff submitted a 25 page affidavit and 15 more pages of EXHIBITS which
clearly and unequivocally show countless documents were purposefully omitted.
Respectfully, when a Court of Law repeatedly goes out of its way to reaffirm the position that
Respondents are above the law- including utter disregard for the 25 page Affidavit
Plaintiff worked on for more than a month in shelters and half way apartments.
This, respectfully, undermines the notion that due process and fairness
are an integral part of the judicial process.**

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. JOHN J. KELLEY**  |  PART  **IAS MOTION 56EFM**

*Justice*

--------------------------------------------------------------------------------X

ABRAHAM GROSS and NETTY GROSS,

Petitioners/Plaintiffs,

- v -

DEPARTMENT OF HOUSING PRESERVATION AND
DEVELOPMENT (HPD), SHATARA PELL, VICTOR
HERNANDEZ, LOUISE CARROLL, BREAKING GROUND
(BG), BRENDA ROSEN, VANESAA CUCURULLO,
TERESA PALMIERI, TRAVIS FONG, and
STEPHANIE LABARTA,

Defendants/Respondent.

--------------------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 101960/2019 |
| MOTION DATE | 05/02/2020 |
| MOTION SEQ. NO. | 001, 003 |

**DECISION, ORDER, AND
JUDGMENT and ORDER OF
TRANSFER**

The following e-filed documents, listed by NYSCEF document number 1 (Motion 001) and 50, 51, 52, 53,
54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 79, 80, 81,
82, 83, 84, 85, 86, 87, 88, 89, 90, 91, 92, 93, 94, 95, 96, 97, and 98 (Motion 003)

were read on these respective motions to/for _____ CPLR ART 78 and DISMISSAL _____ .

This is a hybrid action to recover damages and for related relief, alleging violation of civil

and constitutional rights under color of state law pursuant to 42 USC § 1983, negligence, breach

of contract, and breach of fiduciary duty, and proceeding pursuant to CPLR article 78 to review

a December 5, 2019 HPD determination allegedly denying, in part, the plaintiff/petitioner's

request for agency records pursuant to the Freedom of Information Law (Public Officers Law §

84, *et seq*.; hereinafter FOIL).  By order to show cause dated December 31, 2019 (Friedman,

J.), the plaintiff/petitioner requested the court to grant the CPLR article 78 petition seeking relief

under FOIL and, inter alia, stay the defendants/respondents from, among other things, leasing

out certain apartments at the Waterline Square apartment complex in Manhattan that had been

the subject of an HPD affordable housing lottery (MOT SEQ 001).

1

Case 1:20-cv-04340-RWL    Document 65-1    Filed 10/15/20    Page 4 of 79

The defendants/respondents HPD, Shatara Pell, Victor Hernandez, and Louise Carroll (collectively the HPD defendants) move pursuant to CPLR 3211(a)(7) to dismiss the amended complaint insofar as asserted against them (MOT SEQ 003). The defendants/respondents Breaking Ground, Brenda Rosen, Vanesaa Cucurullo, Teresa Palmieri, Travis Fong, and Stephanie Labarta (collectively the Breaking Ground defendants) separately move under the same motion sequence to dismiss the complaint insofar as asserted against them.

The motion for a stay is denied, so much of the complaint/petition as seeks review of HPD's FOIL determination pursuant to CPLR article 78 is denied, and the portion of this matter constituting a CPLR article 78 proceeding is dismissed. The remaining causes of action are severed, those causes of action together are deemed to constitute a severed action, and the severed action and pending motions to dismiss the complaint in the severed action are transferred to a City Part of this court for disposition.

This dispute arises from the HPD's July 9, 2019 determination that the plaintiff/petitioner's income was insufficient to qualify him for a subsidized apartment at the Waterline Square apartment complex in Manhattan that were the subject of an apartment lottery. By decision, order, and judgment dated August 16, 2019, this court denied the plaintiff/petitioner's CPLR article 78 proceeding challenging that determination, concluding that the HPD's determination had a rational basis that was supported by the administrative record. The plaintiff/petitioner appealed that decision, order, and judgment to the Appellate Division, First Department. The appeal remains pending.

While his appeal was pending, the plaintiff/petitioner made several applications to this court to revisit its decision, order, and judgment, and to reinstitute a limited stay that prohibited HPD, as well as the owners of the Waterline complex and Breaking Ground, as marketing agent, from leasing out certain apartments pending hearing of the CPLR article 78 proceeding. This court denied all of those applications. On October 2, 2019, a justice of the Appellate Division granted a temporary restraining order that prohibited Waterline's owners and Breaking

2

Ground from leasing out one particular studio apartment and one particular one-bedroom apartment in Waterline Plaza to persons who had a less favorable apartment lottery status than the plaintiff/petitioner, pending that Court's determination of his motion for a preliminary injunction pending appeal. By Decision and Order dated December 5, 2019, a panel of the Appellate Division denied the plaintiff/petitioner's motion for a preliminary injunction pending appeal, and dissolved the limited October 2, 2019 temporary restraining order.  This court thereafter declined to entertain his subsequent requests to reinstate any type of stay.

On December 24, 2019, the plaintiff/petitioner commenced the instant hybrid action and proceeding.  On or about February 9, 2020, the petitioner served and filed an amended petition/complaint and motion.  The amended petition/complaint asserts seven causes of action. The first through third and fifth causes of action seek to recover damages pursuant to 42 USC § 1983 for alleged deprivation of due process and other violations of constitutional rights.  The fourth cause of action seeks to recover damages for negligence and pursuant to 42 USC § 1983 for additional alleged violations of constitutional rights.  The sixth cause of action seeks to recover damages for breach of contract.  The seventh cause of action seeks to recover damages for breach of fiduciary.  Although none of the causes of action specifically seeks a review of the HPD's FOIL determination, the plaintiff/petitioner requests such relief in the body of the petition/complaint.

In their motion, the HPD defendants submit documentation and a certification establishing that they fully responded to the subject FOIL request.  HPD thus discharged its duty pursuant to FOIL and 22 NYCRR 1401.2(b)(7)(ii) by certifying that "the records of which the agency is a custodian cannot be found after diligent search" (*see Matter of Rattley v New York City Police Dept.*, 96 NY2d 873 [2001]; *Matter of Lopez v New York City Police Dept. Records Access Appeals Officer*, 126 AD3d 637 [1st Dept 2015]).  Although the plaintiff/petitioner "must show by more than speculation that all responsive documents were not produced" (*Matter of Mitchell v Slade*, 173 AD2d 226, 227 [1st Dept 1991]; *see Matter of Morgan v Nassau County*

3

*Police Dept.*, 197 AD2d 579 [2d Dept 1993]; *Matter of Wood v Ellison*, 196 AD2d 933 [3d Dept 1993]), he has not done so here. Hence, so much of the complaint/petition as sought to annul the HPD defendants' determination with respect to the plaintiff/petitioner's request for documents must be denied (*see Matter of Taylor v New York City Police Dept. FOIL Unit*, 25 AD3d 347 [1st Dept 2006]; *Matter of Tellier v New York City Police Dept.*, 267 AD2d 9 [1st Dept 1999]).

The remaining causes of action all seek money damages from the HPD defendants and the Breaking Ground defendants. HPD is an agency of the City of New York and the HPD defendants are represented by the New York City Corporation Counsel. Thus, regardless of whether the remaining claims state a cause of action, are barred by the doctrine of res judicata, or cannot be pursued against the HPD defendants because the plaintiff/petitioner failed to serve a timely notice of claim, the proper course of action for this court to take is to sever those causes of action, deem them to constitute a severed action, and transfer both the action and pending motions to dismiss the complaint in the severed action to a City Part of this court for disposition.

That branch of the plaintiff/petitioner's motion seeking to reinstitute the dissolved stay must be denied, as the Appellate Division has already dissolved an even more limited stay, this court has no authority to second guess the Appellate Division, and the assertions made and evidence submitted by plaintiff/petitioner do not warrant the issuance of a new stay.

Accordingly, it is

ORDERED that so much of the complaint/petition as sought judicial review of the December 5, 2019 New York City Department of Housing Preservation and Development HPD determination allegedly denying, in part, the plaintiff/petitioner's request for agency records pursuant to the Freedom of Information Law is denied (SEQ 001); and it is

ADJUDGED that so much of the hybrid action and proceeding as constituted a CPLR article 78 proceeding to review the December 5, 2019 New York City Department of Housing

4

Case 1:20-cv-04340-RWL    Document 65-1    Filed 10/15/20    Page 7 of 79

Preservation and Development HPD determination allegedly denying, in part, the plaintiff/petitioner's request for agency records pursuant to the Freedom of Information Law, is dismissed (SEQ 001); and it is further,

ORDERED that the first, second, third, fourth, fifth, sixth, and seventh causes of action in the amended complaint/petition are severed and together shall constitute a severed action; and it is further,

ORDERED that the County Clerk shall assign a new index number to the severed action, and the plaintiff/petitioner shall not be required to pay an additional index number fee or RJI fee; and it is further,

ORDERED that the severed action, as well as the pending motions to dismiss the amended complaint/petition in the action, are remitted to the Trial Support Clerk, who is directed to transfer the matter to a City Part of this court; and it is further,

ORDERED that the defendants/respondents shall serve a copy of this order with notice of entry upon both the County Clerk and the Trial Support Clerk; and it is further,

ORDERED that the defendants/respondents shall serve the notice required by CPLR 8019(c) and a completed Form EF-22 upon the County Clerk and the Trial Support Clerk, and file the same with the County Clerk, and the Trial Support Clerk shall thereupon amend the court records accordingly; and it is further,

ORDERED that, upon the Clerk's issuance of a new index number to the severed action, the defendants/respondents shall file an RJI under that index number, without the need for the payment of any new RJI fee, and shall re-notice the motions to dismiss the amended complaint/petition in the severed action under that index number.

This constitutes the Decision, Order, and Judgment and Order of Transfer of the court.

_5/8/20_
**DATE**

_____
**JOHN J. KELLEY, J.S.C.**

| | | | | | |
|---|---|---|---|---|---|
| **CHECK ONE:SEQ 001** | X | **CASE DISPOSED** | | **NON-FINAL DISPOSITION** | |
| | | **GRANTED** | X **DENIED** | **GRANTED IN PART** | **OTHER** |
| **APPLICATION:** | | **SETTLE ORDER** | | **SUBMIT ORDER** | |
| **CHECK IF APPROPRIATE:** | | **INCLUDES TRANSFER/REASSIGN** | | **FIDUCIARY APPOINTMENT** | **REFERENCE** |

| | | | | | |
|---|---|---|---|---|---|
| **CHECK ONE:SEQ 003** | | **CASE DISPOSED** | X | **NON-FINAL DISPOSITION** | |
| | | **GRANTED** | **DENIED** | **GRANTED IN PART** | X **OTHER** |
| **APPLICATION:** | | **SETTLE ORDER** | | **SUBMIT ORDER** | |
| **CHECK IF APPROPRIATE:** | X | **INCLUDES TRANSFER/REASSIGN** | | **FIDUCIARY APPOINTMENT** | **REFERENCE** |

6

# <u>KEY QUESTIONS OF THIS APPEAL</u>

(A) why would the Court, in the final moments prior to transferring the case, also choose to decide the merits of the article 78? Is it not proper to let the new Hon. Justice decide both aspects of the hybrid action which are interrelated?

(B) Even  assuming that the Court was motivated to partially dispose of the proceeding, why did the Court, yet again, utterly disregard Appellant's 25-page affidavit that squarely states the opposite of what the Court alleges?

(C) Why did the Court set aside -yet again- the controlling law
from the Court of Appeals
that the Freedom of Information Law is not a cynical joke that agencies
are encouraged to ignore as they deem fit?

(D) Why did the Court set aside its own words
in Mtr. of Donovan Vs. PA. given one year prior?

(B

(E) The Order nonchalantly states that the related proceeding, Case No.

101960/2019, involved a city agency, and thus, is transferred to a city part.

this statement comes six months after the related proceeding

101960/2019 was unlawfully assigned to it, in violation of numerous

procedures expressly stated on the Court's website, as they relate to (a)

related proceedings (b) actions involving city agencies. Presumably, the

Court was well-aware of these basic rules six months ago.

(F) . as the Court was well-aware, I have been suffering from

homelessness as a direct result of Respondents sickening conduct since later

September 2019. For this reason, I begged the Court not to unnecessarily

extend the Respondents *answer date* to the 101960/2019 complaint for

violations of the Freedom of Information Law ("FOIL"), that were reported

months ago. Nonetheless, pursuant to ex-parte communication with the

Respondents, and without bothering to ask Appellant for his position, the

Court went ahead and gave the Respondents more time than they requested

in an ex-parte communication.

 Making this issue even more cruel and unusual is the fact the Court did not

feel any motivation to issue this ruling: it was released June 05, 2020- a

cool three months after Respondents submitted their answer. Essentially, the

Court took three months to arrive at the conclusion that it does not have

jurisdiction and that the case must be transferred, despite knowing that

Appellant was suffering from homelessness during the coronavirus, while

dozens of apartments for which he was eligible based on his income, shelter

referral, and Respondents new pandemic guidelines- stood vacant.

(G)                          the Court does not bother explaining why the same rule

that prompted the transfer did not apply with regards to the original

proceeding (101081/2019). By the same logic, the original proceeding- an

article 78 seeking judicial review of an agency determination- should have

been promptly reassigned to a city part.

## THE COURT AGAIN DISREGARDS PLAINTIFF'S AFFIDAVIT

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------x
ABRAHAM GROSS, NETTY GROSS,

        Petitioners/Plaintiffs,

                                        **AMENDED AFFIDAVIT**
                                        **INDEX NO: 101960/2019**

        -against-

THE DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT (HPD),
SHATARA PELL, VICTOR HERNANDEZ, LOUISE CARROLL,
BREAKING GROUND (BG), VANESAA CUCURULLO,
TRAVIS FONG, STEPHANIE LABARTA,
and TERESA PALMIERI,

                    Respondents/Defendants.
----------------------------------------------------------------------x

**PETITIONER'S/PLAINTIFF'S AMENDED AFFIDAVIT IN SUPPORT OF
HIS PETITION IN A HYBRID ARTICLE 78 ACTION**

Plaintiff/Petitioner, Pro Se
Abraham Gross
917- 673-1848
agross2@gmail.com

Ground from leasing out one particular studio apartment and one particular one-bedroom apartment in Waterline Plaza to persons who had a less favorable apartment lottery status than the plaintiff/petitioner, pending that Court's determination of his motion for a preliminary injunction pending appeal. By Decision and Order dated December 5, 2019, a panel of the Appellate Division denied the plaintiff/petitioner's motion for a preliminary injunction pending appeal, and dissolved the limited October 2, 2019 temporary restraining order. This court thereafter declined to entertain his subsequent requests to reinstate any type of stay.

On December 24, 2019, the plaintiff/petitioner commenced the instant hybrid action and proceeding. On or about February 9, 2020, the petitioner served and filed an amended petition/complaint and motion. The amended petition/complaint asserts seven causes of action. The first through third and fifth causes of action seek to recover damages pursuant to 42 USC § 1983 for alleged deprivation of due process and other violations of constitutional rights. The fourth cause of action seeks to recover damages for negligence and pursuant to 42 USC § 1983 for additional alleged violations of constitutional rights. The sixth cause of action seeks to recover damages for breach of contract. The seventh cause of action seeks to recover damages for breach of fiduciary. Although none of the causes of action specifically seeks a review of the HPD's FOIL determination, the plaintiff/petitioner requests such relief in the body of the petition/complaint.

In their motion, the HPD defendants submit documentation and a certification establishing that they fully responded to the subject FOIL request. HPD thus discharged its duty pursuant to FOIL and 22 NYCRR 1401.2(b)(7)(ii) by certifying that "the records of which the agency is a custodian cannot be found after diligent search" (*see Matter of Rattley v New York City Police Dept.*, 96 NY2d 873 [2001]; *Matter of Lopez v New York City Police Dept. Records Access Appeals Officer*, 126 AD3d 637 [1st Dept 2015]). Although the plaintiff/petitioner "must show by more than speculation that all responsive documents were not produced" (*Matter of Mitchell v Slade*, 173 AD2d 226, 227 [1st Dept 1991]; *see Matter of Morgan v Nassau County*

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 5 of 7

*Police Dept.*, 197 AD2d 579 [2d Dept 1993]; *Matter of Wood v Ellison*, 196 AD2d 933 [3d Dept 1993]), he has not done so here. Hence, so much of the complaint/petition as sought to annul the HPD defendants' determination with respect to the plaintiff/petitioner's request for documents must be denied (*see Matter of Taylor v New York City Police Dept. FOIL Unit*, 25 AD3d 347 [1st Dept 2006]; *Matter of Tellier v New York City Police Dept.*, 267 AD2d 9 [1st Dept 1999]).

The remaining causes of action all seek money damages from the HPD defendants and the Breaking Ground defendants. HPD is an agency of the City of New York and the HPD defendants are represented by the New York City Corporation Counsel. Thus, regardless of whether the remaining claims state a cause of action, are barred by the doctrine of res judicata, or cannot be pursued against the HPD defendants because the plaintiff/petitioner failed to serve a timely notice of claim, the proper course of action for this court to take is to sever those causes of action, deem them to constitute a severed action, and transfer both the action and pending motions to dismiss the complaint in the severed action to a City Part of this court for disposition.

That branch of the plaintiff/petitioner's motion seeking to reinstitute the dissolved stay must be denied, as the Appellate Division has already dissolved an even more limited stay, this court has no authority to second guess the Appellate Division, and the assertions made and evidence submitted by plaintiff/petitioner do not warrant the issuance of a new stay.

Accordingly, it is

ORDERED that so much of the complaint/petition as sought judicial review of the December 5, 2019 New York City Department of Housing Preservation and Development HPD determination allegedly denying, in part, the plaintiff/petitioner's request for agency records pursuant to the Freedom of Information Law is denied (SEQ 001); and it is

ADJUDGED that so much of the hybrid action and proceeding as constituted a CPLR article 78 proceeding to review the December 5, 2019 New York City Department of Housing

4

On August 29, 2019, Appellant filed a FOIL request asking for, *inter alia*:
(a) the Applications Summary ("Summary") for the Subject Property,
Waterline Square- a document that shows the order in which Respondents
processed applications of affordable housing applicants. To date,
Respondents have refused to comply with this request or provide any reason
why they refuse to release the log numbers, which cannot be used to violate
privacy in any way.

Instead of requiring Respondents to provide such a reason as the FOIL
states and as it did just a year ago, the Court has, yet again, mimicked
Respondents strategy of refusing to address the issue at hand, while basing it
Order on an erroneous statement that is refuted by the record: Appellant
most definitely specified and shared proof of numerous documents that were
omitted from the FOIL, including fragmented correspondence which he is
entitled to.

Appellant's 25-page affidavit-in-support most certainly gave the Court
detailed illustrations of the deceitful, outrageous manner in which
Respondents disregarded the FOIL. For example, it stated, *inter alia:*

On December 05, on or about 5:15pm, HPD sent their Response: a partial,
non-responsive, heavily-redacted, mostly containing countless duplicates of

the same documents which Petitioner hadn't even requested, and in event, documents which Respondent knew very well that Petitioner already possessed.

<u>Non Compliance with Group A</u>

As stated by this Honorable Court , it is settled that judicial 10 review of an agency's determination to deny FOIL requests, requires the court to assess whether (a) "the requested material falls squarely within a FOIL exemption"; and (b) "whether the agency, upon denying such access articulated a particularized and specific justification for denying access". The "classic" arbitrary or capricious standard is not applicable in this instance.

As relevant to Response Group A, the FOIL exempts from disclosure those agency records, or portions thereof, that, if disclosed, would constitute an unwarranted invasion of personal privacy ("Exemption"). Respectfully, HPD's bad faith use of the Exemption is bona-fide abuse of power. It would be an injustice for this Honorable Court to give HPD another free pass.

Petitioner merely sought the log numbers of applicants alongside with the dates demonstrating the order these numbers were processed. There is absolutely no way to identify any applicant based on their log number. This claim in itself bone fide arbitrary and capricious , as it is without any reason.

Further, even if there was a way to identify, HPD had to explain it, rather than abuse its power by invoking an irrelevant privilege HPD was well-aware that the types of documents FOIL intended to protect include "information of a personal nature, " such as: an individual's employment, medical, or credit history, or items involving the medical or personal records of a client/patient in a medical facility.

Here, none of the information sought in the Request comes close to constituting "an unwarranted invasion of personal privacy " as contemplated by FOIL:

        i. The requested materials falling squarely outside of the FOIL exemption.

        ii. Furthermore, this information was specifically requested in a

manner that fully protects the privacy of the individual
Applicants.

      iii. Furthermore, the apartment numbers were already revealed in a
prior court submission.

      iv. Furthermore, this information is vital to protect the public's right to
know that the application process is in compliance.

      v. Furthermore, Respondent mightily fails to offer a particular and
specific justification, or any justification for that matter.

Petitioner respectfully asks to recognize that the logical, if unpleasant,
rationale to conceal this information was simply to hide that:

    i. Respondents inexcusably processed applications out of order
    based on a variety of considerations that are offensive to
    fairness.

    ii. This information supports the merits of Petitioner's case.

As stated, the egregious nature of HPD's arbitrary invocation is compounded
by this information being of great relevance to the public. The log numbers
are essential as they protect the integrity of the affordable housing process,
which to date, has a troubling track record that includes fraud and bribery.

    Your Honor, the primary purpose for the Exception is rationally related to
the need of balancing the public's right to know, and an affected individual's
right for privacy. It is an unbearable breach of the public's interest and
societal welfare for Respondent- a government agency that is NOT above the
law, and IS subject to FOIL- to justify its unlawful concealment of
information by abusing a narrow-tailored exception that serves a vital
function. Petitioner beseeches the Honorable Court not to turn a blind eye to
yet another painful illustration of HPD's non-compliance with the law.

## Non Compliance with Group B and Group C

In their Response, dated December 05, 2019, HPD did not provide a single response to Group B or Group C. Instead, the Response generically stated: "Please refer to the attached HPD Marketing Handbook, pages 45-54, for the method of income calculation used to determine applicant approval".

Clearly, the Request did not ask for general information about income calculation, rather: (a) specific information about the underlying calculations relating to Petitioner's application (b) specific information about the income calculations and annual income of approved applicants. This would be clear to any honest, objective reviewer.

Petitioner respectfully pleads not to turn a blind eye to yet another illustration of glaring bad faith. As Respondents are well-aware, Petitioner is familiar with the provisions in the HPD Handbook. And such, why would Petitioner ask for information that he just referenced at length in his Petition? It is not unreasonable to infer the express intention of the Respondent was simply to mock Petitioner.

Furthermore, common sense makes it hard to defend any notion suggesting that Respondents didn't understand the plain meaning of the language in the request.

Furthermore, Respondents had ample time to sort this out, as it took 90 days for the Response (although it stated it would take 60 days).

Finally, this issue was raised by Petitioner in his appeal to the HPD FOIL Appeal Officer, giving HPD another 10 days to rectify their "error". Like all other issues raised, this was disregarded without discussion.

<u>Non-Compliance with Group D</u>

Petitioner sought the dates that his appeals were received. In the absence of Respondents sending any confirmation that an appeal was received, it is incumbent upon Respondent to produce some form of an internal record demonstrating when each appeal was received, and when each determination was issued.

<u>Non-Compliance by Virtue of Omitting Documents (Group E)</u>

Contrary to the second false assertion in the Response, HPD provided incomplete records in connection with Request, by omitting countless relevant records (hereinafter: "Group E"). The bewildering disregard for lawful procedure is compounded by Respondent's repeated violations of CPLR § 7804 (e).

<u>Examples of Documents Deliberately Omitted from FOIL</u>

First, many communications were arbitrarily and omitted, for example documents titled EXHIBITS E1-E4. Why? Pursuant to the violations of CPLR 7804 § (e), it is egregious for Respondent to continue mocking its statutory obligations, and respectfully, it would be devastating for the Honorable Court to reward these violations once again.

Omitted Correspondence Originating From and To with Ms. Ana Nunez

In addition, the Response arbitrarily omits all correspondence between Ms. Ana Nunez (who reached out on behalf of Petitioner) to HPD (EXHIBIT E5). Why was this omitted?

<u>Omitted Correspondence Originating From and To Mr. Mumbrun</u>

In addition, Mr. Mumbrun, was the project manager at Waterline Square. He spoke to Petitioner at least a dozen times, and critically, Mr. Mumbrun confirmed to Petitioner that he had sent multiple emails regarding Petitioner both to BG and to higher ranking executives in HPD. Although Mr. Mumbrun is CC'd on many of the emails, not a single email originates from him. Why?

<u>Omitted Correspondence Originating From and To Mr. Hernandez</u>

In addition, email correspondence from Mr. Victor Hernandez- the Director with whom Petitioner had multiple conversations, and even exchanged emails (EXHIBIT E3)- almost all of his communications- are mysteriously missing from the Response, even though he confirmed that had exchanged multiple emails with multiple parties about Petitioner's file. Why was this

Omitted?

<u>Omitted Correspondence Originating From and To Ms. Cucuerello</u>

In addition, Petitioner's material communication with Ms. Cucuerello is missing from the Response (EXHIBIT E4), as well as emails originated from Ms. Cucuerello.

<u>Omitted Correspondence Originating From and To Ms. Labarta and Mr. Fong</u>

Moreover, critical communication that Ms. Labarta and Mr. Travis Fong, confirmed sending to their supervisors at BG regarding the rejection of the application, is missing.

<u>Omitted Correspondence: Purposeful One Way Communication</u>

Furthermore, the entire Response is rampant with one-way communication: a question is asked, but the reply is missing. For example, CEO of BG, Ms. Rosen's email appears, but notably missing are the internal emails sent from

<u>Ms. Rosen to other employees re the application.</u>

These omissions, yet again, are demonstrative of the fact HPD clearly employed a pick-and-choose censorship method. All of the documents pertaining to the Request submitted were carefully selected, and only a fraction of the documents were submitted.

<u>Conclusion: Non Compliance with Groups A-E</u>

As it pertains to Groups A,B,C,D, and Group E, the Response violated the FOIL, as well as Petitioner's right to receive such information.

.Egregiously, the Court's cryptic Order disregards (a) all of the aforesaid assertions (b) all exhibits substantiating the aforesaid assertions (c) all of Respondents other FOIL violations (see below) (d) crucial other disputed

questions of law, such as whether Breaking Ground should be subject to the FOIL.

And in amazing contrast to the Court's very own statement of the law as it pertains to the FOIL, and the facts backed by exhibits as presented by the Petitioner, the Court writes in the Order:

> "In their motion, the HPD defendants submitted documentation and a certification establishing that they fully responded to the subject FOIL request. HPD thus discharged its duty pursuant to FOIL and 22 NYCRR 1401.2(b)(7)(ii) by certifying that "the records of which the agency is a custodian cannot be found after diligent search" (see Matter of Rattley v New York City Police Dept., 96 NY2d 873 [2001]; Matter of Lopez v New York City Police Dept. Record Access Appeals Officer, 126 AD3d 637 [1st Dept 2015]). **Although the plaintiff/petitioner "must show by more than speculation that all responsive documents were not produced"** (Matter of Mitchell v Slade, 173 AD2d 226, 227 [1st Dept 1991]; see Matter of Morgan v Nassau County) Police Dept., 197 AD2d 579 [2d Dept 1993]; Matter of Wood v Ellison, 196 AD2d 933 [3d Dept 1993]), **he has not done so here. Hence, so much of the complaint/petition as sought to annul the HPD defendants' determination with respect to the plaintiff/petitioner's request for documents must be denied** (see Matter of Taylor v New York City Police Dept. FOIL Unit, 25 AD3d 347 [1st Dept 2006]; Matter of Tellier v New York City Police Dept., 267 AD2d 9 [1st Dept 1999])".

| Matter of Donovan v Port Auth. of N.Y. and N.J. |
|---|
| 2019 NY Slip Op 31397(U) |
| May 15, 2019 |
| Supreme Court, New York County |
| Docket Number: 161471/2017 |
| Judge: John J. Kelley |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

In *Mtr. of Donovan Vs PA.*[10], the Court stated:

"In this CPLR article 78 proceeding, the petitioners [...] seek judicial review of determination denying, in part, their request for agency records under the Freedom of Information Law (Public Officers Law§ 84, et seq.; hereinafter FOIL). The PA answered the petition and filed the administrative record. The petition is granted, the PA is directed to provide the petitioners with copies of relevant agency records as set forth herein, and the matter is referred to a referee to hear and report on the issue of which documents have already been provided, which must still be provided, and which do not exist [...]

***Rather, upon judicial review of an agency's determination to deny FOIL requests, the court must assess whether "the requested material falls squarely within a FOIL exemption" and whether the agency, upon denying such access, "articulat[ed] a particularized and specific justification for denying access"*** (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d at 566).

***As relevant here, the FOIL exempts from disclosure those agency records, or portions thereof, that, if disclosed, would constitute an unwarranted invasion of personal privacy*** or would impair present or imminent contract awards or collective bargaining negotiations, or are trade secrets or are submitted to an agency by a commercial enterprise or derived from information obtained from a commercial enterprise and which if disclosed would cause substantial injury to the competitive position of the subject enterprise (see Public Officers Law§ 87[2][b], [c], [d]). Whether or not Justice Schecter's determination has preclusive effect here, the court agrees with her analysis. ***It thus rejects the PA's unsupported contention that production of the documents sought by the petitioners would harm some***

---

[10] *Mtr. of Margaret L. Donovan Vs Port Authority of New York and New Jersey (PA), Civil Sup. Crt, NEW YORK COUNTY, INDEX NO. 161471/2017, May 16, 2019, Justice Kelley.*

*unexplained privacy interest asserted by a private developer or retailer or that the documents sought are subject to exemption from disclosure under FOIL. The PA has simply not articulated a particularized and specific justification for denying access.*

*The court thus directs the PA to produce all of the record requested by the petitioners, subject to redaction only with respect to confidential personal information such as bank account numbers and with respect to matters that are related to security and safety* at the World Trade Center site. At the most recent appearance before the court, the PA represented that it had provided the petitioners with certain documents since the oral argument on March 25, 2019. The petitioners insist that the PA is still withholding relevant documents that are required to be disclosed. Since the court cannot ascertain from the parties' contentions whether the PA has indeed provided all agency records responsive to the petitioners' request, the matter is referred to a referee to hear and report on the issue of whether the PA has complied with its obligations under FOIL. At the hearing, the referee shall conduct a line-by-line review of the petitioners' FOIL request in order to ascertain whether the PA responded to the particular request, whether there remain documents, including spread sheets and computer files, that are responsive to the request but have yet to be produced, or whether the PA can credibly claim that documents responsive to any particular request do not exist.

*The court notes with skepticism the PA's contention that it does not maintain a balance sheet, accounting file, or document that tracked or tracks the allocation and expenditure of insurance proceeds* that have been paid and disbursed in connection with the September 11, 2001, terrorist attacks, or that tracked or tracks its own expenditures for the redevelopment of the World Trade Center site.

## Conclusion:

### It Is Remarkably Arbitrary and Capricious Per Se for the Court to Selectively Refuse to Apply The Same Law to a Similar Fact Pattern

# APPELLANT'S DISREGARDED AFFIDAVIT

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 26 of 79

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
----------------------------------------------------------------------x
ABRAHAM GROSS, NETTY GROSS,

                Petitioners/Plaintiffs,

                                    **AMENDED AFFIDAVIT**
                                    **INDEX NO: 101960/2019**

            -against-

THE DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT (HPD),
SHATARA PELL, VICTOR HERNANDEZ, LOUISE CARROLL,
BREAKING GROUND (BG), VANESAA CUCURULLO,
TRAVIS FONG, STEPHANIE LABARTA,
and TERESA PALMIERI,

                  Respondents/Defendants.
----------------------------------------------------------------------x


# PETITIONER'S/PLAINTIFF'S AMENDED AFFIDAVIT IN SUPPORT OF HIS PETITION IN A HYBRID ARTICLE 78 ACTION

Plaintiff/Petitioner, Pro Se
Abraham Gross
917- 673-1848
agross2@gmail.com

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT.........................................................................................3

II.    PRIMARY ARGUMENT: THE FOIL PROTECTS VITAL PUBLIC INTERESTS, AGENCY COMPLIANCE WITH FOIL IS MANDATORY, AND THIS HONORABLE COURT SHOULD NOT CONDONE MOCKERY OF THE FOIL........................................................3

III.    PETITIONER'S FOIL REQUEST ................................................................................3

IV.    RESPONDENT'S UNLAWFUL POST-FOIL-SUBMISSION CONDUCT............................5

V.    RESPONDENT'S FOIL RESPONSE ..........................................................................12

        A.  SECOND ARGUMENT: THE NON-COMPLIANCE OF HPD WITH FOIL REQUEST (GROUPS A-E) CONSTITUTED ABUSE OF AUTHORITY, ARBITRARY AND CAPRICIOUS CONDUCT, MALICIOUS MOCKERY OF THE PUBLIC INTEREST AND DEMANDS PROMPT REMEDY....................................................13

        B.  THIRD ARGUMENT: A SIMILAR REMEDY IS NEEDED FOR OMISSION OF DOCUMENTS ORIGINATING FROM KEY DECISION MAKERS.........................13

        C.  FOURTH ARGUMENT: A SIMILAR REMEDY IS NEEDED TO ADDRESS THE CONCEALMENT OF INFORMATION BY SENDING ONE-WAY CORRESPONDENCE....................................................................................15

VI.    PETITIONER'S FOIL APPEAL .................................................................................16

        A.  FIFTH ARGUMENT: THE APPEAL DETERMINATION PERPETUATES RESPONDENT'S SICKENING DISREGARD FOR THE FOIL..........................16-17

        B.  OPINION OF THE COMMITTEE ON OPEN GOVERNMENT .........................16-17

VII.    SIXTH ARGUMENT: AS A MATTER OF LAW AND PUBLIC POLICY, BG SHOULD BE VIEWED AS AN INTEGRAL PART OF THE HPD AGENCY FOR FOIL PURPOSES OF FOIL AND OTHER ASPECTS OF ADMINISTRATIVE LAW...............................................18

VIII.    PRAYER FOR RELIEF .............................................................................................20

1

IX.     CONCLUSION..................................................................................................21

## TABLE OF AUTHORITIES
### Cases Cited

*Linz v. The Police Department of the City of New York*,
Sup. Crt., NY County, (2001) ...............................................................................5

*Matter of Capital Newspapers Div. of Hearst Corp. v Burns*,
109 AD2d 92, 94 (3d Dept 1985)......................................................................4,12

*Matter of Prall v New York City Dept. of Corrections*,
29 AD3d 734 (2d Dept 2015)............................................................................4,12

*Matter of New York Comm. for Occupational Safety & Health v. Bloomberg*,
72 AD3d 153 (1st Dept 2010)...........................................................................4,12

*Mtr. of Legal Aid Soc. v. NY County D.A.'s Office*
Hon. John J. Kelley, Sup. Crt. NY County (2017)............................................4,12

*Quirk v. Evans*,
455 NYS 2d 918.................................................................................................4,19

*Mtr of Buffalo v. Buffalo Entr. Dev.*
578 NYS 2d 945, (1991);...................................................................................4,19

*Westchester–Rockland Newspapers v. Kimball*,
50 NY2d 575 (1980);..........................................................................................4,19

*The Legal Aid Soc'y. v. Albany Local Dev.*
(Sup. Crt, Albany Cty, (1989));.........................................................................4,19

*S.W. Pitts Hose Company et al. v. Capital Newspapers*
(Sup. Crt, Albany Cty, (1989));.........................................................................4,19

### Statutes Cited

Public Officers Law § Article 6, Sections 84-88...........................................3,17, 18, 20

Public Officers Law §  Article 6, Section 89(4)(c).......................................22

Public Officers Law, Article 6, Section 87(2)(b).........................................13-18

CPLR § Rule 7804 (e)....................................................................................15
The HPD Marketing Handbook......................................................................18, 19

# I.  **Preliminary Statement**

1. This article 78[1] seeking judicial redress of Respondent HPD's non-compliance with The Freedom of Information Law (hereinafter: "FOIL"), is part of a hybrid action filed by Petitioner for damages, and other relief, case no. 101960/19.

2. Plaintiff/Petitioner (hereinafter: "Petitioner") submitted a request for HPD agency records under the FOIL on August 29, 2019, (hereinafter: "Request").

3. Respondent HPD initially promised to expedite the most critical part of the Request on October 16, 2019, and other documents as they became ready.

4. In violation of this commitment, not a single relevant document was sent before December 05, 2019. Respondent's answer on this date (hereinafter: "Response") was evasive, non-responsive, and illustrates, yet again, HPD's disregard for law.

5. Petitioner filed a FOIL appeal on December 19, 2019 (hereinafter: "Appeal"). The Appeal Officer (hereinafter: "Officer") constructively rejected the Appeal by not responding within the required 10 days, before responding after 12 days (the "Ruling").

6. Having exhausted all administrative remedies, Petitioner, respectfully submits this Amended Affidavit-In-Support ("Affidavit") seeking to: (a) compel prompt compliance with the Request; (b) obtain declaratory, equitable, compensatory relief, and any other just remedy this honorable court (hereinafter: "Honorable Court") deems appropriate; (c) obtain declaratory judgment, based on controlling law and other compelling justifications, that Breaking Ground (hereinafter: "BG") must be considered a quasi-public-agency, subject to certain provisions of agency law, to include the FOIL. As such, Petitioner asks that BG promptly comply with FOIL request, and stop concealing critical information.

7. Respectfully, in prior proceedings, Petitioner has been crippled by the broad tolerance of an agency's prerogative to repeatedly violate lawful procedure, due process, deprive Petitioner's of his rights, and inflict upon him immeasurable harm. As such, Petitioner respectfully prays with the Honorable Court not to condone an extraordinary abuse of power and a fundamental breach of administrative integrity.

# II.  **Primary Argument: The FOIL Protects Vital Public Interests**

8. Pursuant to New Public Officers Law § Article 6, Section 84[2]:

> [...] The legislature therefore declares that government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance

---

[1] CPLR § 7803.

[2] Throughout this Affidavit, *italics* are entered by Petitioner and for purposes of clarity.

with the provisions of this article. [...] *The people's right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality.* [...]

9. In addition, the vast majority of cases involving the FOIL[3], as well as countless advisory opinions[4] of the Committee On Open Government, contain a paragraph to the effect of:

> *As a general matter, the Freedom of Information Law is based upon a presumption of access.* All records of an agency are available, except to the extent that records or portions thereof fall within one or more grounds for denial appearing in §87(2)(a) through (i) of the Law.

10. In remarkable contrast to the aforesaid, HPD's evasive, deceitful FOIL non-compliance is rationally motivated by an ill-fated desire to conceal damning information. Moreover, HPD's conduct embodies the the decimation of every scared value the FOIL aspires to protect.

11. Petitioner's Request (EXHIBIT A1) sought:

**Request- Group A:** The Waterline Square (hereinafter: "Property") Applications Summary (hereinafter: "Summary") demonstrating the date that: (a) BG processed applicants in relation to their respective lottery log numbers; (b) BG transferred each applicant to HPD for further review; (c) each applicant was generally approved by BG and HPD for an apartment; (d) assigned by BG and HPD to a specific apartment; (e) each applicant moved into his/her apartment.

**Request- Group B:** All records showing calculations made to determine Petitioner's financial eligibility.

**Request- Group C:** The method of income calculation for every approved applicant. For example, was the computation based on: (a) income from the current year (2019); (b) income from prior years; (c) combination of current and prior years; (d) another method of income calculation.

**Request- Group D:** All records showing the date that: (a) Petitioner's application received by each agency; (b) Petitioner's application denied by each agency; (c) Petitioner's first, second, and third appeals *were received by each agency*; (d) Petitioner's first, second, and third appeals were denied by

---

[3] For example: *Mtr of Buffalo v. Buffalo Entr. Dev.* 578 NYS 2d 945, (1991); *Westchester-Rockland Newspapers v. Kimball* 50 NY2d 575 (1980); *The Legal Aid Soc'y. v. Albany Local Dev.* (Sup. Crt, Albany Cty, (1989); *Babigian v. Evans,* 427 NYS 2d 688 (1980); *S.W. Pitts Hose Company et al. v. Capital Newspapers* (Sup. Crt, Albany Cty, (1989); *Quirk v. Evans,* 455 NYS 2d 918, 97 Ad 2d 992 (1983).

[4] For example, advisory opinions numbers 2924, 3062, 2548, 2831, 2897, 7633, 9647, 15374, 16322, 13335, and the advisory opinion in paragraph 81.

4

each agency; (e) specific reasons given for denying Petitioner's first, second, and third appeals.

### III.   Respondent's Post FOIL Submission Conduct

12. On September 05, 2019 ("2019" applies hereinafter to all dates without a specific year), Respondent acknowledged receipt of the Request:

> The FOIL Unit of the NYC Department of Housing Preservation and Development has reviewed the above-referenced FOIL request.  Based on the breadth of information sought, *the agency is unable to grant the request within twenty (20) business days and anticipates sixty (60) business days is needed to conduct a diligent and thorough search for responsive records.  If the records are available sooner you will be notified. You may revise your request to narrow the scope of information sought, which may reduce the time in process.*  In the event you require substantiation for your legal proceeding that a search for records is being conducted, you may present a copy of the HPD FOIL acknowledgement for that purpose.  We apologize for any inconvenience. Thank you. HPD FOIL.

13. The Response specifically stated (a) "if the records are available sooner you will be notified"; and (b) "sixty (60) business days is needed to conduct a diligent and thorough search for responsive records". Nonetheless, (a) not a single responsive document was sent before December 05, 5:15pm; (b) there are 90 days between September 05 and December 05, not 60 days. *Petitioner respectfully asks for specific declaratory judgement denouncing these violations of the FOIL.*

14. Further, subsequent FOIL requests reveal Respondent's troubling, familiar disregard for law. By default, the FOIL requires the agency to comply within the FOIL request within 20 days. And yet again, contrary to the clear directive of the legislator, without any shame or hesitation, subsequent requests (EXHIBIT A2) reveal that even the most simple FOIL request- a single document with an identifying serial number- requires 90 days. The fact HPD automatically requires 90 days, respectfully calls for judicial intervention, as it arbitrarily and capriciously violates settled law[5]:

> "The determination of whether a period is reasonable must be made on a case by case basis taking into account the volume of documents requested, the time involved in locating the material, and the complexity of the issues involved in determining whether the  materials fall within one of the exceptions to disclosure.  Such a standard is consistent with some of the language in the opinions, submitted by petitioners in this case, of the Committee on Open Government, the agency charged with issuing advisory opinions on FOIL".

---

[5] *Linz v. The Police Department of the City of New York*, Sup. Crt., NY County, (2001), EXHIBIT L.

5

Case 1:20-cv-04340-RWL    Document 65-1    Filed 10/15/20    Page 32 of 79

*Petitioner respectfully asks for declaratory judgement redressing and denouncing this specific violation of the FOIL.*

15. Adopting the suggestion "you may revise your request to narrow the scope of information sought, which may reduce the time in process", Petitioner revised his Request to include an expedited request for a single document- the Applications Summary ("Summary"). Petitioner also made it clear the information sought pertained to a disputed issue of fact that was needed for a time-sensitive submission in the Appellate Division[6].

16. On October 16, Ms. Dina Saffan, Director of Public Information at the HPD FOIL Division ("Ms. Saffan") responded as follows:

> Dear Mr. Gross, as discussed today, HPD FOIL will contact the division to search for a certain record specified in your FOIL request no. 2019-806-01665, *namely, a list of the affordable units and the date each was rented for Waterline Square.* As I explained, because you've stated that this document is required in connection with your court date (today) we will make every attempt to locate the records, however please be advised that we may not be able to provide you with the information you are seeking in the immediate turnaround time you've set forth. *If this document is available today, it will be sent to you electronically.* Thank you, Dina Saffan.

17. On October 17th, 18th, 19th , 20th, 21th, 22th, and October 23, 2019, HPD did not send the Summary it promised to expedite on October 16.

18. On October 24, Petitioner followed up:

> Ms. Saffan, respectfully, I cannot put into words how challenging my circumstances are. In our last communication I was under the impression that HPD would expedite the revised simple request for one document indicating the exact leasing date of each apartment. *I am pleading with you to follow up with me re when this document will be ready. I am further pleading with you to explain why such a simple request originally sent in late August must take so long.* Thank you, Abraham Gross

19. On October 25, Ms. Saffan responded:

> Dear Mr. Gross, thank you for your correspondence.  *We are following up on the status of this request with the division that is likely to have the information being sought.* As soon as the search for records is complete, we will forward any responsive records to your attention in accordance with the FOIL statute.  *We have asked the division overseeing this search to expedite this FOIL.* To reiterate my correspondence of last week, HPD FOIL contacted the necessary division to search for a certain record specified in your FOIL request 2019-806-01665, *namely, a list of the affordable units and the date each was rented for Waterline Square.* As explained, HPD FOIL will make every attempt to secure responsive records to your request, however please be advised that we may not be able to provide you with the information you are seeking in the immediate turnaround time you've set forth.

---

[6] Respondent's statement "in the event you require substantiation for your legal proceeding that a search for records is being conducted, you may present a copy of the HPD FOIL acknowledgment for that purpose", lead Petitioner to believe- naively- that the timely-legal-nature of his request would inspire Respondent to expedite.

20. On October 25, Petitioner responded:

> Thank you for your honest response. The division which MUST have this information is HPD's Affordability Oversight division. My concern stems from the seemingly-unreasonable amount of time the relevant division is taking to locate a simple document. *This is a simple document that does not reveal any sensitive information, and which is clearly covered by the FOIL statute. Can we please verify that this document is authentic and that dates have not been modified?*

21. On October 28, Ms. Saffan responded:

> *Dear Mr. Gross, the agency continues to search for records responsive to your request, FOIL number 2019-806-01665, and will notify you when such records are available.* Thank you. Dina Saffan.

22. On October 31, Petitioner responded:

> Hi Ms. Saffan. For some reason my previous emails bounced back. Can you please confirm that you received them. My next court submission is due 11/04 at 10am. As my submission is related to the document in question - history of and current lease up status - *a simple document showing the applicant's log number, apartment number , and date of signing the lease - is there kindly anyway this document can be sent today or tomorrow* ? Kindly let me know. Thanks so much.

23. On November 1st, 2nd, 3rd, and November 4, HPD did not send the Summary it promised to expedite on October 16.

24. On November 05, Petitioner called the HPD FOIL Division, hoping to understand the delay in producing the Summary. Upon being transferred to voicemail, Petitioner left Ms. Saffan a message, politely asking to call him back. She did not.

25. On November 06, no response was received. Also, on this day, counsel for HPD, emailed Petitioner as follows:

> *Mr. Gross, HPD informed me that they already told you that they would expedite your request. They are working diligently to complete it.*

26. On November 7th, 8th, 9th, and November 10, once again, HPD did not send the Summary it promised to expedite on October 16.

27. On November 11, Petitioner left Ms. Saffan a second message, asking for clarification. No response was received.

28. On November 12th, HPD did not send the Summary it promised to expedite on October 16.

29. On November 13, at 5:23pm, Ms. Saffan asserted:

> *Dear Mr. Gross, Please be advised that the responsive record pertaining to the information you specified below has been sent to you electronically through the Open Records portal. HPD continues to search for the balance of responsive records due 12/5, in connection with FOIL-2019-806-01665. If you are no longer interested in the remaining records please let us know. Thank you.*

30. On November 13, 2019, at 5:11pm, Petitioner received the email from HPD FOIL:

> The Department of Housing Preservation and Development (HPD) has responded to your FOIL request FOIL-2019-806-01665 in part with the following file(s). The file(s) listed below will not be publicly available on the OpenRecords portal.: FOIL-2019-806-01665_Doc_1_Final. The agency will continue its search and will contact you should additional records responsive to this request become available.

31. The single page document sent (hereinafter: "False Document", attached as EXHIBIT A3) reacquainted Petitioner with the unsettling fact HPD continually acts as though it has free reign to violate any law it deems fit.

32. Notwithstanding the fact that the information in False Document contradicts Respondent's prior representations, False Document has little-to-nothing to do with Petitioner's actual request, or with the express promises made by the Director of HPD FOIL Division, on October 16.

33. On November 14, distraught yet again by an agency's never-ending culture of lawlessness, Petitioner wrote the following to Ms. Saffan (while CC'ing Officer):

> As previously stated numerous times, I am asking for HPD to honor a small portion of my lawful FOIL request (acknowledged on September 05, 2019 by HPD) such that I may provide the Appellate Division of the Supreme Court with the information that is relevant to a pending case. *The document sent to me yesterday does not contain that information.* As much as I appreciate some response, I am once again pleading with you, Today, Thursday, to call Ms. London ASAP- project manager of Waterline Square, and ask her to provide the single document (or at the most 3 documents- one for each building) which looks like the documents attached to this email.
>
> *The relevant HPD division is the Affordability Integrity/Oversight unit. It is inconceivable that they do not have this single document. It is inconceivable that it is hard to find this document. They do not need to ask Breaking Ground- as they have real time access to this information.* In addition to the apartment number, the document must specify the log number of the applicant, and the exact date a lease was signed for the specific unit. It does not need to have any names. I am asking, respectfully, once again that this single document be sent over Today, Thursday, 11/14 or tomorrow *such that I will have a chance to review it before filing papers with the court by the deadline of 11/18. Please do not allow HPD to claim in bad faith that they "are still looking for the document". Kindly respond either way, thank you, Abraham Gross*

34. On November 15th, 16th, and 17th, HPD did not send the Summary it promised to expedite on October 16.

35. On November 18, no response was received. This was also the deadline for Petitioner's Appellate submission.

36. Due to Respondent's deprivation of Petitioner's clear rights under FOIL, and malicious toying, Petitioner submitted his Reply without the information promised. In protest, Petitioner wrote to HPD and BG counsel:

Sent: Monday, November 18, 2019 8:23 PM To: Jeanne-Marie Williams Cc:
Schonfeld, Samantha (LAW) Subject: Re: Extension to Reply time

Dear Ms. Williams and Ms. Schonfeld,

Respectfully, kindly find the attached. *To reiterate, I am submitting this Reply
Affirmation under fierce protest considering HPD continues to withhold
critical information in bad faith. It is unconscionable that even as these words
are written, HPD refuses to provide a single document requested and promised
on October 16. I am respectfully asking once again that a government agency
sworn to protect integrity and lawful procedure provide the document
requested and promised on October 16- not the document that was sent last
week, which has little to do with what was requested.*

37. On November 19, counsel for HPD responded:

> *Mr. Gross, it is my understanding that HPD sent you this document last week.*

38. On November 19, Petitioner responded:

> *Ms. Schonfeld, if only that were true. No, they did not send me the single
> document I asked for. I asked for a single document showing an applicant's log
> number, unit number, and date of the lease from HPD's official record. Instead,
> they sent a document from Breaking Ground which purports to show how
> many apartments are currently available**.** It is truly sad to see that HPD is
> willing to engage in this type of activity. There is no reason it should take 33
> days to locate and release a single document.*
>
> *As counsel for HPD, I once again ask that they provide the document that
> was requested today, 11/19/2019, and not to turn a blind eye to the fact HPD
> is withholding critical information that I am entitled to based on my FOIL
> request. My hope is that as legal counsel for a government agency you will
> feel professionally responsible for HPD's compliance with lawful procedure.
> It truly would be so grateful if you can contact the HPD FOIL unit. Thanks so
> much. Respectfully, Abraham gross*

39. On November 20, 21, 22, 23, 24, and November 25th, once again, HPD did not
send the Summary it promised to expedite on October 16.

40. On November 25, Petitioner and counsel for HPD and Breaking Ground
appeared before the Honorable Appellate Justice R. Richter ("Honorable
Justice"). In this conference, counsel for HPD now changed the narrative
based on what her client had told her. *The earlier claim asserted from October
16-November 25: "the agency continues to search for the document", was now
replaced with: "HPD has never even heard of such a document, nor has anyone
in HPD seen such a document. It is taking so much time because they have to
create it from scratch".* These words were stated before Petitioner, the
Honorable Justice, counsel for BG, and the appellate court attorney ("Court
Attorney").

41. Respectfully, Petitioner humbly suggests that it is egregious for Respondent
to lie by stating that her client have never seen or heard of Summary:

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 36 of 79

 

i. First, Respondent had instant access to Summary as of June 2019. The simple truth is that thousands of applicants call the HPD Oversight Affordability Division, on a daily basis, asking for an update on their status, and are immediately given the information from the document in question. Throughout June 2019, Petitioner had six conversations with Respondent, in which Respondent was able with a few clicks, to access all the information that is within Summary. There was no delay, surely not a 50 day delay.

ii. Second, for Respondent's oversight to effective, it is inconceivable that they did not have access to basic, critical information contained in Summary[7].

iii. Third, on December 05, a cool fifty days after it had promised to expedite Summary, Respondent produced the very document it had claimed never existed. Regretfully- although quite understandably- Summary, is almost entirely redacted, ostensibly with the intention of masking the truth Petitioner has asserted for some time. HPD has no other reason to lie to their counsel, the Appellate Division, and Petitioner.

42. *Petitioner respectfully asks for declaratory judgement redressing this specific egregious conduct: repeatedly lying to the Honorable Justice, their counsel and to Petitioner.*

43. Further, it is relevant to note that, in this conference, the Honorable Justice:

i. Asked Respondents asked to expedite the release of the Summary as soon as possible. Predictably, these words fell on deaf ears. Respondents completely ignored this request, and made no attempt to release a single document before the very last moment.

ii. Directed Petitioner that any order to compel release of documents must be filed with the Supreme Court (the Honorable Court is aware of Petitioner's unsuccessful attempt to follow this direction).

iii. Directed the Court Attorney that all discussions of the pending motion at bar would be adjourned until 12/13, such that

---

[7] If HPD was ever to successfully monitor the integrity of the application process, then it would have to have access to reliable, updated, and specific information about every apartment, every log number, and the exact date the apartment was leased (as well as the date the applicant's file was transferred to HPD, and the date he was shown the apartment). For oversight to be effective, HPD's information has to be reliable, and independent from the Marketing Agent.

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 37 of 79

Petitioner would be given the chance the examine the Summary and resubmit his Reply pursuant to examining the Summary[8].
44. On November 26, Petitioner reached out as follows:

Ms. Schonfeld, Dear Ms. Saffan and Mr. Weinberg,

*Respectfully, today is November 26, 2019, which also marks 41 days since October 16, 2019. 41 days.* As of today, I still have not received the single document that was said to be expedited on October 16, 2019: a list of the affordable units in Waterline Square with the corresponding #log number of the applicant, and the date each apartment was awarded. Yesterday, the Appellate Division graciously extended the deadline of my court submission, which had originally been *adjourned so that I may get a fair, reasonable chance to review the single document.*

*Respectfully, the assertion that "HPD has never seen such a document" and/or that "HPD is looking for the document" is not only false and inconceivable, it is also cruel and unusual considering the unfathomable pain, harm, and suffering I am have been for six months.*

*The simple truth is that thousands of applicants call the HPD Oversight Affordability Division, on a daily basis, asking for an update on their status.* The common procedure in these cases is to transfer the applicant to the specific project manager**,** *who would then look up the candidate on the HPD server, and in "real-time" tell that candidate his status.* In my particular case, I've had at least 6 six such conversations with the kind, courteous, and ethical HPD employee, Mr. Gabriel Mumbrun. In real time, Mr. Mumbrun was able with a few clicks to access all the information that is within the single document requested. Mr. Mumbrun was able, within a few clicks to see what log number they were up to, and what apartment was awarded to which applicant. The answer came instantly. There was no delay, surely not a 42 day delay.

And so it should be. *If HPD was ever to successfully monitor the integrity of the application process, then it would have to have access to reliable, updated, and specific information about every apartment, every log number, and the exact date the and the exact date it was leased (as well as the date the applicant's file was transferred to HPD, and the date he was shown the apartment).* For oversight to be effective, HPD's information MUST be independent of that of Breaking Ground. For this reason, it is highly inappropriate for an agency mandated to uphold lawful procedure to assert that:  "HPD has never seen such a document" and/or that "HPD is looking for the document". *Throughout this experience, as a good-faith, law-abiding human being and New York resident, I've endured pain, suffering, and harm that I wish upon no human being.*

I am not writing these words from a comfortable office with an on-demand coffee station, nor from a warm, well-lit home. I am writing these words from

---

[8] Respectfully, the grievance that the Court Attorney inflicted on Petitioner by maliciously disregarding the order of the Honorable Justice, and "misplacing" the motion sleeve in the "to be decided", rather than in "adjourned" is a violent decimation of elementary notion of fairness, particularly considering the first episode described, in which the Court Attorney destroyed the integrity of these proceedings by becoming an advocate for one party and engaging in ex parte communications to change a valid order, after proceedings concluded.

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 38 of 79

a dark, cold, abandoned building without access to heat and running water, after having been pushed around, and been transferred to three different shelters. The harrowing experience in public shelters- let alone three-shelters in beyond what words could describe.

I am appealing to your integrity, compassion, and honesty, to please send the genuine, unmanipulated version of the document, today, Tuesday, or tomorrow, Wednesday, November 27, 2019. The document not only exists, it is easily accessible to Ms. London, Ms. Pell, Mr. Hernandez, and dozens of other HPD employees. In the event that Oversight Affordability Division still continues to claim- in bad faith- that they have never seen such a document, I am appealing to your integrity, compassion, and honesty to recognize the cruel, unusual, and unjust suffering that is being inflicted on an honest, good-faith human being, and to protect the public interest by rectifying this injustice.

45. On November 27, HPD did not HPD did not send the Summary that it promised to send pursuant to the Honorable Justice's request, and that it promised to expedite on October 16.

46. November 28 featured the same egregious obliterations of law, as did November 29, November 30, December 01, December 02, December 03, and December 04.

47. On December 05, on or about 5:15pm, HPD sent their Response: a partial, non-responsive, heavily-redacted, mostly containing countless duplicates of the same documents which Petitioner hadn't even requested, and in event, documents which Respondent knew very well that Petitioner already possessed[9].

### IV.   Respondent's FOIL Response

48. HPD's Response (EXHIBIT F) stated:
   - The Department of Housing Preservation and Development (HPD) has closed your FOIL request FOIL-2019-806-01665 for the following reasons:
   - Your request under the Freedom of Information Law (FOIL) has been fulfilled and the documents you requested have been emailed to you.
   - Please note, portions of some records are exempt from disclosure under Public Officers Law, Article 6, Section 87(2)(b) because if disclosed, would constitute an unwarranted invasion of personal privacy.  Information exempt from disclosure has been redacted from the responsive documents.
   - HPD has provided the responsive records in connection with Section A of the attached FOIL request, subject to the exemptions listed herein.
   - Please refer to the attached Application Report, subject to the exemptions listed herein,  for the applicant approval dates.
     - Please refer to the attached HPD Marketing Handbook, pages 45-54, for the method of income calculation used to determine applicant approval.
     - HPD does not have responsive records for the following requested information:

---

[9] Respondents four rejections comprise approximately one third of the documents. *Petitioner respectfully asks for declaratory judgement redressing this specific conduct.*

- The specific dates every approved applicant was assigned to an apartment. This information is held by the marketing agent for the Waterline Square property.
- The specific dates every approved applicant moved into his/her apartment. This information is held by the marketing agent for the Waterline Square property.

### <u>Non Compliance with Group A: Abuse of Authority, Malicious Mockery of FOIL, Arbitrary and Capricious Conduct</u>

49. As stated by this Honorable Court[10], it is settled that judicial review of an agency's determination to deny FOIL requests, requires the court to assess whether (a) "the requested material falls squarely within a FOIL exemption"; and (b) "whether the agency, upon denying such access articulated a particularized and specific justification for denying access"[11]. The "classic" arbitrary or capricious standard is not applicable in this instance[12].

50. As relevant to Response Group A, the FOIL exempts from disclosure those agency records, or portions thereof, that, if disclosed, would constitute an unwarranted invasion of personal privacy[13] ("Exemption").

51. Respectfully, HPD's bad faith use of the Exemption is prime abuse of power. It would be an injustice for this Honorable Court to give HPD another free pass.

52. Petitioner merely sought the log numbers of applicants alongside with the dates demonstrating the order these numbers were processed[14]. There is absolutely no way to identify any applicant based on their log number. This claim in itself *bone fide arbitrary and capricious*, as it is without any reason.

53. Further, even if there was a way to identify, HPD had to explain it, rather than abuse its power by invoking an irrelevant privilege.

54. HPD was well-aware that the types of documents FOIL intended to protect include "*information of a personal nature,*" such as: an individual's employment, medical, or credit history, or items involving the medical or personal records of a client/patient in a medical facility.

55. Here, none of the information sought in the Request comes close to constituting "*an unwarranted invasion of personal privacy*" as contemplated by FOIL:

    i.    The requested materials falling squarely outside of the FOIL exemption.

---

[10] *Mtr. of Legal Aid Soc. v. NY County D.A.'s office Case Number: 160892/2017.*

[11] *Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d at 566 (3d Dept 1985).*

[12] *Matter of Capital Newspapers Div. of Hearst Corp. v Burns,* 109 AD2d 92, 94 (3d Dept 1985); *Matter of Prall v New York City Dept. of Corrections,* 129 AD3d 734 (2d Dept 2015); *Matter of New York City Comm. for Occupational Safety & Health v Bloomberg,* 72 AD3d 153 (1st Dept 2010).

[13] Public Officers Law § 87(2)(b).

[14] Petitioner sought this information following the recorded admission of a former BG employee, who swore that (1) numbers were processed out of order; (2) rightful applicants were rejection; (3) wrongful applicants were approved (4) multiple bribes of $3,000 were paid by current residents in the Property to BG employees to skip the line. There is absolutely no conceivable way to identify the identity of an applicant based on his log number.

      ii.    Furthermore, this information was specifically requested in a manner that fully protects the privacy of the individual applicants.

      iii.    Furthermore, the apartment numbers were already revealed in a prior court submission.

      iv.    Furthermore, this information is vital to protect the public's right to know that the application process is in compliance.

      v.    Furthermore, Respondent mightily fails to offer a particular and specific justification, or any justification for that matter.

56. Petitioner respectfully asks to recognize that the logical, if unpleasant, rationale to conceal this information was simply to hide that:

      i.    Respondents inexcusably processed applications out of order based on a variety of considerations that are offensive to fairness[15].

      ii.    This information supports the merits of Petitioner's case.

57. As stated, the egregious nature of HPD's arbitrary invocation is compounded by this information being of great relevance to the public. The log numbers are essential as they protect the integrity of the affordable housing process, which to date, has a troubling track record that includes fraud and bribery[16].

58. Your Honor, the primary purpose for the Exception is rationally related to the need of balancing the public's right to know, and an affected individual's right for privacy. It is an unbearable breach of the public's interest and societal welfare for Respondent- a government agency that is NOT above the law, and IS subject to FOIL- to justify its unlawful concealment of information by abusing a narrow-tailored exception that serves a vital function. Petitioner beseeches the Honorable Court not to turn a blind eye to yet another painful illustration of HPD's non-compliance with the law.

### Non Compliance with Group B and Group C: Abuse of Power and Malicious Mockery of Lawful Procedure

59. In their Response, dated December 05, 2019, HPD did not provide a single response to Group B or Group C. Instead, the Response generically stated: "Please refer to the attached HPD Marketing Handbook, pages 45-54, for the method of income calculation used to determine applicant approval".

60. Clearly, the Request did not ask for general information about income calculation, rather: (a) specific information about the underlying calculations relating to Petitioner's application (b) specific information about the income

---

[15]A former BG employee, as well as multiple current residents in the Property have admitted that there bribes and nepotism based on familial relationships. The irrefutable evidence submitted thus far has already demonstrated unbearable extraordinary incompetence on part of BG, and deliberate indifference on part of HPD. BG's incompetence includes the loss of all of the most personal financial information (hard copies) of numerous applicants. Granted the opportunity, the Honorable Court will be presented with this evidence at the trial of this hybrid action.

[16]https://newyork.cbslocal.com/2019/05/21/luna-park-housing-complex-bribery-scandal-mitchell-lama-anna-treybich-irina-zeltser-karina-andriyan/

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 41 of 79

calculations and annual income of approved applicants. This would be clear to any honest, objective reviewer.

61. Petitioner respectfully pleads not to turn a blind eye to yet another illustration of glaring bad faith. As Respondents are well-aware, Petitioner is familiar with the provisions in the HPD Handbook. And such, why would Petitioner ask for information that he just referenced at length in his Petition? It is not unreasonable to infer the express intention of the Respondent was simply to mock Petitioner.

62. Furthermore, common sense makes it hard to defend any notion suggesting that Respondent didn't understand the plain meaning of the language in the request.

63. Furthermore, Respondent had ample time to sort this out, as it took 90 days for the Response (although it stated it would take 60 days).

64. Finally, this issue was raised by Petitioner in his appeal to the HPD FOIL Appeal Officer (EXHIBIT B), giving HPD another 10 days to rectify their "error". Like all other issues raised, this was disregarded without discussion (EXHIBIT C).

### Non-Compliance with Group D: Abuse of Power and Malicious Mockery of Lawful Procedure

65. Petitioner sought the dates that his appeals were received. In the absence of Respondents sending any confirmation that an appeal was received, it is incumbent upon Respondent to produce some form of an internal record demonstrating when each appeal was received, and when each determination was issued.

### Non-Compliance by Virtue of Omitting Numerous Documents (Group E)

66. Contrary to the second false assertion in the Response, HPD provided incomplete records in connection with Request, by omitting countless relevant records (hereinafter: "Group E"). The bewildering disregard for lawful procedure is compounded by Respondent's repeated violations of CPLR § 7804 (e).

### Examples of Documents Deliberately Omitted from FOIL

67. First, many communications were arbitrarily and omitted, for example documents titled EXHIBITS E1-E4. Why? Pursuant to the violations of CPLR 7804 § (e), it is egregious for Respondent to continue mocking its statutory obligations, and respectfully, it would be devastating for the Honorable Court to reward these violations once again.

### Omitted Correspondence Originating From and To with Ms. Ana Nunez

68. In addition, the Response arbitrarily omits all correspondence between Ms. Ana Nunez (who reached out on behalf of Petitioner) to HPD (EXHIBIT E5). Why was this omitted?

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 42 of 79

### Omitted Correspondence Originating From and To Mr. Mumbrun

69. In addition, Mr. Mumbrun, was the project manager at Waterline Square[17]. He spoke to Petitioner at least a dozen times, and critically, Mr. Mumbrun confirmed to Petitioner that he had sent multiple emails regarding Petitioner both to BG and to higher ranking executives in HPD. Although Mr. Mumbrun is CC'd on many of the emails, not a single email originates from him. Why?

### Omitted Correspondence Originating From and To Mr. Hernandez

70. In addition, email correspondence from Mr. Victor Hernandez- the Director- with whom Petitioner had multiple conversations, and even exchanged emails (EXHIBIT E3)- almost all of his communications- are mysteriously missing from the Response, even though he confirmed that had exchanged multiple emails with multiple parties about Petitioner's file. Why was this omitted?

### Omitted Correspondence Originating From and To Ms. Cucuerello

71. In addition, Petitioner's material communication with Ms. Cucuerello is missing from the Response (EXHIBIT E4), as well as emails originated from Ms. Cucuerello.

### Omitted Correspondence Originating From and To Ms. Labarta and Mr. Fong

72. Moreover, critical communication that Ms. Labarta and Mr. Travis Fong, confirmed sending to their supervisors at BG regarding the rejection of the application, is missing.

### Omitted Correspondence: Purposeful One Way Communication

73. Furthermore, the entire Response is rampant with one-way communication: a question is asked, but the reply is missing. For example, CEO of BG, Ms. Rosen's email appears, but notably missing are the internal emails sent from Ms. Rosen to other employees re the application.

74. These omissions, yet again, are demonstrative of the fact HPD clearly employed a pick-and-choose censorship method. All of the documents pertaining to the Request submitted were carefully selected, and only a fraction of the documents were submitted.

### Conclusion: Non Compliance with Groups A-E

75. As it pertains to Groups A,B,C,D, and Group E, the Response violated the FOIL, as well as Petitioner's right to receive such information.

---

[17] It is noted that Mr. Mombrun was mysteriously replaced for unknown reasons in the middle of the lease-up.

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 43 of 79

## V.   Petitioner Appeals FOIL Response

76. On December 19, Petitioner appealed the FOIL response (EXHIBIT B). By law, to have any effect, the determination had to be issued by January 06. No response came on January 06, nor January 07, nor any clarifying email. Thus, as matter of law, the appeal was denied without reason.

77. On January 08, at 5:35pm, the Appeals Officer issued the Ruling (EXHIBIT C) that, in effect, authorized HPD to unredact Petitioner's own name, and log number. None of the violations illustrated in detail were mentioned.

78. Petitioner replied with motion to reconsider. Instantly, Petitioner received an automated notice that the Officer is out on vacation for two weeks (EXHIBIT D2).

79. To reiterate, the Officer did not respond within 10 days, although he was likely familiar with the 10 day rule. The Officer then issued a null and void, meaningless determination that purported to grant Petitioner's appeal in part, pursuant to which the Officer instantly went on a two week vacation. A closer look confirms this "remedy" was purely academic, as common sense warrants that Petitioner knows his own name and log number. Notably missing is but a single reference to any of the substantive violations alleged.

## VI.   Committee On Open Government Affirms Petitioner's Position

80. On January 6, 2020, Petitioner contacted the Committee On Open Government (hereinafter: "Committee"). The Committee confirmed that by not responding to the appeal within 10 days, HPD rejected the appeal in its entirety.

81. It further offered Petitioner the chance to receive an advisory opinion on a single issue. Petitioner chose the arbitrary invocation of the Privacy Exception:

> DID HPD INAPPROPRIATELY INVOKE THE PRIVACY EXCEPTION UNDER 87 (2) (B)?
>
> This is an affordable housing project. HPD is mandated to protect the integrity of the application process. First and foremost, HPD must make sure that candidates are processed based on their correct log number. It is fraudulent and unlawful for a candidate with a lower priority to be processed out of order, simply because he pays a bribe, is a relative of someone at HPD, or any other arbitrary reason. Accordingly, to protect the public interest of lawful compliance and integrity of the application process, HPD must be able to demonstrate that the log numbers were processed in correct order. This is proven by a document titled the applications summary, which shows: (a) the applicant's log number (b) the date the application was processed and/or the date an apartment was awarded. In my request, I specifically asked HPD

17

to produce this document. I specifically did not ask for the applicant's names to be revealed. There is no way I, or anyone else, can establish an applicant's identity based on their log number. Thus, the HPD abused its authority by claiming the redaction is based on privacy. Respectfully, it is stomach-turning to grant HPD the mandate to continue on its journey of lawlessness in broad daylight. There are numerous other issues, but this is currently the most critical issue, and I'd be grateful if you could kindly issue an advisory opinion on it. Alternatively, kindly refer me to the person who can. Thanks so much.

82. On January 30, 2020, the Committee issued and delivered both parties an advisory opinion supporting Petitioner's position. Sadly- though expectedly- HPD's position remains undisturbed.

The staff of the Committee on Open Government is authorized to issue advisory opinions. The ensuing staff advisory opinion is based solely upon the information presented in your correspondence, except as otherwise indicated.

Dear Mr. Gross:

I am writing in response to your request for an advisory opinion regarding the manner in which the New York City Department of Housing Preservation & Development (the Department) has responded to your Freedom of Information Law (FOIL) request for records relating to your affordable housing application.

One of the types of records that was responsive to your request is called an "Applications Report." The Applications Report for Waterline Square was provided to you with the name of the applicant and other details redacted on the ground that disclosure would constitute an unwarranted invasion of personal privacy. You raised no objection to the redaction of the applicant's name, however, you appealed the redaction of the "lottery log number" as it is your belief that there is no way to identify a particular applicant based on the log number and that the log number reflects the priority order in which applicants are required to be processed.

In response to your appeal, the FOIL appeals officer "granted your appeal to the extent of providing un-redacted versions of documents where you are referenced." There is no reference to the redaction of the log numbers in the appeal determination.

Upon receipt of your request for an advisory opinion, I afforded the agency the opportunity to provide any additional information which it felt would be useful to us in forming an opinion as to the appropriateness of the denial. The response from the FOIL Appeals Officer was a repetition of his appeal determination and did not include any additional detail or explanation for the redaction of the log number.

As you know, FOIL is based upon a presumption of access. All records of an agency are available, except to the extent that records or portions thereof fall within one or more grounds for denial appearing in §87(2)(a) through (p) of the Law. Section 87(2)(b) of FOIL permits an agency to withhold records or portions thereof wherein disclosure "would constitute an unwarranted invasion of personal privacy under the provisions of subdivision two of section eighty-nine of this article." Section 89(2)(c) of FOIL states "disclosure shall not be construed to constitute an unwarranted

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 45 of 79

invasion of personal privacy... when identifying details are deleted." As indicated above, you do not object to the deletion of the applicant's name on personal privacy grounds, however, it is your belief that the log number is not an "identifying detail."

Section 89(4)(a) of FOIL, concerning appeals, requires that a determination to uphold a denial of access must "fully explain in writing to the person requesting the record the reasons for further denial, or provide access to the record sought" The appeal determination prepared by the Department's FOIL Appeal Officer granted you access to additional portions of the records sought, however, it clearly did not "fully explain" the reasons for further denial of the remainder of the records.

In our view, if the log number cannot be used to identify a particular applicant, and the agency cannot assert any other statutory ground for denial of access, that portion of the records should have been disclosed to you. In the alternative, the FOIL Appeals Officer had an obligation to "fully explain" the continued denial of access.

I hope this information proves useful.

Sincerely,

**Kristin O'Neill** Assistant Director, Committee on Open Government

## VII.    BG Should Be Seen As An Integral Part of HPD for Purposes of FOIL

83. Throughout these proceedings, Respondents successfully pulled off a convenient strategy to dodge any claim of wrongdoing or liability.
84. Upon BG being confronted with a justified claim to remedy clear evidence of wrongdoing, counsel for BG defensively asserts: "BG is just a limited non-profit performing the initial review. It has no real power. Ultimately, HPD is the real agency and decision maker. If Petitioner is aggrieved, he must pursue such a claim with HPD".
85. On cue, when HPD is confronted with evidence of wrongdoing, counsel asserts: "HPD lacks any real power in this process. It merely provides discretionary oversight. If Petitioner is aggrieved, he should pursue his claim with BG".
86. In similar fashion, when BG faces a claim of liability based on its state-like function (evaluation of eligibility for public housing), counsel for BG is quick to assert: "No, BG is not an agency. It is completely free from any administrative law. It does not have to comply with FOIL requests relating to applications of candidates for public housing".
87. The Freedom of Information Law applies to agency records, and §86(3) of that statute defines the term "agency" to include: "any state or municipal department, board, bureau, division, commission, committee, public authority, public corporation, council, office or other governmental entity performing a governmental or proprietary function for the state or any one or more municipalities thereof, except the judiciary or the state legislature".

19

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 46 of 79

88. BG will undoubtedly try to claim, in yet another appalling display of bad faith, that they are exempt from FOIL because they are not an "agency".

89. Petitioner respectfully asks the Honorable Court to firmly reject this claim, as a matter of law. Elaborate case law consistently[18] rejected similar attempts of quasi-public-agencies, and non-for-profit entities performing public functions, to assert exemptions from FOIL.

90. For example, as early as 1980, the Court of Appeals[19] held that volunteer fire companies, despite their status as not-for-profit corporation, are agencies subject to FOIL. Critically, the reference of the legislative intent underlying FOIL supports the conclusion that BG must not be exempt.

> "We begin by rejecting respondent's contention that, in applying the Freedom of Information Law, a distinction is to be made between a volunteer organization on which a local government relies for performance of an essential public service, as is true of the fire department here, and on the other hand, an organic arm of government, when that is the channel through which such services are delivered. Key is the Legislature's own unmistakably broad declaration that, *'as state and local government services increase and public problems become more sophisticated and complex and therefore harder to solve, and with the resultant increase in revenues and expenditures, it is incumbent upon the state and its localities to extend public accountability wherever and whenever feasible'* (Public Officers Law, §84)".

91. *Matter of Buffalo*[20] reaffirmed, as did *Matter of S.W. Pitts Hose*[21] by stating:

> "It should be further noted that the Legislature, in enacting FOIL, intended that it apply in the broadest possible terms".

92. Furthemore, although BG will likely claim this exception based on "undue burden", it is more likely than not, that BG's exemption assertions are offered to continue masking shameful violations of law.

93. Notwithstanding, even if the Honorable Court somehow concluded that BG is not "its own agency", for the following compelling reasons, BG should, respectfully, be seen as an "organ of the HPD agency", and as such, not be granted the freedom to conceal critical information:

   i. The Honorable Court's decision dated August 16, 2019 (page 5, paragraph 3) describes BG as the lower tribunal, and HPD as the appellate tribunal of the same organ.

   ii. Although HPD is technically the administrative agency, HPD relies on BG to supply it with all of the documentation pertaining to an individual. If all the

---

[18] For example: *Mtr of Buffalo v. Buffalo Entr. Dev.* 578 NYS 2d 945, (1991); *Westchester-Rockland Newspapers v. Kimball* 50 NY2d 575 (1980); *The Legal Aid Soc'y. v. Albany Local Dev.* (Sup. Crt, Albany Cty, (1989); *Babigian v. Evans*, 427 NYS 2d 688 (1980); *S.W. Pitts Hose Company et al. v. Capital Newspapers* (Sup. Crt, Albany Cty, (1989); *Quirk v. Evans*, 455 NYS 2d 918, 97 Ad 2d 992 (1983).
[19] *Westchester-Rockland Newspapers v. Kimball* 50 NY2d 575 (1980).
[20] *Matter of Buffalo News, Inc. v. Buffalo Enterprise Development Corporation*, 578 NYS 2d 945, (1991).
[21] *S.W. Pitts Hose Company et al. v. Capital Newspapers* (Sup. Crt, Albany Cty, (1989);

<div style="margin-left:2em">

information is held by BG, it is only rational and fair that they comply with the FOIL.

iii.    The HPD Handbook places the onus of preserving all records relating to the application process for on BG, not on HPD.

iv.    BG has unlimited access to the most sensitive financial documents of countless applicants. As such, it must be able to show the public that it is worthy of this awesome responsibility.

v.    Allowing BG to conceal critical information violates the essence of the FOIL and described threatens public interests of lawful compliance and administrative integrity.

vi.    Allowing BG to conceal critical information threatens public interests of lawful compliance and administrative integrity.

vii.    BG is clearly performing a traditional state agency function.

viii.    Information pertaining to the integrity of the application process is of vital public significance. By assuming this role, BG also assumed the onus of demonstrating their compliance with the relevant provisions of law.

ix.    Based on the reasons within paragraphs 82-92, the doctrine of *Respondeat Superior* preempts BG from arguing they are free and clear of all administrative law provisions, to include the FOIL.

x.    Based on the reasons within paragraphs 82-92, the doctrine of equitable estoppel preempts BG from arguing they are free and clear of all administrative law provisions, to include the FOIL.

xi.    Based on the reasons within paragraphs 82-92, the doctrine of unclean hands preempts BG from arguing they are free and clear of all administrative law provisions, to include the FOIL.

</div>

### VIII.    <u>Prayer for Relief</u>

94. For all the reasons stated, Petitioner pleads with the Honorable Court to grant the relief sought, including but not limited to:

a. In connection with information withheld, that the Court order the immediate release of all documents sought in Group A-D, including:

i.    All documents showing the specific calculations used to compute Petitioner's income.

<div style="text-align:center">21</div>

       ii.    The income calculation method used to compute the income of every applicant accepted to the Property, including their annual income in relevant years.

b. Order the immediate release of all documents sought in Group E:
    i.    All communications originating from and sent to Mr. Mumbrun.
    ii.    All communications originating from and sent to Mr. Hernandez.
    iii.    All communications originating from and sent Ms. Cucuerello.
    iv.    All communications originating from and sent to Ms. Labarta.
    v.    All communications originating from and sent to Mr. Fong.
    vi.    All communications originating from and sent to Ms. Ana Nunez.
    vii.    All omitted communications pertaining to the incomplete, one-way communications within the Response.

c. Order BG to comply with relevant provisions of the Request.

d. Award declaratory relief denouncing HPD's outrageous conduct[22], and appropriate declaratory relief to benefit future housing applicants.

e. Award compensatory relief: pursuant to N.Y. Pub. Off. Law § 89(4)(c), as amended, a court in its discretion may award reasonable counsel fees and litigation costs to a party that "substantially prevailed" in the proceeding, provided that the court finds that "the agency lacked a reasonable basis in law for withholding the record" or that "the agency failed to respond to a request or appeal within the statutory time frame." Here, HPD had absolutely no reason to conceal crucial information.

f. Kindly consider awarding the equitable and humanitarian relief described in EXHIBIT J for the compelling reasons therein.

g. Order Respondents to promptly provide a sworn affidavit with a detailed explanation:
    i.    As to why HPD ignored the clear language of the Request when referring to pages 45-54 of the Handbook regarding income.
    ii.    As to why HPD omitted the communications aforesaid.
    iii.    As to why HPD feels entitled to take 90 days for a simple request of a single document, in violation of FOIL.
    iv.    As to why HPD lies to their counsel by claiming they had never seen such a document, and as to why they repeatedly lied on the other matters aforesaid.
    v.    As to why HPD promised to expedite a single document, the Summary, but never did.
    vi.    As to why HPD promised to send documents as they became ready, but never did.
    vii.    As to why HPD's more than one third of the Response are simply duplicates of the same documents that weren't requested (the 4 agency determination).

---

[22] In this context, Petitioner pleads the court should specifically recognize this decision was without reason or factual basis, and as such- this decision was arbitrary and capricious.

h. Any other relief the Honorable Court deems fit.

### IX.   Conclusion

95. Respectfully, for all of the aforesaid reasons, and all the reasons prior submitted, including the additional reasons stated in the Appeal, Respondent's deceitful, non-responsive Response is a mockery of lawful procedure and administrative integrity. This conduct is at odds with the essence of the FOIL.

96. Furthermore, for all the relevant reasons given, it would be an extraordinary travesty to allow for BG to conceal critical information pertaining to the Petitioner's application, by claiming that they are not an agency. The essence of the FOIL is at odds with BG's bad faith attempts to hide critical information pertaining to the integrity of the application process.

97. Petitioner respectfully pleads that this Honorable Court not be swayed one iota by Respondent's imminent bad faith attempts to spin, excuse, deconstruct, reframe, and/or distort the clear evidence herein. Rather, that this Honorable Court firmly reject and remedy the notion that a public agency is above the law, and that it has free reign torture a law-abiding citizen, while depriving him of fundamental rights.

Petitioner is grateful to the Honorable Court's for its time and consideration.

I, Petitioner/Plaintiff, Abraham Gross, hereby affirm under the penalty of perjury that the forgoing is true and accurate to the best of my knowledge and belief.

Dated: February 6, 2020.

23

## <u>HPD FOIL SUMMARY</u>

| #FOIL | REQUESTED | PROMISED | DELIVERED | RESULT |
|---|---|---|---|---|
| **FOIL-2019-806-01665** | **August 29 2019** | **December 5 2019** Response within 60 days, except the date given was 90 days- not 60 days. | **December 05 2019, 5:15pm** | Unresponsive and non-compliant: ~unlawful privacy redactions. ~omissions of critical documents. ~pretending not to understand the request. |
| **<u>FOIL-2019-806-01665***:</u>** amended via communication with the Director of the FOIL Division, as limited to a single document needed for a court submission:: the applications summary (log book) for Waterline Square, proving that Respondents did not follow the correct log order. . | **<u>September 03 2019</u>** | **<u>October 16 2019</u>** | **<u>November 05 2019</u>** | Unresponsive : ~wrong document sent from the wrong agency, not the applications summary showing the log numbers |
| **<u>FOIL-2019-806-02489</u>** Requesting the Omitted Documents from Prior Request, with attached 4 pages proving | **<u>December 25 2019</u>** | **<u>March 31, 2019</u>** Egregious disregard for the 20 day rule. Automatic 90 days. No explanation given for why they need | | Unresponsive, Egregious, non-compliant with the FOIL, and deliberately deceitful |

| | | | | |
|---|---|---|---|---|
| that certain communication was omitted and that the full applications summary was withheld. | | 90 days for documents that were already due on December 05, 2019. Note that they aren't denying they withheld critical communication, which is proven by emails that were omitted, and which I recovered from a third party. | | |
| **FOIL-2019-806-02497**<br><br>Clarifying the documents HPD pretended it didn't understand and asking for them to be expedited. | **December 25 2019** | **March 31, 2019**<br><br>Egregious disregard for the 20 day rule. No explanation given as to why they need 90 days for documents that were already due on December 05, 2019. | | NEVER DELIVERED- ASKED FOR ANOTHER 90 DAYS IN LIGHT OF THE CORONAVIRUS<br><br>Unresponsive, Egregious, non-compliant with the FOIL, and deliberately deceitful |
| **FOIL-2020-806-00075**<br><br>Asking for HPD internal affordable housing audits. | **January 16, 2020** | **April 20, 2020**.<br><br>Egregious disregard for the 20 day rule. No explanation given as to why they need 90 days. | | NEVER DELIVERED- ASKED FOR ANOTHER 90 DAYS IN LIGHT OF THE CORONAVIRUS<br><br>Unresponsive, Egregious, non-compliant with the FOIL, and deliberately deceitful |

| | | | | |
|---|---|---|---|---|
| **FOIL-2020-806-00253**<br><br>Asking for a single document: the settlement with Ms. Rodriguez (HPD whistle blower who claimed in 2019 that the entire organization is corrupt. HPD rushed to settle). I also included a specific request that this should not automatically be deemed as requiring 90 days. | **February 18 2020** | **May 18, 2020**<br><br>Egregious disregard for the 20 day rule. No explanation given as to why they need 90 days to locate a single document that was filed in 2019, and involves contemporary employees | | NEVER DELIVERED- ASKED FOR ANOTHER 90 DAYS IN LIGHT OF THE CORONAVIRUS<br><br>Unresponsive, Egregious, non-compliant with the FOIL, and deliberately deceitful |
| **FOIL-2020-806-00254**<br><br>Asking for a single document: summary document showing how many times the HPD Commissioner actually responded to the "contact the commissioner" requests, and if so- what actions were taken. I added again a specific request that this should not automatically be deemed as requiring 90 days. | **February 18 2020** | **May 18, 2020**<br><br>Egregious disregard for the 20 day rule. No explanation given as to why they need 90 days to locate a single document | | NEVER DELIVERED- ASKED FOR ANOTHER 90 DAYS IN LIGHT OF THE CORONAVIRUS<br><br>Unresponsive, Egregious, non-compliant with the FOIL, and deliberately deceitful |

| | | | | |
|---|---|---|---|---|
| **FOIL-2020-806-00279**<br><br>Asking for the court settlement transcripts from HPD whistleblower, Ricarte Echevarria | **February 21, 2020** | **May 21, 2020**<br><br>Egregious disregard for the 20 day rule. No explanation given as to why they need 90 days to locate a single document | | NEVER DELIVERED-ASKED FOR ANOTHER 90 DAYS IN LIGHT OF THE PANDEMIC<br><br>Unresponsive, Egregious, non-compliant with the FOIL, and deliberately deceitful |
| **FOIL-2019-806-01665 Re Opened on March 12**<br><br>HPD unilaterally reopens 2019-806-01665-claiming that I filed an appeal, except that was on January 08. | I filed an appeal on January 08, I did not file any appeal on March 12. | Closed immediately on March 12. Barely anything changed. | | Unresponsive, Egregious, non-compliant with the FOIL, and deliberately deceitful |

**FOIL-2019-806-01665 (august 29, 2019)**

Your request has been successfully submitted to the Department of Housing Preservation and Development (HPD). The details of your request are shown below.

Request Title: All Records- Including All Email Exchanges- Regarding Affordable Housing Application

Request Description: Dear HPD Public Record Administrator, Respectfully, I am hereby submitting this FOIL request to receive all records pertaining to my affordable housing application for the Waterline Square property. Upon carefully reviewing the FOIL guidelines as published, I believe that all of my requests are within my right. Specifically with regards to Breaking Ground, although this entity is separate from HPD, based on the case law as I understand it, they still qualify under rule 87 in their capacity of evaluating application for public housing, and HPD can direct them to release all the information I've asked for. My request includes but is not limited to two primary categories: A) Information about myself and/or my application, including but not limited to: 1) All emails that were received from my email address, a-------@gmail.com 2) All emails between all HPD employees which mentioned my name, Abraham Gross, or

my log number, #5695. 3) Any records that show the accounting calculations that were made in connection to my financial eligibility. 4) All email communications between all HPD employees and all Breaking Ground employees, that mention either my name, Abraham Gross, or my log number #5695 5) All internal email communications within the Breaking Ground organization that mention my name, or my log number. 6) Specific corporate records which show that date my application was received, and date my application was denied, the reason given for denial, the date my appeal was received, the date my appeal was denied. B) Information about the application process (with relevant private information redacted): The specific approval dates of every applicant thus far on the list. The specific dates every approved applicant was assigned to an apartment. The specific dates every approved applicant moved into his/her apartment. The method of income calculation based on which every applicant was approved- for example- was he approved based on previous earnings or current earnings? As I am currently involved in a time-sensitive, legal proceeding, time is of the absolute essence. Kindly let me know when I may be able to observe these records. I greatly appreciate your help with this matter, and please let me know the timeline of receiving these documents moving forwards. Time is of the essence. Thank you very much!

**HPD FOIL <HPDFOIL@hpd.nyc.gov>**

Wed, Sep 4, 2019, 9:43 AM

Dear Mr. Gross:

The FOIL Unit of the NYC Department of Housing Preservation and Development has reviewed the above-referenced FOIL request.  Based on the breadth of information sought,  the agency is unable to grant the request within twenty (20) business days and anticipates sixty (60) business days is needed to conduct a diligent and thorough search for responsive records.  If the records are available sooner you will be notified.

You may revise your request to narrow the scope of information sought, which may reduce the time in process.  In the event you require substantiation for your legal proceeding that a search for records is being conducted, you may present a copy of the HPD FOIL acknowledgement for that purpose.  We apologize for any inconvenience.

Thank you.

HPD FOIL

-----Original Message-----
From: agross2@gmail.com <agross2@gmail.com>
Sent: Tuesday, September 3, 2019 2:25 PM
To: Nelson, Jessica (HPD) <nelsonj@hpd.nyc.gov>; Block Weissman, Meryl (HPD)
<blockm@hpd.nyc.gov>; Atuegbu, Chidera (HPD) <AtuegbC@hpd.nyc.gov>; Young, Stacy (HPD)
<Youngst@hpd.nyc.gov>; Saffan, Dina (HPD) <SaffanD@hpd.nyc.gov>; Kendall, Marlene (HPD)

<GOURDM@hpd.nyc.gov>; HPD FOIL <HPDFOIL@hpd.nyc.gov>; Gayle, Crystal (HPD) <Gaylcrys@hpd.nyc.gov>; McIntosh, Serena (HPD) <mcintoss@hpd.nyc.gov>
Subject: Inquiry about FOIL-2019-806-01665

Respectfully, there is a time sensitive legal proceeding pending- how can it be expedited?
The law seems to say that a citizen should generally have access within 20 days.
Today is September 03.
December 05 is inconsistent with the statute regarding reasonable time.
HPD and Breaking Ground were required to submit a complete record- they purposely omitted many critical documents- under these circumstances, I cannot fathom why it is justified to have to wait until December 05.
Please kindly advise ASAP.
Thank you.

**FOIL-2019-806-02489, December 25, 2019**

Request Title: Omitted Documents from Prior Request

Request Description: Part A- As Part A was acknowledged and unlawfully withheld for more than 90 days, please send these records immediately. Respectfully, I ("the Applicant") filed a prior request # 2019-806-01665 which was improperly processed. While the FOIL law states: "The legislature therefore declares that government is the public's business and that the public, individually and collectively and represented by a free press, should have access to the records of government in accordance with the provisions of this article. [...] The people's right to know the process of governmental decision-making and to review the documents and statistics leading to determinations is basic to our society. Access to such information should not be thwarted by shrouding it with the cloak of secrecy or confidentiality"; the agency's response to a valid request is diametrically at odds with the law as stated. Accordingly, I am asking for the immediate release of the following records, based on the request acknowledgment date of September 05, 2019: (1) ALL email exchanges between HPD employees , and between HPD employees and Breaking Ground employees with regards to applicant log number #5695, and all email exchanges which mention the applicant's name, Abraham Gross. Regretfully, this exact request was acknowledged on September 05, 2019, although the relevant agency chose to selectively omit countless documents- some of which the applicant is in possession of, others which the Applicant has been made aware of. For example, the Request provided at least 14 examples of one-way communication; it shows a question being asked, but it does not show the answer. In other cases, it shows only part of the communication thread. In other cases, it arbitrarily omits the entire communication, as for example is the case with the communication between Ms. Ana Nunez, and HPD regarding my application. Further the request omits many emails between Mr. Victor Hernandez and Ms. Shatara Pell, and between Ms. Shatra Pell and Ms. Stephanie Labarta, and many others. (2) Not a single email originating from Mr. Gabriel Mumbrun or from Mr. Victor Hernandez is present in the Request. Not only is this inconceivable, this is blatant non compliance, as many such emails were sent. (3) All email communications involving Breaking Ground CEO, Ms. Rosen, and other Breaking Ground employees regarding the applicant are omitted from the record. (4) The Request provides no records showing any of the income calculations that were ACTUALLY APPLIED to the applicant's application. Not the HPD Marketing Handbook which provides the formula (and was sent in bad faith) rather the ACTUAL APPLICATIONS OF THESE CALCULATIONS that caused the agency to arrive at the conclusion the applicant's income is under. Accordingly, the Applicant asks for HPD TO immediately release all the documents it was required to release, and which it failed to release in violation of law.

# **<u>HPD FOIL THREAD</u>**

**HPD FOIL** <HPDFOIL@hpd.nyc.gov>                                  Wed, Sep 4, 9:43 AM    ☆    ↩    ⋮
to me ▾

Dear Mr. Gross:

The FOIL Unit of the NYC Department of Housing Preservation and Development has reviewed the above-referenced FOIL request. Based on the breadth of information sought, the agency is unable to grant the request within twenty (20) business days and anticipates sixty (60) business days is needed to conduct a diligent and thorough search for responsive records. If the records are available sooner you will be notified.

You may revise your request to narrow the scope of information sought, which may reduce the time in process. In the event you require substantiation for your legal proceeding that a search for records is being conducted, you may present a copy of the HPD FOIL acknowledgement for that purpose. We apologize for any inconvenience.

Thank you.

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 58 of 79

**Saffan, Dina (HPD)** <SaffanD@hpd.nyc.gov>        Wed, Oct 16, 1:43 PM   ☆   ↰   ⋮
to Harold, me ▾

Dear Mr. Gross,

As discussed today, HPD FOIL will contact the division to search for a certain record specified in your FOIL request no. 2019-806-01665, namely, a list of the affordable units and the date each was rented for **Waterline Square**.

As I explained, because you've stated that this document is required in connection with your court date (today) we will make every attempt to locate the records, however please be advised that we may not be able to provide you with the information you are seeking in the immediate turnaround time you've set forth.

If this document is available today, it will be sent to you electronically.

Thank you,

Dina Saffan

**Dina Saffan | Director, Public Information | Records Access Officer**
Division of Strategic Operations & Analytics - PMPI
NYC Department of Housing Preservation & Development
100 Gold St | New York, NY 10038
saffand@hpd.nyc.gov | 212-863-6413

***

**Saffan, Dina (HPD)** <SaffanD@hpd.nyc.gov>
to Stacy, me ▾

Fri, Oct 25, 10:34 AM

Dear Mr. Gross,

Thank you for your correspondence. We are following up on the status of this request with the division that is likely to have the information being sought. As soon as the search fo records is complete, we will forward any responsive records to your attention in accordance with the FOIL statute. We have asked the division overseeing this search to expedite this FOIL.

To reiterate my correspondence of last week, HPD FOIL contacted the necessary division to search for a certain record specified in your FOIL request 2019-806-01665, namely, a list of the affordable units and the date each was rented for **Waterline Square**. As explained, HPD FOIL will make every attempt to secure responsive records to your request, however please be advised that we may not be able to provide you with the information you are seeking in the immediate turnaround time you've set forth.

...



**Saffan, Dina (HPD)**
to me, Stacy ▾

Oct 28, 2019, 10:23 AM   ☆   ↩

Dear Mr. Gross,

The agency continues to search for records responsive to your request, FOIL number 2019-806-01665, and will notify you when such records are available.

Thank you.

Dina Saffan

**Dina Saffan | Director, Public Information | Records Access Officer**
Office of Policy and Strategy, Strategic Operations & Analytics Division

•••

Case 1:20-cv-04340-RWL   Document 65-1   Filed 10/15/20   Page 61 of 79

**Schonfeld, Samantha (LAW)**
to me, Jeanne-Marie

Wed, Nov 6, 3:00 PM     

Mr. Gross,

HPD informed me that they already told you that they would expedite your request. They are working diligently to complete it.

...

**Avi Gross** <agross2@gmail.com>
to Samantha, Jeanne-Marie ▾

Tue, Nov 12, 6:41 PM (13 days ago)   ☆   ↰

Ms. Schonfeld ,

With regards to the FOIL request of a single document that was promised to be expedited on October 16, 2019- it still has not been sent. The document is pertinent to my Reply which
on 11/18. It is challenging to avoid the conclusion that the 4 week delay of a single document is deliberate. As legal counsel of an agency trusted to protect the integrity of the applicatic
process, I am respectfully asking you to intervene, such that I may receive the single document promised 4 weeks ago, by tomorrow Wednesday, 11/12, in order to review it before
submitting my Reply.

Kindly,

Abraham Gross

...

## [OpenRecords] Response Added to FOIL-2019-806-01665 - File  Inbox ×



**donotreply@records.nyc.gov**                                    Wed, Nov 13, 2019, 5:11 PM    ☆    ↩    ⋮

to me ▾



The Department of Housing Preservation and Development (HPD) has responded to your FOIL request FOIL-2019-806-01665 in part with the following file(s)

The file(s) listed below will not be publicly available on the OpenRecords portal.

     1.: FOIL-2019-806-01665_Doc_1_Final.pdf

The agency will continue its search and will contact you should additional records responsive to this request become available.

Please visit FOIL-2019-806-01665 to view additional information and take any necessary action.

**Request Information:**
Request Title: All Records- Including All Email Exchanges- Regaring Affordable Housing Application

# [OpenRecords] Request FOIL-2019-806-01665 Closed    Inbox ×



**donotreply@records.nyc.gov**

to me ▾

Thu, Dec 5, 2019, 5:09 PM    ☆    ↩

The Department of Housing Preservation and Development (HPD) has **closed** your FOIL request FOIL-2019-806-01665 for the following reasons:

- Your request under the Freedom of Information Law (FOIL) has been fulfilled and the documents you requested have been emailed to you. Please note, portions of some records are exempt from disclosure under Public Officers Law, Article 6, Section 87(2)(b) because if disclosed, would constitute an unwarranted invasion of personal privacy. Information exempt from disclosure has been redacted from the responsive documents.

1. HPD has provided the responsive records in connection with Section A of the attached FOIL request, subject to the exemptions listed herein.
2. Please refer to the attached Application Report, subject to the exemptions listed herein,  for the applicant approval dates.
3. Please refer to the attached HPD Marketing Handbook, pages 45-54, for the method of income calculation used to determine applicant approval.
4. HPD does not have responsive records for the following requested information:
   - The specific dates every approved applicant was assigned to an apartment. This information is held by the marketing agent for the Waterline Square property.
   - The specific dates every approved applicant moved into his/her apartment. This information is held by the marketing agent for the Waterline Square property.

You may appeal the decision to deny access to material that was redacted in part or withheld in entirety by contacting the agency's FOIL Appeals Officer: WEINH@hpd.nyc.gov within 30 days.

**NYC**

**Department of
Housing Preservation
& Development**

nyc.gov/hpd

LOUISE CARROLL
Commissioner

NICHOLAS LUNDGREN
General Counsel /
Deputy Commissioner

HAROLD WEINBERG
Records Access Appeals Officer

OFFICE OF LEGAL AFFAIRS
100 Gold Street, Room 5-C2
New York, NY 10038
212-863-8400

January 8, 2020

Abraham Gross
agross2@gmail.com

Re:    FOIL Appeal # 2019-806-01665

Dear Mr. Gross:

I am writing in regard to your appeal of the agency's response to FOIL request numbered 2019-806-01665.   The request concerned documents relating to your affordable housing application to Waterline Square property through Breaking Ground.

The agency's response included the following: (a) letters and e-mails totaling two hundred fifty one pages, some of which were redacted in part; (b) Requirements Report: Waterline Square one page (c) Marketing Handbook July 2018, NYC Housing Connect from N.Y.C. Department of Housing Preservation and Development, (d) Applications Report Waterline Square dated 12/2/2019 partially redacted for privacy reasons (Public Officers Law Article 6, Section 87 2. (b).) totalling nine pages.

I have reviewed your original request and the agency's response noted above.  I am granting your appeal to the extent of providing un-redacted versions of documents where you are referenced, i.e. letters and e-mails in which you are specifically named.

Please note that this determination is separate and apart from any current or future litigation on administrative challenges you have alleged regarding the selection process by the entity Breaking Ground for housing at Waterline Square.

Therefore, I am referring the matter back to the FOIL Unit to provide you with the un-redacted version of the aforementioned letters or emails where you are specifically mentioned. The agency will be sending the documents to you on or before January 24, 2020.

You may seek a judicial review of this determination pursuant to Article 78 of the Civil Practice Law and Rules.

Yours truly,

*Harold Weinberg*

Harold Weinberg
Records Access Appeals Officer

HW/as
cc    FOIL Unit
C00G@DOS.NY.GOV

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------------ x
ABRAHAM GROSS, NETTY GROSS,

                                  Plaintiffs,

                    -against-

THE DEPARTMENT OF HOUSING PRESERVATION
AND DEVELOPMENT (HPD), HPD EMPLOYEES:
SHATARA PELL, VICTOR HERNANDEZ, LOUISE
CARROLL, BREAKING GROUND (BG), BG
EMPLOYEES: BRENDA ROSEN, VANESSA
CUCURULLO, TERESA PALMIERI, TRAVIS FONG,
and STEPHANIE LABARTA,

                                  Defendants.
------------------------------------------------------------------------ x

**AFFIRMATION OF
HAROLD WEINBERG IN
SUPPORT OF HPD'S
MOTION TO DISMISS THE
AMENDED COMPLAINT**

Index No. 101960/2019

        **HAROLD WEINBERG**, an attorney duly admitted to practice law before the

Courts of the State of New York, hereby affirms the following to be true under the penalties of

perjury pursuant to Section 2106 of the Civil Practice Law and Rules ("CPLR"):

        1.      I am Deputy General Counsel at the New York City Department of

Housing Preservation and Development ("HPD"). I also serve as the Records Access Appeals

Officer. In that capacity, I review challenges to HPD's determinations regarding Freedom of

Information Law ("FOIL") requests.

        2.      I am fully familiar with the facts and circumstances set forth herein based

upon my review of the records maintained by HPD, and the applicable rules and regulations. I

submit this affirmation in support of HPD's motion to dismiss the Amended Complaint pursuant

to CPLR § 3211(a)(7).

        3.      On or about August 29, 2019, Plaintiff Abraham Gross submitted a

request pursuant to FOIL, Public Officers Law § 84, <u>et seq.</u> for all records regarding his

affordable housing application for an apartment located at 645 West 59th Street, 675 West 59th Street, and 400 West 61st Street, New York, New York ("subject development"). A copy of Plaintiff's August 29, 2019 FOIL request is annexed hereto as Exhibit "A." Plaintiff's voluminous request included, but was not limited to, the following: (1) all email communications between HPD employees which mentioned Plaintiff's name or log number; (2) any records showing the "accounting calculations" that were made in connection to Plaintiff's financial eligibility for the apartment; (3) all email communications between HPD and Breaking Ground that mentioned Plaintiff's name or log number; (4) internal communications within Breaking Ground that mention Plaintiff's name or log number; (5) "[s]pecific corporate records which show the date [Plaintiff's] application was received, and date [his] application was denied, the reason given for denial, the date [his] appeal was received, the date [his] appeal was denied;" (6) "information about the application process;" including "specific approval dates of every applicant thus far on the list;" (7) "[t]he specific dates every approved applicant was assigned to an apartment;" (8) "the specific dates every approved applicant moved into his/her apartment;" and (9) "the method of income calculation based on which every applicant was approved . . ." See Exhibit A.

4.    On or about September 3, 2019, HPD acknowledged receipt of Plaintiff's FOIL request. A copy of HPD's acknowledgement is annexed hereto as Exhibit "B." The acknowledgement provided an approximate date of December 5, 2019 of when Plaintiff would receive a decision and/or be provided with the documents requested that were relevant to his voluminous FOIL request. See Exhibit B.

5.    On or about November 13, 2019 and December 5, 2019, HPD produced documents responsive to Plaintiff's FOIL request. HPD produced: (1) letters and emails totaling

-2-

two hundred fifty one pages which were redacted in part; (2) a Requirements Report for the subject development; (3) HPD's Marketing Handbook effective July 2018; and (4) a partially redacted Applications Report for the subject development dated December 2, 2019.

6.  Thereafter, on December 18, 2019, Plaintiff appealed HPD's FOIL determination. A copy of Plaintiff's appeal is annexed hereto as Exhibit "C."

7.  On January 8, 2020, I issued a final determination on behalf of HPD regarding Plaintiff's appeal of HPD's FOIL determination. A copy of the January 8, 2020 final determination is annexed hereto as Exhibit "D." In the final determination, I noted that HPD provided Plaintiff with over two hundred fifty pages that were responsive to his FOIL request.  I further informed Plaintiff that I was "granting [his] appeal to the extent of providing un-redacted versions of documents where [Plaintiff is] referenced, i.e. letters and e-mails in which [Plaintiff is] specifically named." Finally, I informed Plaintiff that I was "referring the matter back to the FOIL Unit to provide [Plaintiff] with the un-redacted version of the aforementioned letters or emails where [Plaintiff] is specifically mentioned" and that Plaintiff would be receiving such documents on or before January 24, 2020. See Ex. D.

8.  On March 12, 2020, HPD sent Plaintiff the un-redacted versions of letters or emails where Plaintiff was specifically named. HPD's notification closing Plaintiff's FOIL request is annexed hereto as Exhibit "E."

9.  As a matter of course, any records identified by HPD in response to a FOIL request will be thoroughly reviewed by HPD to ensure the agency applies any applicable exemption under the law, including privacy protections for personal information. There may be instances when HPD will need to contact the requester for additional authorizations before releasing certain information. In addition to Personally Identifiable Information ("PII"), the

FOIL team also evaluates whether or not data in agency records, when combined with other data elements, may reveal or lead to an individual's identity. These determinations are made in consultation with program, and system custodians as necessary. There are occasions when, upon further examination of the information or subsequent system or privacy upgrades, HPD's position on certain data may be changed as different information becomes available. Particularly in the areas of technology and privacy, the criteria for evaluation are dynamic.[1]

Dated: March 13, 2020

HAROLD WEINBERG

---

[1] See https://www1.nyc.gov/site/hpd/contact/foil.page



[OpenRecords] Request FOIL-2019-806-02497 Extended 📮 Inbox ×

**donotreply@records.nyc.gov**
to me

Mon, Mar 30, 2:51 PM

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2019-806-02497 for the following reasons:

You can expect a response on or about Wednesday, June 24, 2020.

Additional Information:
Please be advised, many HPD employees are now working remotely as a precautionary response to the COVID-19 outbreak. During this time the FOIL team and agency helpers will have less immediate access to some records, impacting the agency's ability to respond fully to some FOIL requests. Given the circumstances, we anticipate that it will generally take longer to provide responsive documents. Please be assured, the FOIL team will do its best to provide you with the records you have requested as soon as we can. Thank you for your understanding. HPD FOIL would like to remind you that the information you are seeking may be found on some of the City's other information sites. More details on the below sites may be found at https://www1.nyc.gov/site/hpd/contact/foil.page: • Open Data: HPD collects various information and data in the course of doing business which is available through HPD's Open Data portal. • Residential Building Information: HPD Online contains residential building information such as complaints, violations, litigation, registration, building charges, tax block/lot for individual buildings. • Property Tax Information: The Department of Finance (DOF) Property Tax Public Access web portal contains property information. • Property Records: The DOF Automated City Register Information System (ACRIS) contains property records and document images for Manhattan, Queens, Bronx, and Brooklyn from 1966 to the present.

Please visit FOIL-2019-806-02497 to view additional information and take any necessary action.

Reply    Forward



**[OpenRecords] Request FOIL-2019-806-02489 Extended**   Inbox ×

donotreply@records.nyc.gov                                                    Mon, Mar 30, 2:53 PM
to me

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2019-806-02489 for the following reasons:

You can expect a response on or about Tuesday, June 23, 2020.

Additional Information:
Please be advised, many HPD employees are now working remotely as a precautionary response to the COVID-19 outbreak. During this time the FOIL team and agency helpers will have less immediate access to some records, impacting the agency's ability to respond fully to some FOIL requests. Given the circumstances, we anticipate that it will generally take longer to provide responsive documents. Please be assured, the FOIL team will do its best to provide you with the records you have requested as soon as we can. Thank you for your understanding. HPD FOIL would like to remind you that the information you are seeking may be found on some of the City's other information sites. More details on the below sites may be found at https://www1.nyc.gov/site/hpd/contact/foil.page : • Open Data: HPD collects various information and data in the course of doing business which is available through HPD's Open Data portal. • Residential Building Information: HPD Online contains residential building information such as complaints, violations, litigation, registration, building charges, tax block/lot for individual buildings. • Property Tax Information: The Department of Finance (DOF) Property Tax Public Access web portal contains property information. • Property Records: The DOF Automated City Register Information System (ACRIS) contains property records and document images for Manhattan, Queens, Bronx, and Brooklyn from 1966 to the present.

Please visit FOIL-2019-806-02489 to view additional information and take any necessary action.

↩ Reply    ➡ Forward



**[OpenRecords] Request FOIL-2020-806-00075 Extended**   Inbox ×

**donotreply@records.nyc.gov**
to me

Thu, Apr 16, 5:03 PM

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2020-806-00075 for the following reasons:

You can expect a response on or about Wednesday, July 15, 2020.

Additional Information:
The New York City Department of Housing Preservation and Development (HPD) requires additional time to locate responsive records in connection with this FOIL request and has **extended** the time to respond. We apologize for any inconvenience. Please be advised, many HPD employees are now working remotely as a precautionary response to the COVID-19 outbreak. During this time the FOIL team and agency helpers will have less immediate access to some records, impacting the agency's ability to respond fully to some FOIL requests. Given the circumstances, we anticipate that it will generally take longer to provide responsive documents. Please be assured, the FOIL team will do its best to provide you with the records you have requested as soon as we can. Thank you for your understanding. HPD FOIL would like to remind you that the information you are seeking may be found on some of the City's other information sites. More details on the below sites may be found at https://www1.nyc.gov/site/hpd/contact/foil.page : • Open Data: HPD collects various information and data in the course of doing business which is available through HPD's Open Data portal. • Residential Building Information: HPD Online contains residential building information such as complaints, violations, litigation, registration, building charges, tax block/lot for individual buildings. • Property Tax Information: The Department of Finance (DOF) Property Tax Public Access web portal contains property information. • Property Records: The DOF Automated City Register Information System (ACRIS) contains property records and document images for Manhattan, Queens, Bronx, and Brooklyn from 1966 to the present.

Please visit FOIL-2020-806-00075 to view additional information and take any necessary action.

↩ Reply     ➡ Forward



**[OpenRecords] Request FOIL-2020-806-00253 Extended**   Inbox ×

**donotreply@records.nyc.gov**                                                Tue, May 19, 1:25 PM
to me

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2020-806-00253 for the following reasons:

You can expect a response on or about Wednesday, August 12, 2020.

Additional Information:
At this time the New York City Department of Housing Preservation and Development (HPD) FOIL team, and many agency helpers, are working remotely and have less immediate access to records, impacting the agency's ability to respond fully to some FOIL requests. Given these circumstances, HPD requires additional time to locate responsive records in connection with your FOIL request and has **extended** the time to respond. We apologize for any inconvenience. The information you are seeking may be publicly available on some of the City's other information sites. More details on these information resources can be found on the HPD FOIL webpage at https://www1.nyc.gov/site/hpd/contact/foil.page

Please visit FOIL-2020-806-00253 to view additional information and take any necessary action.

Reply     Forward



**[OpenRecords] Request FOIL-2020-806-00254 Extended**   Inbox ×

donotreply@records.nyc.gov
to me

Tue, May 19, 1:25 PM

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2020-806-00254 for the following reasons:

You can expect a response on or about Wednesday, August 12, 2020.

Additional Information:
At this time the New York City Department of Housing Preservation and Development (HPD) FOIL team, and many agency helpers, are working remotely and have less immediate access to records, impacting the agency's ability to respond fully to some FOIL requests. Given these circumstances, HPD requires additional time to locate responsive records in connection with your FOIL request and has extended the time to respond. We apologize for any inconvenience. The information you are seeking may be publicly available on some of the City's other information sites. More details on these information resources can be found on the HPD FOIL webpage at https://www1.nyc.gov/site/hpd/contact/foil.page

Please visit FOIL-2020-806-00254 to view additional information and take any necessary action.

Reply | Forward



**[OpenRecords] Request FOIL-2020-806-00279 Extended**   Inbox ×

donotreply@records.nyc.gov                                    Tue, May 19, 1:26 PM

to me

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2020-806-00279 for the following reasons:

You can expect a response on or about Monday, August 17, 2020.

Additional Information:
At this time the New York City Department of Housing Preservation and Development (HPD) FOIL team, and many agency helpers, are working remotely and have less immediate access to records, impacting the agency's ability to respond fully to some FOIL requests. Given these circumstances, HPD requires additional time to locate responsive records in connection with your FOIL request and has extended the time to respond. We apologize for any inconvenience. The information you are seeking may be publicly available on some of the City's other information sites. More details on these information resources can be found on the HPD FOIL webpage at https://www1.nyc.gov/site/hpd/contact/foil.page

Please visit FOIL-2020-806-00279 to view additional information and take any necessary action.

↩ Reply      ➡ Forward





76

← ⊡ ⓘ 🗑 | ✉ 🕐 ☑ | ⬇ 🏷 ⋮                    4 of 7   ‹ ›

## [OpenRecords] Request FOIL-2020-806-00364 Extended   Inbox ×        🖶 ⤢

9

👤  **donotreply@records.nyc.gov**                          Tue, Jun 2, 6:02 PM   ☆  ↩  ⋮
    to me ▾

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2020-806-00364 for the following reasons:

You can expect a response on or about Friday, August 28, 2020.

Additional Information:

At this time the New York City Department of Housing Preservation and Development (HPD) FOIL team, and many agency helpers, are working remotely in response to the COVID-19 outbreak and have less immediate access to records, impacting the agency's ability to respond fully to some FOIL requests. Given these circumstances, HPD requires additional time to locate responsive records in connection with this FOIL request and has extended the time to respond. We apologize for any inconvenience. The information you are seeking also may be publicly available on some of the City's other information sites. More details can be found on the HPD FOIL webpage at https://www1.nyc.gov/site/hpd/contact/foil.page.

Please visit FOIL-2020-806-00364 to view additional information and take any necessary action.

+

[↩ Reply]   [➡ Forward]



**[OpenRecords] Request FOIL-2020-806-00365 Extended**   Inbox ×

donotreply@records.nyc.gov                                    Tue, Jun 2, 6:04 PM
to me

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2020-806-00365 for the following reasons:

You can expect a response on or about Friday, August 28, 2020.

Additional Information:

At this time the New York City Department of Housing Preservation and Development (HPD) FOIL team, and many agency helpers, are working remotely in response to the COVID-19 outbreak and have less immediate access to records, impacting the agency's ability to respond fully to some FOIL requests. Given these circumstances, HPD requires additional time to locate responsive records in connection with this FOIL request and has **extended** the time to respond. We apologize for any inconvenience. The information you are seeking also may be publicly available on some of the City's other information sites. More details can be found on the HPD FOIL webpage at https://www1.nyc.gov/site/hpd/contact/foil.page.

Please visit FOIL-2020-806-00365 to view additional information and take any necessary action.

[Reply]    [Forward]



2 of 7   〈   〉

## [OpenRecords] Request FOIL-2020-806-00365 Extended   Inbox ×

**donotreply@records.nyc.gov**
to me ▾

Wed, Aug 19, 6:53 PM   ☆   ↰   ⋮

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2020-806-00365 for the following reasons:

You can expect a response on or about Friday, November 27, 2020.

Additional Information:

At this time the New York City Department of Housing Preservation and Development (HPD) FOIL team and many agency liaisons continue to work remotely in response to the agency's response to COVID-19 and our office phased re-opening guidelines, and have less immediate access to records, impacting the agency's ability to respond fully to some FOIL requests.  Given these circumstances, HPD requires additional time to locate responsive records in connection with this FOIL request and has **extended** the time to respond. We apologize for any inconvenience.

The information you are seeking also may be publicly available on some of the City's other information sites.  More details can be found on the HPD FOIL webpage at https://www1.nyc.gov/site/hpd/contact/foil.page.

Please visit FOIL-2020-806-00365 to view additional information and take any necessary action.

↰ Reply     ➡ Forward



**[OpenRecords] Request FOIL-2020-806-00364 Extended**   Inbox ×

**donotreply@records.nyc.gov**
to me ▾                                                    Wed, Sep 2, 8:00 PM (2 days ago)

The Department of Housing Preservation and Development (HPD) has **extended** the time to respond to your FOIL request FOIL-2020-806-00364 for the following reasons:

You can expect a response on or about Friday, November 27, 2020.

Additional Information:

At this time the New York City Department of Housing Preservation and Development (HPD) FOIL team and many agency liaisons continue to work remotely in response to the agency's response to COVID-19 and our office phased re-opening guidelines, and have less immediate access to records, impacting the agency's ability to respond fully to some FOIL requests.  Given these circumstances, HPD requires additional time to locate responsive records in connection with this FOIL request and has **extended** the time to respond. We apologize for any inconvenience.

The information you are seeking also may be publicly available on some of the City's other information sites.  More details can be found on the HPD FOIL webpage at https://www1.nyc.gov/site/hpd/contact/foil.page.

Please visit FOIL-2020-806-00364 to view additional information and take any necessary action.

↩ Reply      ➡ Forward